IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JAMES MEBANE and ANGELA WORSHAM, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> GKN DRIVELINE NORTH AMERICA, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) )       1:18CV892 |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiffs initiated this action alleging that the above-named Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and North Carolina common law.[1] (ECF No. 43.) Before the Court is Defendant's Partial Motion to Dismiss Plaintiffs' Second Amended Complaint filed pursuant to Rules 12(b)(1) and 12(b)(6). (ECF No. 49.) For the reasons set forth below, this motion is granted in part and denied in part.

Plaintiffs James Mebane and Angela Worsham are former employees of the Mebane, North Carolina, manufacturing facility operated by Defendant GKN Driveline North

---

[1] Plaintiffs seek to bring their claims under FLSA and the NCWHA as class actions. (*See* ECF Nos. 64; 66.) Whether the certification of such a class is appropriate in this case is not at issue in the motion before the Court, and thus the Court does not address it at this time.

America, Inc. ("GKN"). (ECF No. 43 ¶¶ 2, 15, 16.) They have filed a Second Amended Collective and Class Action Complaint ("the Complaint") on behalf of themselves and others similarly situated bringing a range of federal and state law claims. (*Id.* ¶ 1.) First, they allege multiple wage and hour violations under FLSA and the NCWHA in Counts One and Two, respectively. (*Id.* at ¶¶ 99–128.) Further, as the result of a workplace incident with a fellow employee, Plaintiff Mebane individually alleges age discrimination under the ADEA in Count Three as well as several North Carolina common law tort claims in Counts Four through Nine. (*Id.* ¶¶ 129–75.)

Defendant now moves for partial dismissal of Count Two to the extent that Plaintiffs seek recovery for alleged unauthorized deductions for a "tobacco surcharge" and overtime wages under the NCWHA pursuant to Rule 12(b)(6). (ECF No. 50 at 1.) Defendant also moves to dismiss Plaintiff Mebane's ADEA claim pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction as well as three of the related common law tort claims pursuant to Rule 12(b)(6). (*Id.* at 1–2.)

Because the operative facts of Plaintiffs' wage-related claims are in large part distinct from those relating to the incident between Plaintiff Mebane and another co-worker out of which the ADEA and state common law claims arise, the Court will first consider the motion to partially dismiss the NCWHA claim before turning to those claims stemming from Plaintiff Mebane's individual allegations.

## I.     FLSA AND NCWHA CLAIMS

As background, Defendant GKN operates three regional manufacturing facilities in North Carolina one of which employed Plaintiffs as non-exempt, hourly paid employees until

2

April 2018.  (ECF No. 43 ¶¶ 2, 14–16.)  According to the Complaint, Plaintiffs typically worked overlapping eight-and-one-half-hour shifts, five days per week, with one thirty-minute lunch break as was typical of employees in their positions.  (*Id.* ¶¶ 36, 39, 45.)  During "seasons of heavy demand," employees were additionally subject to mandatory overtime shift assignments.  (*Id.* ¶ 45.)

Plaintiffs allege that, during this time and in subsequent years, "Defendant's pay practices and policies [have been] in direct violation of the FLSA and the NCWHA" for which they seek past wages, damages, and fees for several alleged failures to adequately compensate employees.  (*Id.* ¶ 3.)  They contend that Defendant did not pay overtime compensation "for work performed in excess of forty (40) hours in a single workweek."  (*Id.* ¶ 103.)  Plaintiffs also assert that Defendant willfully failed to pay employees any wages for either the duties they performed to prepare for their shift or for the additional assignments they were expected to undertake prior to clocking out.  (*Id.* ¶¶ 46–47, 50, 104.)  In addition to these allegations brought under both federal and state statutes, Plaintiffs also bring three charges exclusively under the NCWHA.  First, they allege that "Defendant promised Plaintiffs a paid lunch break" but failed to compensate them for this time.  (*Id.* ¶ 120.)  Second, Plaintiffs allege that Defendant did not provide promised premium pay for employees who worked evening shifts. (*Id.* ¶ 121.)  Finally, they allege that Defendant violated the NCWHA by deducting from paychecks, without authorization, the cost of uniforms as well as a monetary penalty for employees who used tobacco products.  (*Id.* ¶ 124.)

The Court will first consider Defendant's motion to dismiss Count Two of Plaintiff's Complaint "insofar as Plaintiffs seek recovery of wages under [the NCWHA] for alleged

3

unauthorized deductions for 'tobacco surcharges.'" (ECF No. 50 at 1.)  Defendant argues that this count must be dismissed because Plaintiffs' claims are preempted by ERISA, 29 U.S.C. § 1001, *et seq.* (*Id.* at 5.)

## A.    Tobacco Surcharge

Plaintiffs first claim that Defendant deducted a "tobacco surcharge" from their paychecks without obtaining "the required advance written authorization" or "providing advance written notice of the amount to be deducted" in violation of N.C. Gen. Stat. § 95-25.8.  (ECF No. 43 ¶ 8.)  Defendant argues that this claim must be dismissed because the deduction is a component of GKN's employee benefit plan (the "Plan") and thus is preempted by ERISA.  (ECF No. 50 at 5–14.)  When considering ERISA preemption, it is necessary to first make a preliminary finding as to whether an action is governed by the statute before determining what effect such preemption might have on the claim.  *See, e.g.*, *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 (1983) (finding first that state laws "relate to" an employment benefit plan and are thus preempted by ERISA before considering "whether any of the narrow exceptions to § 514(a)" precludes dismissal).

"Congress enacted ERISA to 'protect . . . the interest of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements" and to "'provid[e] for appropriate remedies, sanctions and ready access to Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)).  Its purpose has thus been to offer "a uniform regulatory regime over employee benefit plans." *Id.*  To this end, "ERISA includes expansive pre-emption provisions, which are intended to ensure that employee benefit regulation would be 'exclusively a federal concern.'" *Id.* (citations and

4

quotation omitted.); *see also Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 68 (4th Cir. 1988) (calling ERISA "the most sweeping federal preemption statute ever enacted by Congress" (citation and quotation omitted)). Moreover, "[t]he Supreme Court has repeatedly emphasized that ERISA's preemptive scope is not limited to 'state laws specifically designed to affect employee benefit plans.'" *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 341 (4th Cir. 2007) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48 (1987)). By its own statutory language, ERISA "supersede[s] any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "[F]or ERISA to apply, there must be (1) a plan, fund or program, (2) established or maintained (3) by an employer, employee organization, or both, (4) for the purpose of providing a benefit, (5) to employees or their beneficiaries." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 417 (4th Cir. 1993) (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982) (*en banc*)).

The Court initially considers whether Defendant's Plan meets the definition of an "employee benefit plan" under ERISA. Defendant attaches four documents to support its contentions that it does. Exhibit 1 is the "Plan Document and Summary Plan Description" outlining the "GKN Employee Welfare Benefit Plan." (ECF No. 50-1 at 2.) Exhibits 1-A through 1-C are documents describing, over a three-year period, the RedBrick Health Wellness Program ("Wellness Program") which outline a tobacco surcharge and, according to Defendant, is a component of the Plan.[2] (ECF Nos. 50-2 at 7; 50-3 at 7; 50-4 at 4–5.)

---

[2] A court may "consider documents attached to the complaint as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing Fed. R. Civ. P. 10(c) and *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)). Both the existence of the Plan and the Wellness Program are central to the

A review of these documents reveals that, first, the Plan is described as a "plan" or "program" by its own language as well as by both parties. (*See, e.g.*, ECF Nos. 50-1 at 3; 50 at 5–8; 59 at 11.) Second, there is no dispute that it has been both established and maintained. (*See, e.g.*, ECF No. 50-1 at 3 (identifying the Plan's effective date).) Third, it was established by an employer, namely GKN North America Services, Inc. (*Id.* at 2–3.) Finally, it meets the remaining two requirements in that its purpose is to provide a benefit to employees and/or their beneficiaries. (*See, e.g., id.* at 3 ("We have worked hard to design a benefit package that is both responsive to your needs and affordable to you and the Company.").)

Plaintiffs claim that, even if this is so, Defendant has not demonstrated that the Wellness Program that describes the tobacco surcharge is a part of the Plan. (ECF No. 59 at 11–12.) The Court, however, disagrees. Within its four corners, the Plan specifies several programs that comprise the full employment benefit package, and the Wellness Program is identified expressly. (ECF No. 50-1 at 9–10, 27, 88 (communicating that the "Plan's Medical and Prescription Drug benefits include a voluntary Wellness Program" and refers to it as the RedBrick Health Wellness Program).) The Wellness Program documents also provide both the same phone number and GKN-specific website that is specified in the Plan. (*Compare* ECF No. 50-1 at 10, *with* ECF No. 50-2 at 4.) Finally, this program includes descriptions of a "tobacco surcharge," (*see, e.g.*, ECF No. 50-2 at 7), that match both the nature and amount of

---

arguments of each party as is the degree to which the documents are connected. Plaintiffs contest neither the integral nature of the documents nor their authenticity. (*See* ECF No. 59 at 10–14.)

the deductions Plaintiffs describe in their Complaint, (*compare* ECF No. 50-2 at 7, *with* ECF No. 59 at 10 (identifying monthly deductions between $60 and $120)).[3]

Plaintiffs argue in the alternative that there are nevertheless some plans to which ERISA preemption does not apply and contend that the Court does not have before it sufficient information to decide whether the Plan falls into such category. (ECF No. 59 at 11.) They cite to a Fourth Circuit decision which held that dismissing a claim under these circumstances is "premature until more discovery [is] available to determine whether a policy [is] subject to ERISA or state law." (*Id.* (citing *Moore v. Life Ins. Co. of N. Am.*, 278 F. App'x 238, 241 (4th Cir. 2008).) That case, however, is distinguishable in that the district court had made its determination as to whether ERISA applied based "solely upon the allegations of [plaintiff's] complaint" and prior to being provided a copy of the actual policy in question.[4] *Moore,* 278 Fed. App'x at 240. Here, the Plan documents are before the Court.

Finally, Plaintiffs argue that the Plan "has not been adopted by the GKN Driveline facilities in this lawsuit." (ECF No. 59 at 12 (citing ECF No. 50-1 at 82–85).) While it is true that Plaintiff's manufacturing facilities are not enumerated in the Plan's list of "Participating Employers," this argument is undermined by the fact that Defendant is named as a participating employer. (ECF No. 50-1 at 88–90.) Plaintiffs have not only conceded that

---

[3] The Court also notes that Plaintiffs have submitted evidence that appears to confirm that the tobacco surcharge is tied to the Plan. (ECF No. 67-2 at 3 (communicating to employees that the Redbrick Health tobacco surcharge is not applicable to those "who waived medical coverage").)

[4] In addition, the exception Plaintiffs invoke, found in 29 C.F.R. § 2510-3-1(j), does not apply in the instant case. It requires, among other things, that an employer make no contributions to the employee benefit plan. *Id.* Yet Plaintiffs acknowledge that Defendant does indeed contribute to the Plan. (ECF No. 59 at 13.)

7

Defendant is their employer, but also that it operates the three North Carolina facilities whose actions are the subject of their Complaint. (ECF No. 43 ¶¶ 1, 13–15.)

Accordingly, taking the evidence in the light most favorable to Plaintiffs, the Court concludes as a preliminary matter that there are sufficient facts in the record to satisfy the threshold determination that the Plan is an employee benefits plan governed by ERISA, that it includes the tobacco surcharge, and that this surcharge is the one to which Plaintiffs refer in their Complaint. Thus, ERISA preemption applies.

The only issue remaining is the impact of this preemption on Plaintiffs' claim. Courts recognize two types of ERISA preemption, each leading to a different outcome. *See, e.g.*, *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370–71 (4th Cir. 2003); *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 186–87 (4th Cir. 2002). The first type is complete preemption under § 502(a) of ERISA, 29 U.S.C. § 1132(a), and the second is conflict preemption under § 514, 29 U.S.C. § 1144(a). *Id.*

Complete preemption is a jurisdictional doctrine that transforms a claim into one arising under federal law "even if pleaded in terms of state law." *Davila*, 542 U.S. at 207–208; *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 65, 67 (1987). This occurs when "an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions."[5] *Davila*, 542 U.S. at 210. Under complete preemption, the state-law claims are

---

[5] ERISA's § 502(a)(1)(B) is "relatively straightforward," *Davila*, 542 U.S. at 210, and provides:

> A civil action may be brought—(1) by a participant or beneficiary—. . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . .

8

"converted into federal claims," and district courts "may choose to grant plaintiff[s] leave to amend [their] complaint in order to clarify the exact scope of relief requested under" ERISA. *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 292 (4th Cir. 2003).

Conflict preemption applies when a claim "fall[s] within the field [of ERISA] but not within the scope of § 502(a)." *Marks v. Watters*, 322 F.3d 316, 323 (4th Cir. 2003). In such case, preemption is asserted as "a federal defense to the plaintiff's suit," *Taylor*, 481 U.S. at 63, and the claim must be dismissed, *Marks*, 322 F.3d at 323 (noting that conflict preemption, under § 514, "precludes prosecution of the preempted state-law claim.").

To determine if a claim could have been brought pursuant to § 502(a)(1)(B) and thus subject to complete preemption, courts must consider whether an interpretation of the terms of the plan "forms an essential part" of plaintiff's state law claim. *Davila*, 542 U.S. at 213. In addition, a court must determine whether liability under the relevant state law "would exist here only because [of defendant's] administration of ERISA-regulated benefit plans." *Id.* If the terms of the plan do not form an essential part of the state law claim or if liability exists outside of the ERISA context, a court must find that conflict rather than complete preemption applies and dismiss the claim. *See id.* at 213–14. In making these determinations, a court should examine "respondents' complaints, the statute on which their claims are based (the [state statute]), and the various plan documents." *Id.* at 211.

Here, Plaintiffs allege that Defendant "deducted a portion of employees' wages for tobacco use . . . without receiving the required advance written authorization and without

---

29 U.S.C. § 1132(a)(1)(B).

9

providing advance written notice of the amount to be deducted." (ECF No. 43 ¶ 124.) Plaintiffs further allege that North Carolina's Wage and Hour Act makes it unlawful for an employer to withhold any portion of employee's wages without the employee's advance written authorization, including the amount and reason for the deduction. (*Id.* ¶ 114 (citing N.C. Gen. Stat. § 95-25.8.)

The Court first finds that an interpretation of the Plan's terms does not "form an essential part" of Plaintiff's state law claim. In fact, the resolution of whether Plaintiff has deducted wages prior to authorization or notice does not require any interpretation of the Plan. Notably, the claim seeks recovery of wages rather than benefits or Plan rights. The Court additionally concludes that Defendant's liability under the NCWHA statute, if such liability exists, would not exist solely as a result of the "administration of the ERISA-regulated benefit plan." On the contrary, NCWHA is violated simply when deductions are taken from an employee's wages for any purpose without the required authorization and notice. Thus, the duties imposed upon Defendant under the statute arise independently of ERISA. For these reasons, the Court concludes that Plaintiffs claim is not completely preempted under § 502 but rather is conflict preempted under § 514.

Accordingly, because conflict preemption applies, this Court must dismiss the claim pursuant to Rule 12(b)(6).

## B. Overtime Pay

Next, Defendant argues that Plaintiffs' "NCWHA overtime claim (Count II) must be dismissed because it squarely falls under the explicit statutory exemptions of N.C. Gen Stat.

§ 95-25.14." (ECF No. 50 at 14.) GKN argues that these claims are "covered" instead by FLSA and thus may only be brought under federal law. (*Id.* at 15.)

However, while it is true that the NCWHA provides an exemption to several of its provisions, N.C. Gen. Stat. § 95-25.14 (stating that "[t]he provisions of G.S. 95-25.3 (Minimum Wage), G.S. 95-25.4 (Overtime), and G.S. 95-25.5 (Youth Employment) . . . do not apply to" certain employers), Plaintiffs do not rely on any of the exempted provisions and instead bring this particular claim under § 95-25.6. (ECF No. 43 ¶ 111.) This provision, commonly known as the "payday statute," (*see* ECF No. 59 at 19 (citing and quoting *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 471 (E.D.N.C. 2010)), requires each employer to pay "all wages and tips accruing to the employee" and is not listed as exempt under § 95-25.14. N.C. Gen. Stat. §§ 95-25.6; 95-25.14.

Another court in this district examining the same question has come to the same conclusion, finding that parties bringing a claim for overtime pay under § 95.25-6 do not run afoul of the NCWHA or FLSA. *See Torres-Tinajero v. Alpha Constr. of the Triad, Inc.*, No. 1:18cv160, 2020 WL 5411748, at *4 (M.D.N.C. Sept. 9, 2020). In that case, the court concluded that § 95-25.14 differentiates between payday and overtime claims. *Id.* While FLSA preempts certain types of overtime claims, the payday claim in § 95-25.6 "is designed to protect employees who did not receive the pay owed to them, independent of the overtime rate required by the FLSA." *Id.* (internal citations and quotations omitted).

This is because FLSA's range of preemption is much less wide-ranging than ERISA's. "Even in [ ] FLSA's core area of protection—minimum wage and overtime regulation—[it] does not completely pre-empt state laws but only pre-empts them to the extent that they are

less generous" than FLSA. *Morales v. Showell Farms, Inc.*, 910 F. Supp. 244, 248 (M.D.N.C. 1995) (citing 29 U.S.C. § 218(a) and *Smith v. United Parcel Serv., Inc.*, 890 F.Supp. 523, 528–29 (S.D. W. Va.1995)) ("In contrast to the sweeping pre-emptive provision in Section 502(a) of ERISA, [ ] FLSA has a relatively narrow pre-emptive effect.").

The Court thus concludes that Plaintiffs' payday claim under N.C. Gen. Stat. § 95-25.6 is not exempted by §95-25.14 nor preempted by FLSA and therefore declines to dismiss it under Rule 12(b)(6).

## II. ADEA AND STATE COMMON LAW CLAIMS

Plaintiff Mebane individually brings a separate set of claims related to his allegedly hostile interactions with a co-worker. (ECF No. 43 ¶¶ 10, 60–81.) Plaintiff alleges that Defendant hired a machinist in early 2017 who quickly began threatening older employees. (*Id.* ¶¶ 61–62.) According to Plaintiff, these threats became increasingly serious over time, transitioning from coarse language to physical confrontations. (*Id.* ¶¶ 63, 64, 68, 69.) Plaintiff claims that, despite employees reporting their concerns, Defendant did little to protect him or other staff members. (*See id.* ¶ 70 (claiming that a supervisor had counseled those who "believed their lives were in danger" to "defend themselves and yell for help").) The situation came to a head on or about April 23, 2018, when the co-worker approached Plaintiff while "swinging a large hunting knife" before subsequently chasing him around the floor and threatening to kill him. (*Id.* ¶¶ 71–72.) As a result of this incident, Plaintiff alleges that he suffered "fear and emotional distress resulting from the ongoing harassment and threats and from the assault." (*Id.* ¶ 79.) Two weeks later, Defendant terminated Plaintiff for what it characterized as a breach of company policy. (*Id.* ¶ 78.) On October 17, 2018, Plaintiff filed

a charge with the Equal Employment Opportunity Commission ("EEOC") alleging age discrimination. (ECF No. 24-3; *see also* ECF No. 59 at 21.) Six days later, on October 23, 2018, Plaintiffs commenced this lawsuit in federal court. (ECF Nos. 1; 59 at 21.)

Plaintiff alleges that the incidents described above are a violation of the ADEA in that the "discrimination and harassment was based on Plaintiff's age" and that GKN fired him for reporting such "harassment, threats, and assaults" to his managers. (ECF No. 43 ¶¶ 129–41.) He additionally claims that Defendant is liable under North Carolina law for negligent employment, supervision, and retention; assault; battery; intentional infliction of emotional distress ("IIED"); negligent infliction of emotional distress ("NIED"); and wrongful discharge. (*Id.* ¶¶ 142–75.) Defendant moves to dismiss Plaintiff's ADEA claim pursuant to Rule 12(b)(1), (ECF No. 50 at 2, 16–17, and moves to dismiss charges of IIED, NIED, and wrongful termination under Rule 12(b)(6), (*id.* at 1–2, 18, 20, 22).

## A. ADEA

Defendant argues that the Court should dismiss Plaintiff Mebane's ADEA claim for lack of subject matter jurisdiction. (*Id.* at 1–2, 16–17.) Among other contentions, Defendant draws attention to the fact that Plaintiff "filed his Complaint six (6) days after filing his charge" with the EEOC. (*Id.* at 17.) This is material because the ADEA requires that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed" with the Commission. 29 U.S.C. § 626(d)(1). Plaintiff, while not contesting these facts, urges the Court to consider "judicial efficiency" while simultaneously arguing that the "reassertion" of the ADEA claim in the subsequent First

Amended Complaint—entered seventy-seven days after the EEOC filing—"cured any premature defect."[6]  (ECF No. 59 at 21–22.)

Though Defendant focuses the bulk of its argument on the exhaustion of administrative remedies and comparatively little on the sixty-day waiting period in § 626(d)(1), (*see* ECF No. 50 at 16–17), courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).  Indeed, "lack of subject matter jurisdiction may be asserted at any time by the court, sua sponte, either at the trial or appellate level, and that has been done on innumerable occasions at all levels of the federal judiciary." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350 (3d ed. 2004) (citing, among other cases, *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) ("[A] federal court is obliged to dismiss a case whenever it appears the court lacks subject matter jurisdiction.") (citations omitted)).

Courts have been willing to equitably modify the ADEA's sixty-day waiting period found in § 633(b), which governs the timeframe for filing state and federal charges.  *See Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 764 (1979).  However, the sixty-day waiting period following the filing of a complaint with the EEOC in § 621(d)(1) is distinct, and the Fourth Circuit has held that this provision is jurisdictional in nature.  *Vance v. Whirlpool Corp.*, 707 F.2d 483, 489 (4th Cir. 1983).  Such a holding is in line with circuits across the country, and indeed "courts have uniformly held the sixty-day waiting period under section 626(d) to be a

_____

[6] The Court notes that, in the interim, more than sixty days have passed since the EEOC filing and the Commission has now issued a Notice of Right to Sue letter to Plaintiff.  (*See* ECF No. 79-1.)

jurisdictional requirement for private plaintiffs." *Dalessandro v. Monk*, 864 F.2d 6, 8 (2d Cir. 1988) (citing decisions in the Fourth and Sixth Circuits); *see also Smith v. Gen. Scanning, Inc.*, 832 F.2d 96, 99 n.3 (7th Cir. 1987) ("Many circuits, including this one, have held that the sixty-day conciliation period is a jurisdictional requirement."); *Dempsey v. Pac. Bell Co.*, 789 F.2d 1451, 1453 (9th Cir. 1986).

Generally, courts have not been quite as consistent in how subsequently to treat complaints that violate this requirement. The Fourth, Sixth, and Ninth Circuits have held that the failure to wait the mandatory sixty days to file a suit should result in a dismissal without prejudice. *See Vance*, 707 F.2d at 489; *Chapman v. City of Detroit*, 808 F.2d 459, 462 (6th Cir. 1986); *Dempsey*, 789 F.2d at 1453. The Second Circuit, on the other hand, disagreed in at least one case and instead ordered the district court to "stay the proceedings pending expiration of the statutory sixty-day waiting period." *Dalessandro*, 864 F.2d at 9. Reasoning that the case before it was distinguishable from those in the other circuits because it had not yet been decided on the merits, it also "note[d] that generally '[s]uspension of proceedings is preferable to dismissal with leave to refile' as a remedy for premature filing of discrimination suits." *Id.* (quoting *Oscar Mayer*, 441 U.S. at 765 n.13). It additionally held that forcing a party to refile "would serve no purpose other than the creation of an additional procedural technicality." *Id.* (citations and quotations omitted).

Though that argument is to some degree compelling in the instant case given that it has likewise not yet been decided on the merits and Plaintiff has now exhausted his administrative remedies, *Vance*—the controlling case in the Fourth Circuit—considered the same precedent and found that abeyance was "foreclosed . . . since the district court was utterly

without jurisdiction to entertain [the plaintiff's] lawsuit" in the first place. *Vance,* 707 F.2d at 489. To stay the case, the court held, "would require that we ignore the definitive structure of the ADEA and the congressional mandate that resort to administrative remedies shall be a prerequisite to an action in the federal court." *Id.* In a subsequent hearing in the same case, the Fourth Circuit characterized its earlier holding as finding "that the 60-day notice requirement precluded jurisdiction." *Vance v. Whirlpool Corp.,* 716 F.2d 1010, 1011 (4th Cir. 1983) ("Concluding that the 60-day conciliation period of section 626(d) is jurisdictional, we held that the district court erred in equitably modifying this requirement and entertaining the plaintiff's suit.").

With regards to Plaintiff's arguments that a subsequent complaint in the same action could "cure" the lack of jurisdiction after the fact, "[i]t has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" *Grupo Dataflux v. Atlas Glob. Grp., L.P.,* 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance,* 9 Wheat. 537, 539 (1824)). Thus, this Court must consider whether it had subject matter jurisdiction on the day the suit commenced rather than whether it might invoke it had the case been hypothetically filed at a later date.

While the Court acknowledges that abeyance may be preferred in some cases, it also finds that there is no basis to do anything other than dismiss this count without disregarding clear precedent and ignoring the definitive structure of the ADEA. Thus, finding that Plaintiff

Mebane did not comply with the statutory requirements of § 626(d)(1), the Court dismisses Count Three without prejudice.[7]

### B. Claims Based on North Carolina Common Law

Subject matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89–101(1998)). Thus, prior to analysis of Defendant's Motion to Partially Dismiss Plaintiff Mebane's state tort claims of IIED, NIED, and wrongful termination—and in light of the above ruling with respect to Plaintiff Mebane's ADEA claim—the Court will consider whether these actions are rightfully before it.

A claim that neither arises from a federal question nor satisfies the requirements for diversity jurisdiction may nevertheless be entertained in federal court by claiming supplemental jurisdiction under 28 U.S.C. § 1367. *See* 13D Wright & Miller, *supra*, § 3567. Subsection 1367(a) provides that a district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .'" *Id.* § 1367(a)). Under supplemental jurisdiction, "[t]he state and federal claims must derive from a common nucleus of operative fact" where a

---

[7] While the Court makes no findings on the disposition of a matter not properly before it, it nevertheless counsels that "[n]ot every claim 'arising under' federal law will invoke federal question jurisdiction." 13D Wright & Miller, *supra*, § 3564. Rather, "the implicated federal issue must be substantial." *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1291–92 (11th Cir. 2004). Fox example, a claim may be "so feeble, so transparent an attempt to move a state-law dispute to federal court . . . that it does not arise under federal law at all." *Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 299 (7th Cir. 2003) (citation omitted). To admit such a claim under the guise of federal question jurisdiction would be to allow "exactly the type of bootstrapping use of [federal law] that federal courts abhor." *Id.* at 300.

Case 1:18-cv-00892-LCB-LPA   Document 81   Filed 11/05/20   Page 17 of 21

plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Courts have thus generally granted ancillary jurisdiction only "for two separate, though sometimes related purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994) (citations omitted).

In this case, Plaintiffs have alleged two claims arising under federal law, pursuant to 28 U.S.C. § 1331. (ECF No. 43 ¶ 19.) The first is the wage-related claim brought under FLSA, and the second is the claim related to Plaintiff Mebane's incident with a co-worker brought under the ADEA. (*Id.*) Plaintiffs allege that supplemental jurisdiction is available under § 1367 for all other claims in their Complaint "because those state law claims arise out of the same nucleus of operative fact as the FLSA *and* ADEA claims." (*Id.* ¶ 23 (emphasis added).) The Court will now test that assertion as it relates to the North Carolina tort claims with each federal statute in turn.

Under FLSA, Plaintiffs allege that Defendant did not pay overtime compensation "for work performed in excess of forty (40) hours in a single workweek." (*Id.* ¶ 103.) Plaintiffs additionally claim that Defendant willfully failed to pay employees any wages for either the duties they performed to prepare for their shift or for the additional assignments they were expected to undertake prior to clocking out. (*Id.* ¶¶ 46–47, 50, 104.)

While Plaintiffs make a single conclusory statement relating all state law claims to these FLSA allegations, (*id.* ¶ 23), it is otherwise unclear how claims pertaining to the calculation of

18

wages might arise out of the same nucleus of operative fact as the tort claims listed under North Carolina law. On the contrary, Plaintiff specifies that it was "age-based discrimination and harassment" that "created a hostile work environment, leading to Plaintiff Mebane's being placed in a life-threatening situation." (*Id.* ¶ 10.) A review of each count makes this distinction even more apparent. Count Four, which alleges "negligent employment, supervision, and retention," asserts a violation in the "hiring, supervising, and retaining" of the co-worker who "committed a multitude of tortious acts against Plaintiff Mebane" and not, for instance, on the hiring of a manager who neglected to pay Plaintiff. (*Id.* ¶¶ 142–49.) Count Five alleges assault and contends that "Plaintiff Mebane's fear and apprehension was a product of [the co-worker's] intentional actions." (*Id.* ¶¶ 150–55.) Count Six, claiming battery, again refers only to the conduct of the co-worker. (*Id.* ¶¶ 156–60.) Counts Seven and Eight, which allege IIED and NIED, refer repeatedly to "[t]he conduct of [the co-worker]" and do not refer to wages in any way. (*Id.* ¶¶ 161–71.) Finally, Count Nine expressly bases its wrongful discharge claim on a North Carolina public policy of ensuring "that employees be free from age-based harassment, discrimination and retaliatory treatment in their employment." (*Id.* ¶¶ 172–75.)

These allegations do not mention pay in any way, are brought by only a single Plaintiff, and contain no disputed facts that overlap with the wage-based claims. In their Complaint, Plaintiffs also expressly separate the operative facts for each claim by describing the FLSA and NCWHA allegations under the heading "Wage-Related Factual Allegations" and subsequently reciting the facts associated with the latter claims under the heading "Age-Based Harassment, Negligent Supervision, Assault, Battery, Intentional Infliction of Emotional Distress, and Retaliation Factual Allegations." (*Id.* at 9, 12.) The Court thus concludes that Plaintiff's tort

19

claims do not arise out of a common nucleus of operative facts as the FLSA claim, and therefore the statute provides no basis upon which to exercise supplemental jurisdiction over the North Carolina tort claims.

Next, the Court considers whether claims under the ADEA may serve as a jurisdiction-invoking anchor. Though it appears clear that the ADEA arises under federal law and shares a common nucleus of operative facts with the counts in question, the Court has now dismissed the ADEA claim for lack of subject matter jurisdiction. In such a case where Rule 12(b)(1) is invoked, "the district court has no discretion to retain the supplemental claims for adjudication." 15A James Wm. Moore et al., *Moore's Federal Practice*, § 106.66[1] (3d ed. 2004) (noting that, in such a case, "there never was a valid claim within the court's original jurisdiction to which the state claims may be supplemental"). Federal courts have agreed, finding that, "if there be no federal subject matter jurisdiction, it follows that there is nothing to which to append state claims." *Est. of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1168 (10th Cir. 2004) ("When the district court dismissed the United States from this cause of action for lack of subject matter jurisdiction, it lost all original jurisdiction on which to append supplemental state law claims, even if they arose from the same common nucleus of fact."). Thus, the Court concludes it likewise has no power to exercise supplemental jurisdiction over the North Carolina tort claims based on its jurisdiction over the ADEA claim.

Given this conclusion, the Court dismisses Counts Five through Nine of the Second Amended Complaint for lack of subject matter jurisdiction.

For the reasons outlined herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that the Defendant's Motion to Partially Dismiss Plaintiffs' Second Amended Complaint, (ECF No. 49), is GRANTED as to Count Two of Plaintiffs' Complaint to the extent that such claim relates to the "tobacco surcharge." In addition, Defendant's motion is GRANTED as to Plaintiff Mebane's claim under the ADEA. However, it is DENIED as to Plaintiffs' claim for overtime wages under N.C. Gen. Stat. § 95-25.6.

IT IS FURTHER ORDERED that Counts Four through Nine of Plaintiffs' Second Amended Complaint alleging torts under North Carolina common law are likewise Dismissed Without Prejudice.

This, the 5th day of November 2020.

/s/ Loretta C. Biggs
United States District Judge