IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES MEBANE and ANGELA WORSHAM, *on behalf of themselves and all others similarly situated*, | ) ) ) ) | |
| Plaintiffs, | ) ) | 1:18CV892 |
| v. | ) ) | |
| GKN DRIVELINE NORTH AMERICA, INC., | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court is a Motion to Conditionally Certify a Collective Action under § 216(b) of FLSA, (ECF No. 64), and a Motion for Class Certification under Federal Rule of Civil Procedure 23, (ECF No. 66.) For the reasons set forth below, these motions are granted in part and denied in part.

Defendant GKN Driveline North America, Inc. ("GKN") operates three regional manufacturing facilities in North Carolina, one of which employed Plaintiffs as non-exempt, hourly paid employees until April 2018. (ECF No. 43 ¶¶ 2, 14–16.) Plaintiffs typically worked overlapping eight-and-one-half-hour shifts, five days per week, with one thirty-minute lunch as was typical of employees in their positions. (*Id.* ¶¶ 36, 39, 45.) During "seasons of heavy demand," employees were additionally subject to mandatory overtime shift assignments. (*Id.* ¶ 45.)

Plaintiffs have alleged that, during this time and in subsequent years, "Defendant's pay practices and policies [have been] in direct violation of FLSA and the NCWHA" and seek past wages, damages, and fees for several alleged failures to adequately compensate employees. (*Id.* ¶ 3.) They now seek to bring these claims on behalf of those similarly situated and move for certification under both federal and state law. (ECF Nos. 64; 66.) The Court will first consider Plaintiffs' FLSA collective action claim before examining the motion for class certification under Rule 23.

# I. CERTIFICATION AS FLSA COLLECTIVE ACTION

## A.    Conditional Certification Under FLSA

FLSA's § 216(b) authorizes an employee-plaintiff to bring a suit alleging violations under the statute for and on behalf of "himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). These "collective actions" facilitate judicial and economic efficiency by allowing "a single proceeding of claims stemming from common issues of law and fact." *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989)). Certification of a FLSA collective action requires "(1) that the Plaintiffs in the class be 'similarly situated,'[1] and (2) that the plaintiffs included in the class 'opt in' by filing with the Court their consent to the suit." *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006) (citing *Brooks v. BellSouth Telecomms., Inc.*, 164 F.R.D. 561, 568 (N.D. Ala. 1995)).

---

[1] FLSA does not define the term "similarly situated" and neither has the Fourth Circuit. *O'Quinn v. TransCanada USA Servs., Inc.*, No. 2:19-cv-00844, 2020 WL 3497491, at *6 (S.D. W.Va. June 29, 2020).

Case 1:18-cv-00892-LCB-LPA   Document 82   Filed 11/05/20   Page 2 of 25

Courts have established a two-step analysis in deciding whether plaintiffs are "similarly situated," beginning with a "notice stage" that simply determines whether providing initial notification of the action to potential class members is appropriate. *Id.* (citing *de Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 662 (E.D. Pa. 2001)). This first stage applies a "fairly lenient standard," *id.* (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995), and "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan," *id.* (quoting *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392 (D. N.J. 1988)). At this stage, a court "does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *O'Quinn.*, 2020 WL 3497491, at *7 (quoting *Hughes v. Gulf Interstate Field Servs., Inc.*, No. 2:14-cv-000432, 2015 WL 4112312, at *1 (S.D. Ohio July 7, 2015). A defendant's subsequent motion for decertification triggers the second stage of this analysis, and only then does the court employ a "heightened fact specific standard" in determining whether Plaintiffs have met the "similarly situated" bar. *Choimbol*, 475 F. Supp. 2d at 563.

The motion before the Court is in the first stage of the inquiry. At this stage, the "similarly situated" requirement, while modest, is not "invisible." *Houston*, 591 F. Supp. 2d at 831 (citation omitted). On the contrary, "[t]here must be sufficient reason to believe that there are issues common to the proposed class that are central to the disposition of the FLSA claims" so that they may be adjudicated without getting into fact-specific digressions. *Id.* at 832. That said, "[r]esolution of the issues raised by Defendants, though certainly pivotal to the Court's ultimate determination of whether Plaintiffs will proceed to trial as a collective class, is not essential." *Choimbol*, 475 F. Supp. 2d at 563 (noting that a fact-specific inquiry at

3

this time is "necessarily limited because the exact contours of the representative class members [are] largely unknown"); *see also O'Quinn*, 2020 WL 3497491, at *6 ("At this stage in the proceedings, factual distinctions between putative class members, such as, (1) having different supervisors, (2) having different job duties, (3) working in facilities as distinct locations, and (4) difference [in] amount paid, are not fatal to a motion for conditional class certification in an FLSA action." (citation omitted)). Rather, courts simply examine whether plaintiffs allege that "they were victims of a common policy or scheme or plan that violated the law." *Montoya v. S.C.C.P. Painting Contractors, Inc.*, Civ. No. CCB-07-455, 2008 WL 554114, at *2 (D. Md. Feb 26, 2008).

Here, Plaintiffs allege that GKN employees "did not receive all compensation due and owed for all pre- and/or post-shift activities performed outside of scheduled shift times and/or did not receive compensation for all hours worked in excess of 40 hours per week due to Defendant's practice of clock rounding." (ECF No. 65 at 7.) In rebuttal, Defendant argues that "GKN's rounding policy is neutral and lawful on its face," (ECF No. 73 at 6.) At this stage, however, the Court need not resolve whether this is true. Under § 216(b), the Court instead considers whether Plaintiffs have claimed a violation of FLSA that entails a common policy or scheme that would apply to others, and it finds that Defendant acknowledges that such a policy exists. (*See id.* at 16.) The Court thus grants Plaintiff's motion to conditionally certify their FLSA claims under § 216(b).

## B.     Proposed Notice to Potential Class Members

Following the certification of a conditional class, a plaintiff is "authorized to send to the putative class members a neutral and accurate notice of their right to opt-in as members

4

of the class" that does not imply, "in any way, court endorsement of the plaintiff's claim." *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 710 (D.S.C. 2015). It must additionally make clear that "the Court has not ruled on the merits and that a class member could be called as a witness at trial and be required to attend." *See id.* at 711. The Court next considers Plaintiffs' proposed notice to potential opt-in plaintiffs. (ECF No. 65-13.)

Defendant does not contest the language of the notice, but it does argue that a ninety-day opt-in period is unduly long and suggests a range of between thirty and sixty days instead. (ECF No. 73 at 21.) Though Plaintiffs point out that at least one court has referred to a ninety-day notice period as "standard," (ECF No. 65 at 24–25 (citing *Mendoza v. Mo's Fisherman Exch., Inc.*, No. ELH-15-427, 2016 WL 3440007 (D. Md. June 22, 2016)), they offer a compromise of a seventy-five-day period, (ECF 75 at 15). The Court finds this adjusted timeframe of seventy-five days helps ensure that potential plaintiffs are given notice of the collective action without unnecessarily burdening judicial efficiency and orders this change to the proposed notice.

The Court has reviewed the remaining language of Plaintiffs' proposed notice and finds that, having satisfied the requirements of neutrality and clarity, it is fair and appropriate. That said, the Court defers approving the notice at this time due to the number of edits that are needed to comply with orders of this Court. Therefore, the Court orders that Plaintiffs update and resubmit the proposed notice within fifteen days of this Order to include each of the edits outlined below in more detail. The Court will, at that time, review the notice to ensure that it continues to meet the requirements described above before approving it.

## C.    Methods of Communication

The next dispute between the parties is how the notice will be communicated. Plaintiffs request authorization to "distribute the Notice and Forms via first class mail, email, and text message to all members of the conditionally certified collective, with a reminder email to be sent 45 days after the initial mailing to all non-responding members."[2]  (ECF No. 65 at 26.) Defendant argues that "Plaintiffs should be limited to providing notice via First Class Mail, and only if a notice is returned as undeliverable should Plaintiffs be able to provide notice via text message."  (ECF No. 73 at 19, 21 (contending that the separate forms of notice would be "duplicative and excessive").)

Both parties cite multiple cases where courts have come to differing conclusions on what types of communication is helpful and what qualifies as overly intrusive. (*See* ECF Nos. 65 at 25–26; 73 at 19–20.)  It is apparent from these decisions and others that courts have applied a range of standards in their efforts to navigate an area of law with scant binding precedent.  *Compare O'Quinn*, 2020 WL 3497491, at * 10 (finding that plaintiffs had demonstrated a "special need" to text putative class members because they regularly worked in remote locations away from home for long periods), *with Pecora v. Big M Casino, Inc.*, No. 4:18-cv-01422-RBH, 2019 WL 302592, at *4–5 (D.S.C. January 23, 2019) (finding that a "special need" for text messaging was not demonstrated despite the "migratory nature" of

---

[2] Plaintiffs initially also requested that Defendant "post the notice at any place of employment where the putative class members work."  (ECF No. 65 at 24.)  Defendant opposed this motion, (ECF No. 73 at 20–21), and Plaintiffs stated in their Reply that they now believe "posting of the notice is no longer appropriate in this matter," (ECF No. 75 at 16.)  Therefore, the Court declines to take up this uncontested issue at this time.

restaurant servers), *with Irvine*, 132 F. Supp. 3d at 711 (finding no requirement to satisfy a "special need" standard before approving the sending of text messages).

That said, at least some courts have found that the distribution of notice "via direct mail, email and text messaging appears eminently reasonable" against a backdrop of "a much more mobile society." *Irvine*, 132 F. Supp. 3d at 711 (noting that, with updates in technology, "one's email address and cell phone number [serve] as the most consistent and reliable method of communication"). Especially given that, as Defendant notes, "GKN does not regularly communicate with employees via personal email addresses," (ECF No. 73 at 20), and thus has had little incentive to prioritize the ongoing collection and verification of this data, it appears that contacting putative plaintiffs through text messaging might be necessary to reach potential class members while not being unduly burdensome on message recipients.[3]

Finally, Defendant objects to Plaintiffs' wish to send a reminder notice forty-five days after the initial mailing. (ECF No. 73 at 20 (citing *Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365, 373 (N.D. W. Va. Oct 24, 2012) (stating that reminder notices may "stir up" litigation and "inappropriately encourage" putative class members to join the suit).) Aside from simply making the request to distribute "a reminder mailing to be sent 45 days after the initial mailing to all non-responding members," (ECF No. 65 at 26), Plaintiffs make no additional argument as to why such a reminder is necessary. The Court thus finds no basis for permitting an

---

[3] Defendant has one additional objection to the manner in which this notice is delivered, noting that the communication would not fit within the character limits of a standard text message. (ECF No. 73 at 15 n.28.) However, the Court finds that Plaintiffs' proposed alternative of including a link to a website with the information, (ECF No. 75 at 15 n.9), is an appropriate measure to address this obstacle and therefore approves such a method.

7

additional mailing and finds, as other courts have, that "additional notice is [unnecessary] and . . . may take on an element of harassment." *Irvine*, 132 F. Supp. 3d at 711.

The Court therefore concludes that Plaintiffs may send first class mail, email, and text messages to putative class members, but they may not send an additional reminder forty-five days later.

### D. Production of Information

Finally, Defendant objects to Plaintiffs' request for the production of information to communicate this order. Plaintiffs ask for the "name, job title, address, telephone number, email address, dates of employment, location of employment, date of birth, shift assignment, and last four digits of their Social Security number" of every person Defendant has employed since October 23, 2015. (ECF No. 65 at 23.) Defendant argues that this is excessive in multiple ways. (ECF No. 73 at 21–23.) First, they contend that they should be required only to provide a list of "employees that fall within the potential collective action." (*Id.* at 21.) The Court agrees that this is a reasonable and appropriate amendment to Plaintiff's request.

Next, Defendant argues that it should not be required to provide telephone numbers or email addresses of potential class members unless an initial mailed notice is returned as undeliverable. (*Id.*) The Court has, however, already ordered that Plaintiff may send simultaneous first-class mailings, emails, and text messages to putative class members and thus denies this limitation.

Third, and finally, Defendant contends that the sharing of potential plaintiffs' dates of birth and the last four digits of their Social Security numbers is inappropriate. (*Id.* at 22.) The Court, while acknowledging that such information might help Plaintiffs locate some hard-to-

reach employees, agrees. "The goal of the Court is to effectively distribute the notice in a manner that is not unduly intrusive," *Irvine*, 132 F. Supp. 3d at 711, and the Court finds that such personal information is not necessary in this case to accomplish its aim.

Thus, the Court orders that Defendant provide the name, job title, address, telephone number, email address, dates of employment, location of employment, and shift assignment of all employees that fall within the potential collective action whom Defendant has employed since October 23, 2015. Defendant must provide this information in electronic, importable, and native format within fifteen days of this Order.

## II. RULE 23 CERTIFICATION

The Court next considers whether Plaintiffs meet the requirements for certifying a class under Rule 23. Plaintiffs argue that Defendant has violated multiple provisions of the NCWHA, N.C. Gen. Stat. § 95-25.1, *et seq.*, and seek to establish a class that includes GKN employees "in non-managerial positions [who] were not compensated all promised, earned, and accrued wages . . . and/or have had improper deductions taken from their wages" over a two-year time period. (ECF No. 67 at 6.) They claim four distinct harms stemming from these allegations, namely that Defendant (1) "maintained a practice of rounding down employees' hours"; (2) did not compensate employees for a promised paid lunch break; (3) did not compensate employees at a premium rate who worked the second or third shift; and (4) deducted from employee paychecks without authorization the cost of uniforms.[4] (*Id.* at 10–14.)

---

[4] Plaintiffs additionally alleged that Defendant deducted a tobacco surcharge as well. (ECF No. 67 at 13–14.) However, the Court has since dismissed this claim pursuant to Rule 12(b)(6) in a previous order and therefore need not address it here.

In order to be certified under Rule 23, a class must first comply with the four prerequisites established in the Rule's subsection (a): "(1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003) (citing Fed. R. Civ. P. 23(a)). Once that baseline is established, the class action "must fall within one of the three categories enumerated in Rule 23(b)." *Id.* (citing Fed. R. Civ. P. 23(b)). Plaintiffs seek class certification in this case under Rule 23(b)(3), (ECF No. 67 at 6), which requires both that "questions of law or fact common to class members predominate over any questions affecting only individual members" and, second, that "a class action is superior to other available methods" of adjudication, Fed. R. Civ. P. 23(b)(3).

A party seeking class certification under Rule 23 "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove" his ability to meet all of the prerequisites the Rule requires. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) ("The party seeking class certification bears the burden of proof." (citation omitted)). Yet while the plaintiff bears the burden to demonstrate compliance, a district court also "has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (citing *Wal-Mart*, 564 U.S. at 350–51). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351. However, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining

whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

When considering whether or not to certify a class, a court need not certify either all claims or none. Rather, Rule 23(c)(4) allows that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). To that end, the Fourth Circuit has held this provision "should be used to separate 'one or more claims' that are appropriate for class treatment" and, once isolated, only certify claims that remain able to independently meet the Rule 23 bar. *Gunnells*, 348 F.3d at 441. This allows the certification of individual claims in cases where there are "advantages and economies of adjudicating issues that are common to the entire class" while recognizing that "other issues in the case may have to be litigated separately by each class member." *Id.* (quoting 7B Wright & Miller, *Federal Practice and Procedure*, § 1790).

As noted above, to be certified under Rule 23 a party must first demonstrate that its class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No specified number is needed" to make this showing, *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967), and "a court has broad discretion" in making a determination based on the particular circumstances of the case, *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir. 1976) (citing 7A Wright & Miller, *supra*, § 1785). Indeed, some courts have held that classes as small as eighteen may satisfy the numerosity requirement. *See Cypress*, 375 F.2d at 653. Here, Plaintiffs allege that their purported class is at least one thousand, three hundred members. (ECF No. 67 at 16.) Such a class size is well within the range appropriate for class certification, *see Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th

11

Cir. 1984) (citations omitted), and the Court concludes that it is sufficiently large to meet the numerosity requirement.

The remaining prerequisites of commonality, typicality, and adequacy of representation require greater discussion. Given the broad scope of the allegations raising a range of disparate issues, the Court will consider each claim individually before drawing any conclusions as to whether Plaintiffs have adequately demonstrated compliance with Rule 23 for any definite class.

## A. Uniform Deduction

The Court begins by resolving the most straightforward remaining claim. Plaintiffs allege that Defendant "deducted the cost of uniforms from Employees' wages" without consent. (ECF No. 67 at 14.) However, in a class certification, it is axiomatic that at least one named plaintiff must be a member of the defined class. *Bailey v. Patterson*, 369 U.S. 31, 32–33 (1962) (holding that named plaintiffs "cannot represent a class of whom they are not a part"); *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (holding that a lower court erred in certifying a class "for the simple reason that it was evident by the time the case reached that court that the named plaintiffs . . . were not members of the class of discriminatees they purported to represent"); 7A Wright & Miller, *supra*, § 1761 (3d ed.) (noting the such a "prerequisite is inherent in the real-party-in-interest requirement prescribed by Rule 17(a) and is reinforced by the statement in Rule 23(a) that 'one or more members of a class may sue or be sued as representative parties'" (quoting Fed. R. Civ. P. 23(a))). Though the "decisions interpreting and applying this requirement are not uniform in the way they articulate the issue," 7A Wright & Miller, *supra*, § 1761 (highlighting cases that have rejected class certification on

12

this basis for reasons of inadequate representation, standing, and mootness), courts have nevertheless made clear that, when the named plaintiffs have "suffered no injury," they are "simply not eligible to represent a class of persons who did allegedly suffer injury," *E. Tex. Motor Freight*, 431 U.S. at 403–04.

Here, both named Plaintiffs acknowledge that Defendant has never deducted the cost of uniforms from their paychecks. (ECF Nos. 65-3 ¶ 21 (Plaintiff Mebane declaring "I was not charged for the cost of uniforms"); 65-4 ¶ 20 (Plaintiff Worsham making an identical declaration).) Though both Plaintiffs contend that they were "aware that GKN deducted the cost of uniforms from other manufacturing employees," *id.*, such a contention is not sufficient to demonstrate that they are members of the proposed class. Therefore, the Court concludes that the named Plaintiffs have not demonstrated that they may adequately represent a class claiming unlawful deduction of uniform costs and thus denies class certification on this issue.

## B. Compensation for Paid Lunch Breaks

Plaintiffs' additionally allege that Defendant did not compensate employees for a promised paid lunch break. (*See* ECF No. 67 at 11–12.) Having concluded above that Plaintiffs satisfy the Rule 23(a)(1) requirement for numerosity, the Court next turns to the second requirement for class certification: whether Plaintiffs are able to demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Because "any competently crafted class complaint literally raises common questions," what matters most to commonality is "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *See Wal-Mart*, 564 U.S. at 349–50 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–32 (2009))

Case 1:18-cv-00892-LCB-LPA   Document 82   Filed 11/05/20   Page 13 of 25

(internal quotation marks omitted). Further, although Rule 23(a)(2) speaks of "questions," plural, "[a] single common question will suffice," so long as it is "of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *EQT*, 764 F.3d at 360 (citing *Wal-Mart*, 564 U.S. at 350, 359). That said, "[t]he common questions must be dispositive and over-shadow other issues" in the case, *Lienhart*, 255 F.3d at 146 (citation omitted), and a plaintiff must show that he or she has suffered the same injury and not merely a violation of a particular provision of law, *Wal-Mart*, 564 U.S. at 349–50 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).

The common questions of fact on this claim would resolve whether paid lunch breaks were in fact promised to members of the class and whether employees were actually compensated for this time. Here, Plaintiffs claim that they "understood" their lunch breaks to be paid, (ECF No. 67 at 11), but provide no documentation demonstrating a paid meal policy that would apply broadly to the employees in their proposed class. They rely instead on Defendant's Employee Handbook that merely dictates the length of the lunch break, the role of one's supervisor in scheduling it, and a policy of "badg[ing] out" should one leave the premises. (*Id.* at 11 n.14 (quoting ECF No. 42-2 at 6, 40).) To the extent that Plaintiffs rely on unwritten communications, (*id.* at 11–12 (noting vaguely that paid lunch breaks had been "communicated" to Plaintiffs)), the Fourth Circuit has held that evidence of an "oral nature" is "a particularly shaky basis for a class claim," *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 341 (4th Cir. 1998).

Though the Court declines to delve into the merits of this claim, it bears mentioning that the one written policy Plaintiffs do provide strongly suggests that a lunch break is unpaid.

14

(*See* ECF 65-9 (Exhibit I).) This document, which Plaintiffs describe as Defendant's "Kronos Rounding Policy," outlines several examples of how the rounding of employees' time cards affects the overall number of hours they are paid. (*Id.*) A typical example describes an employee who works from "6:00 a.m. to 2:30 p.m." and who is paid for eight hours of work. (*Id.*) Each example in the document, without explanation, deducts thirty minutes from the span of time in which the employee is on the job. (*Id.*) This lines up with a presentation to new employees provided by Defendant that indicates hourly employees have a thirty-minute, unpaid lunch break. (ECF No. 74-1 at 9, 13.) Therefore, Plaintiffs have not established that there are issues of fact bearing on this claim that are common across the putative class. Even if Plaintiffs could show that Defendant violated the NCWHA in their particular cases, they are unable to demonstrate that a similar policy would have likewise been injurious to other class members.

The next prerequisite in a class certification claim is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality does not require "that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned"—some minor variation between a named plaintiff's individual claim and those of the class members one aims to represent is to be expected. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006). However, courts will readily deny class certification "when the variation in claims strikes at the heart of the respective causes of actions." *See id.*

Plaintiffs likewise have difficulty meeting this bar. Even though the Court makes no judgment as to whether Defendant promised Plaintiffs that they would be compensated for

15

their lunch breaks, as noted in the commonality analysis the only evidence before the Court indicates that such an agreement would be exceptional and not the result of a policy that typically affected other members of the putative class. When a plaintiff is unable to demonstrate how a violation of her own right affects the rights of others, both commonality and typicality are lacking. *Broussard*, 155 F.3d at 340 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998)).

The Court thus concludes that Plaintiffs have failed to demonstrate that the putative class has suffered a common injury or that resolving the question of whether Plaintiffs were promised a paid lunch break is dispositive on this issue as to all such claims. Additionally, there is no evidence that, should an injury have occurred, it is typical of the putative class. Therefore, the Court denies class certification on this issue.

## C.     Premium Pay for Second and Third Shifts

Plaintiffs next claim that "Defendant maintained a policy of guaranteeing employees 'premium shift pay,' but failed to pay employees the enhanced hourly rate as promised." (ECF No. 67 at 12 (citing ECF No. 42-2 at 41, 68).) In this claim, Plaintiffs are able to point to a common policy that would apply broadly to putative members of their proposed class. Defendant's Employee Handbook provides that "[p]roduction employees assigned to a shift other than first are paid a shift premium in addition to the base rate for work performed during second and third shifts." (ECF No. 42-2 at 41, 67–68.) Plaintiffs additionally identify GKN policies that allocate higher pay to employees who are temporarily assigned to one of these shifts. (ECF No. 76 at 11–12 (citing ECF No. 42-2 at 40, 67).)

16

This claim, however, similarly fails to meet the Rule 23 requirements for commonality and typicality. The Fourth Circuit has been comfortable certifying classes where a single action by a Defendant has affected a putative class to varying degrees. *See Gunnells*, 348 F.3d at 427–28 (holding that relatively complex and individualized damage awards did not preclude class certification). However, it has declined to grant certification when plaintiffs allege multiple violations of company policy and the rights they seek to enforce are the result of individual agreements. For instance, the Fourth Circuit has found that commonality and typicality were both missing when the differences between the agreements in the case raised "the distinct possibility that there was a breach of contract with some class members, but not with other class members." *Broussard*, 155 F.3d at 340; *see also Deiter*, 436 F.3d at 466–67 (holding that putative class members who signed different contracts with a technology vendor did not satisfy the typicality requirement and finding that, to meet this bar, a "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim"). Therefore, when a putative class is comprised of members "who signed different contracts at different times and had different levels of compensable injury," the group is "no more than a hodgepodge of factually as well as legally different plaintiffs that should not [be] cobbled together for trial." *Lienhart*, 255 F.3d at 147 (quoting *Broussard*, 155 F.3d at 343) (internal quotation marks omitted).

Here, there are putative class members who have never worked the second or third shift, others who have worked only those shifts, and some who have worked both. Some employees have worked either of these shifts full-time, others for temporary periods not long enough to trigger a change in pay, and others for periods long enough to trigger a change in

17

pay but still considered temporary. The violations that Plaintiffs allege thus do not stem from a single violation, but rather are based on individual offer letters, contracts, verbal agreements, or shift assignments. As with the putative class members in *Broussard*, there is a "distinct possibility that there was a breach of contract with some class members, but not with other class members." *Broussard*, 155 F.3d at 340.

Therefore, the Court concludes that these amalgamated contract actions are not appropriate for class action and denies certification for this claim.

### D. Rounding Policy

Finally, Plaintiffs claim that Defendant maintained a practice of rounding down employees' hours in violation of the NCWHA. (ECF No. 67 at 10.) More specifically, they allege that, even though Defendant maintained records of actual hours employees worked, the "Kronos Rounding Policy" systematically decreased the time recognized as accrued, thus leading to an organizational practice of underpaying its employees in violation of N.C. Gen. Stat. § 95-25.6. (*Id.* (citing ECF No. 65-9).)

Having found the numerosity requirement satisfied, the Court first considers whether the proposed class members share common questions of law and fact pursuant to Rule 23's commonality requirement. As noted in more detail above, "a district court must determine whether even a *single* question of fact or law is common to the class." *Ealy v. Pinkerton Gov't Servs., Inc.* 514 Fed. App'x 299, 307 (4th Cir. 2013) ("Such questions will depend on a common contention, the resolution of which will resolve an issue that is central to the validity of each one of the claims in one stroke." (citing *Wal-Mart*, 564 U.S. at 350) (internal quotation marks omitted)). In this case, it is undisputed that Defendant applied the rounding policy before the

18

Court to its hourly employees. (*See* ECF No. 74 at 18 (Defendant acknowledging that "the policies presented accurately describe GKN's policies regarding rounding.") Additionally, there is an open question as to whether this policy was a violation of the NCWHA. Therefore, a resolution of whether this practice is legal under state law is central to the validity of these claims and can, "with one stroke," resolve what appears to be the most salient outstanding issue.[5]

The Court next moves to an analysis of typicality under Rule 23. Typicality is demonstrated when a representative's pursuit of her own interests "simultaneously tend[s] to advance the interests of the absent class members." *Deiter*, 436 F.3d at 466. An appropriate analysis of typicality begins "with a review of the elements of plaintiffs' *prima facie* case and the facts on which the plaintiff would necessarily rely to prove it." *Id.* at 467. A court must then "determine the extent to which those facts would also prove the claims of the absent class members." *Id.*

The "payday statute" found in N.C. Gen. Stat. § 95-25.6 provides that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday." Therefore, to make out a *prima facie* case, a plaintiff must simply show that she (1) earned wages that (2) an employer did not pay (3) at the proper time. Though there might be many ways to demonstrate a violation of this statute, a plaintiff in this particular putative class would need to demonstrate that she accrued wages that were systematically undercounted by

---

[5] Defendant contends that "GKN's rounding policy is neutral and lawful on its face" and that "[t]he record before this Court demonstrates no plausible basis for certifying a rounding class under state law." (ECF No. 74 at 6–7.) Yet, as noted above, at this stage a court should consider the merits of a claim only to the extent that they are relevant to determine whether Rule 23's requirements have been satisfied, *Amgen*, 568 U.S. at 466, and thus makes no findings as to the legality of Defendant's policy.

Defendant's policy and thus not paid in full and/or on time. These same facts would be needed to prove the claims of absent class members as well. Therefore, the Court concludes that Plaintiffs have met the typicality burden here.

Next, Plaintiffs must show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In addition to Plaintiffs being members of this class, "basic due process requires that named plaintiffs [also] possess undivided loyalties to absent class members." *Broussard*, 155 F.3d at 338. Though Plaintiffs allude in their Reply to a number of "happy camper" declarations provided by GKN employees who support at least aspects of Defendant's contentions, (ECF No. 76 at 6–7), there is no evidence that Plaintiffs have any interest that conflicts with any employees who would be members of this putative class. On the contrary, Plaintiffs seek a resolution of this case that would challenge only a decrease in employee pay and where a ruling in their favor would provide additional compensation to any employee affected by this policy. Plaintiffs therefore satisfy this requirement.

Under Rule 23(a)(4), a court must also find that class counsel is "qualified, experienced and generally able to conduct the proposed litigation." *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 476 (E.D.N.C. 2010) (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)). The Court has reviewed counsel's qualifications and involvement in similar litigation and finds that she possesses the necessary experience to satisfy the adequacy of representation requirement.

When a plaintiff is able to satisfy each element of Rule 23(a), they must additionally meet one of the requirements under 23(b). Fed. R. Civ. P. 23(b). In this case, Plaintiffs seek class certification under Rule 23(b)(3), (ECF No. 67 at 6), which requires (1) that "questions

20

of law or fact common to class members predominate over any questions affecting only individual members"; and (2) that "a class action is superior to other available methods" of adjudication, Fed. R. Civ. P. 23(b)(3).

A predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). A court must consider "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues," *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:49, 195–96 (5th ed. 2012)). An individual issue is one where evidence varies between class members whereas common issues are present when "the same evidence will suffice for each member to make a prima facie showing . . . ." *Id.* (quoting Rubenstein, *supra* § 4:50, 196–97). Ultimately, this "balancing test of common and individual issues is qualitative, not quantitative." *Ealy,* 514 F. App'x at 305 (citing *Gunnells*, 348 F.3d at 429).

The most prevalent common issue for this class is that Defendant calculated time accrued in the same way for all putative class members pursuant to their rounding policy. (ECF Nos. 65-9 at 2 ("In an effort to be consistent at all GKN Driveline facilities across the, United States, GKN Driveline will be converting our time system (Kronos) to the 7/8 rounding rule at all sites, effective September 1, 2014."); 65-12 (outlining changes to the rounding policy).) Plaintiffs are also either former or current employees of the same Defendant who have worked in North Carolina facilities governed by the state's Wage and Hour Act. (ECF No. 67 at 25.) There is at least one individual issue the Court must consider,

which is how much a change in the methodology of calculations—such as when Defendant altered its rounding policy in 2019, (ECF No. 65-12)—weighs against class certification when it means that individual plaintiffs may hold varying rights. *EQT*, 764 F.3d at 366–67.

,Rule 23(b)(3)(A)–(D) also outlines four factors that are pertinent to the predominance and superiority inquiry.[6]  None of these factors weigh heavily in the instant case.  Per subsection (A), there is no evidence that any class members have any specific interest in controlling either the prosecution or defense of distinct actions, nor is there any indication per subsection (B) that any class members have already begun to litigate this matter separately. Turning to subsection (C), the Court acknowledges that the adjudication of state law claims is often best left to state courts.  That said, the state law issues in this case are not complex, and judicial efficiency weighs in favor of litigating this matter in conjunction with the federal FLSA claim.  Finally, there is no evidence before the Court that there are any undue challenges in managing this class action under subsection (D).

In sum, one common policy affects all putative class members and the resolution of whether that practice comports with the NCWHA is at the very heart of the claim.  Had there

---

[6] Rule 23(b)(3)(A)–(D) provides the four factors in full:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

22

been evidence that the change in shift policy altered the claims of the Plaintiffs in a substantive legal way such that, for instance, only those who were subject to the latter policy had a viable claim and those subject only to the former policy did not, this might have shifted the balance in a meaningful way. However, such evidence is not before the Court. Therefore, the Court finds that common questions of law predominate, and the factual and legal issues may be effectively and uniformly adjudicated in the instant case. Additionally, there appears to be no method superior to class treatment for bringing these claims.

Thus, the Court, having narrowed the scope of the claims to this single issue, orders the certification of the following class:

> Individuals who were, are, or will be employed at Defendant GKN's North Carolina facilities on the manufacturing floor in non-managerial positions, were not compensated all promised, earned, and accrued wages due to Defendant's rounding policy, including, but not limited to, compensation for all hours worked up to forty (40) in a week and for hours worked above forty (40) in a week within two years prior to the commencement of this action, through the present.

Rule 23(c)(2)(B) outlines the notice requirements for classes certified under Rule 23(b)(3). The Court has reviewed the proposed notice of Plaintiffs and finds that it has satisfied six of the seven requirements of that subsection. However, it does not clearly and concisely state, as required under 23(c)(2)(B)(iv), "that a class member may enter an appearance through an attorney if the member so desires." Fed. R. Civ. P. 23(c)(2)(B)(iv). Therefore, the Court orders that Plaintiffs update the notice to include such a statement.

In sum, the new notice must include the following changes:

- appropriate dates;

- a seventy-five-day opt-in period;

- the class definition above;

- the dismissal of claims related to payroll deductions for a "tobacco surcharge" and uniforms, paid lunch breaks, and premium shift pay; and

- the statement outlined in Rule 23(c)(2)(B)(iv).

Plaintiffs must resubmit the updated communication within fifteen days of this Order. Additionally, for the reasons stated above regarding the FLSA collective action notification, Plaintiffs may communicate their notice through first class mail, email, and text messages.

Finally, and again for the reasons already stated, the Court reiterates that Defendant provide the name, job title, address, telephone number, email address, dates of employment, location of employment, and shift assignment of all employees subject to the rounding policy whom Defendant has employed since October 23, 2015. Defendant must provide this information in electronic, importable, and native format within fifteen days of this Order.

## ORDER

IT IS THEREFORE ORDERED that the Plaintiffs' Motion to Conditionally Certify a Collective Action under § 216(b) of FLSA, (ECF No. 64), is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Class Certification under Rule 23, (ECF No. 64), is GRANTED only insofar as Plaintiffs seek relief for violations of the NCWHA resulting from Defendant's policy of rounding time and DENIED as to all other claims.

IT IS FURTHER ORDERED that Plaintiffs resubmit an updated proposed notice edited to comply with all current and previous Orders of this Court within fifteen days of this Order. Those edits include, but are not limited to appropriate dates, a seventy-five-day opt-in

period, the new class definition, and the dismissal of all claims unrelated to Defendant's rounding policy.

IT IS FURTHER ORDERED that Defendant provide Plaintiffs with the information outlined above within fifteen days of this Order.

This, the 5th day of November 2020.

/s/ Loretta C. Biggs
United States District Judge