IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JAMES MEBANE AND ANGELA WORSHAM, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>GKN DRIVELINE NORTH AMERICA, INC.,<br><br>        Defendant. | Case No.: 1:18-CV-892-LCB-LPA |

**DEFENDANT'S ANSWER TO PLAINTIFFS' SECOND AMENDED
COLLECTIVE AND CLASS ACTION COMPLAINT**

Defendant GKN Driveline North America, Inc. ("GKN" or "Defendant") hereby submits this Answer to Plaintiffs' Second Amended Collective and Class Action Complaint (the "Complaint") (ECF No. 43). GKN denies or reserves the right to challenge any assertion in the Complaint not expressly admitted in this Answer. With respect to matters in this Answer that may constitute a legal defense, GKN reserves the right to argue that Plaintiffs bear the burden of proof as to some or all of those matters. Items in italics below denote matter quoted from the Complaint.

### PRELIMINARY STATEMENT

1. *Plaintiffs, on behalf of themselves and all others similarly situated, bring this action against GKN Driveline North America, Inc., ("GKN" or "Defendant") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, et seq., for unpaid overtime compensation, unpaid wages, and related penalties and damages.*

**ANSWER:** GKN admits that Plaintiffs purport to bring the action as described, but otherwise denies the allegations contained in Paragraph 1 of the Complaint. GKN denies that it

violated the FLSA, the NCWHA, or any other law or regulation, or engaged in any unlawful conduct that could give rise to any claims.

2. *Plaintiffs consist of current and former employees working at Defendant GKN's manufacturing facilities. Defendant has a policy, pattern or practice of failing to pay employees for all scheduled and overtime hours worked (even though such hours were properly recorded), failing to pay employees all earned, promised and accrued wages, and forbidding employees to record all hours worked. In particular, throughout the relevant period, Defendant has maintained a corporate policy of failing to compensate employees for all hours worked, (even though such hours were properly recorded), including mandatory pre-shift and post-shift work, promised paid lunch "breaks," failing to compensate employees at the promised rate for hours worked less than 40 per week and/or overtime rate for all hours worked in excess of forty (40) per week, and of making unauthorized deductions from employees' wages for tobacco use and uniforms.*

**ANSWER:** GKN admits that Plaintiffs purport to bring the action as described, but otherwise denies the allegations contained in Paragraph 2 of the Complaint. GKN further denies that this case is appropriate for collective or class adjudication.

3. *Defendant's pay practices and policies are in direct violation of the FLSA and the NCWHA; and therefore Plaintiffs, on behalf of themselves, and all others similarly situated, seek promised wages and overtime premiums for all regular-rate and overtime work required, suffered, or permitted by Defendant, liquidated damages and/or other damages as permitted by applicable law; attorneys' fees, costs and expenses incurred in this action.*

**ANSWER:** The allegations in Paragraph 3 of the Complaint constitute conclusions of law and Plaintiffs' characterization of the case to which no response is required. GKN denies the allegations in Paragraph 3 of the Complaint, and denies that the case is appropriate for collective or class adjudication.

4.     *Plaintiffs bring this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class:*

> *All individuals who were, are, or will be employed at Defendant GKN's North Carolina facilities on the manufacturing floor in non-managerial positions who were not compensated for all of their hours worked, including, but not limited, above forty (40) per week and/or have had improper deductions taken from their wages at any time within three years prior to the commencement of this action, through the present.*

**ANSWER:**     GKN admits that Plaintiffs purport to bring the action as described, but otherwise denies the allegations contained in Paragraph 4 of the Complaint, and denies that the case is appropriate for collective adjudication.

5.     *Defendant is liable for its failure to pay Plaintiffs for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.*

**ANSWER:**     The allegations in Paragraph 5 of the Complaint constitute conclusions of law and Plaintiffs' characterization of the case to which no response is required.  To the extent a response is required, GKN denies the allegations in Paragraph 5 of the Complaint.

6.     *Plaintiffs who elect to participate in this FLSA collective action seek compensation for all pre-shift and post-shift work performed for Defendant, compensation at the appropriate overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).*

**ANSWER:**     GKN admits that Plaintiffs purport to bring the action as described, but otherwise denies the allegations contained in Paragraph 6 of the Complaint, and denies that the case is appropriate for collective adjudication.

7.     *Plaintiffs also bring this action, on their own behalf, and as a representative of similarly situated current, former or future manufacturing employees, employed by Defendant at GKN's manufacturing facilities in North Carolina, under the NCWHA.  Plaintiffs, who are North*

*Carolina residents and who worked for Defendant in North Carolina, assert that they and the pu-*

*tative class, who work or worked in North Carolina for Defendant, are entitled to compensation*

*for all work performed for Defendant before and/or after their scheduled shift, and who were not*

*paid for promised compensated lunch breaks. Additionally, whether the workweek totaled greater*

*or fewer than forty (40) hours, compensation at the appropriate regular and overtime rate for all*

*hours worked in excess of forty (40) per week, compensation for all unauthorized deductions from*

*their wages, for an equal amount of liquidated damages, prejudgment interest, and attorneys' fees*

*and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).*

**ANSWER:** The allegations in Paragraph 7 of the Complaint constitute conclusions of

law and Plaintiffs' characterization of the case to which no response is required. To the extent a

response is required, GKN admits that Plaintiffs purport to bring the action as described, but oth-

erwise denies the allegations contained in Paragraph 7 of the Complaint, and denies that the case

is appropriate for class adjudication.

*8. Additionally, throughout the relevant time period, Defendant maintained a corpo-*

*rate policy of deducting the costs of uniforms and a "tobacco surcharge" from employees' wag-*

*es, without obtaining the employees' prior written authorization as required by N.C. Gen. Stat.*

*§ 95-25.8.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss

(ECF 81), no response to the allegations in Paragraph 8 of the Complaint is required.

*9. Plaintiffs seek class certification under Rule 23 of the Federal Rules of Civil Pro-*

*cedure for the following class of Defendant's employees in North Carolina:*

> *All individuals who were, are, or will be employed at Defendant GKN's*
> *North Carolina facilities on the manufacturing floor in non-managerial posi-*
> *tions were not compensated all promised, earned, and accrued wages, in-*
> *cluding, but not limited to, compensation for all hours worked up to forty*
> *(40) in a week and for hours worked above forty (40) in a week, and/or have*
> *had improper deductions taken from their wages at any time within two*

*years prior to the commencement of this action, through the present.*

**ANSWER:** GKN admits that Plaintiffs purport to bring the action as described, but otherwise denies the allegations contained in Paragraph 9 of the Complaint, and denies that the case is appropriate for class adjudication.

*10. Plaintiff Mebane also brings this action individually for age-based harassment, discrimination, and retaliation under Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 to 29 U.S.C. § 634 in addition to assault, battery, intentional infliction of emotional distress, and negligent employment, supervision and retention. As alleged with greater specificity below, Defendant GKN subjected Plaintiff Mebane to age-based discrimination and harassment, which created a hostile work environment, leading to Plaintiff Mebane's being placed in a life-threatening situation. When Plaintiff Mebane reported this situation, Defendant GKN took an unlawful adverse employment action against Plaintiff Mebane. Accordingly, Plaintiff Mebane seeks all available relief for these claims, including, but not limited to, back pay, front pay, past pecuniary losses, prejudgment interest, compensatory damages, punitive damages, attorney's fees and costs, and all other relief permitted by applicable law.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations in Paragraph 10 of the Complaint is required.

### PARTIES

*11. Plaintiff Mebane is an adult citizen and resident of the State of North Carolina, residing in Burlington.*

**ANSWER:** GKN lacks sufficient information to form a belief as to the accuracy of the allegations in Paragraph 11 of the Complaint that Plaintiff Mebane is an adult citizen and resident of the State of North Carolina, residing in Burlington, and on that basis denies that allegation.

12.     *Plaintiff Worsham is an adult citizen and resident of the State of North Carolina, residing in Graham.*

**ANSWER:**     GKN lacks sufficient information to form a belief as to the accuracy of the allegations in Paragraph 12 of the Complaint that Plaintiff Worsham is a resident of the State of North Carolina, residing in Graham, and on that basis denies that allegation.

13.     *Defendant GKN is organized under Delaware law and has its principal place of business at 2220 North Opdyke Road, Auburn Hills, MI 48326.*

**ANSWER:**     GKN admits the allegations in Paragraph 13 of the Complaint.

14.     *Defendant operates three regional facilities, including GKN Driveline—Alamance (located in Mebane), GKN Driveline—Roxboro, and GKN Driveline—Sanford.*

**ANSWER:**     GKN admits the allegations contained in Paragraph 14 of the Complaint.

15.     *Plaintiff Mebane worked for Defendant GKN in its Mebane, North Carolina, location as a non-exempt, hourly paid Machine Operator and later Line Inspector from approximately 2011 until on or about April 23, 2018.  During his employment with Defendant GKN, Plaintiff Mebane also worked at the GKN Driveline—Roxboro location.*

**ANSWER:**     GKN admits the allegations contained in Paragraph 15 of the Complaint that Plaintiff Mebane worked for GKN in the Mebane, North Carolina location, as a non-exempt hourly paid Machine Operator from November 20, 2011 until April 20, 2018.  GKN lacks sufficient information to form a belief as to the accuracy of the allegations in Paragraph 15 of the Complaint that Plaintiff Mebane also worked at the GKN Driveline – Roxboro location.  GKN denies the remaining allegations in Paragraph 15 of the Complaint.

16.     *Plaintiff Worsham worked for Defendant GKN in its Mebane, North Carolina location as a non-exempt, hourly paid Machine Operator.  She was directly hired by GKN in July 2017 and remained in that position until April 2018.*

**ANSWER:** GKN admits the allegations contained in Paragraph 16 of the Complaint that Plaintiff Worsham worked in the Mebane, North Carolina location as a non-exempt, hourly paid Machine Operator from July 10, 2017 to May 16, 2018.

17. *The FLSA collective action Putative Plaintiffs consist of individuals who have worked for Defendant, who were non-exempt employees paid an hourly wage, and who were not properly paid their overtime given Defendant's policy and practice of rounding down the number of hours employees worked and properly recorded pursuant to Defendant's strict policy that all employees accurately record all hours worked, including any time spent in any pre and/or post shift activities.*

**ANSWER:** The allegations contained in Paragraph 17 of the Complaint constitute conclusions of law and Plaintiffs' characterization of the case to which no response is required. To the extent a response is required, GKN admits that Plaintiffs purport to bring the action as described, but otherwise denies the allegations contained in Paragraph 17 of the Complaint, and denies that the case is appropriate for collective adjudication.

18. *Plaintiffs bring this action on their own behalf and, pursuant to 29 U.S.C. § 216(b), as representatives of a proposed collective action of similarly situated employees.*

**ANSWER:** The allegations contained in Paragraph 18 of the Complaint constitute conclusions of law and Plaintiffs' characterization of the case to which no response is required. To the extent a response is required, GKN admits that Plaintiffs purport to bring the action as described, but otherwise denies the allegations contained in Paragraph 18 of the Complaint, and denies that the case is appropriate for collective adjudication.

### *JURISDICTION AND VENUE*

19. *This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, et seq. and under ADEA, 29 U.S.C. § 621*

*et seq.*

**ANSWER:**    GKN admits the allegation contained in Paragraph 19 of the Complaint that this Court has federal question jurisdiction over the FLSA claims.  Further responding, GKN denies that it violated the FLSA or any other law or regulation, or engaged in any unlawful conduct that could give rise to any claims.  In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations pertaining to the ADEA in Paragraph 19 of the Complaint is required.

20.    *The United States District Court for the Middle District of North Carolina has personal jurisdiction because Defendant conducts business in Alamance County, North Carolina, which is located within this District.*

**ANSWER:**    GKN admits the contained allegation in Paragraph 20 of the Complaint that this Court has personal jurisdiction over GKN.  Further responding, GKN denies that it violated the FLSA, NCWHA, or any other law or regulation, or engaged in any unlawful conduct that could give rise to any claims.

21.    *Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendant conducted business within the Middle District of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.*

**ANSWER:**    GKN admits the allegation contained in Paragraph 21 of the Complaint that venue is proper in this Court.  Further responding, GKN denies that it violated the FLSA, NCWHA, or any other law or regulation, or engaged in any unlawful conduct that could give rise to any claims.

22.    *The claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.*

**ANSWER:**    GKN admits the allegation contained in Paragraph 22 of the Complaint

that Plaintiffs purport to bring the action as described in Paragraph 22 of the Complaint, but otherwise denies that it violated the FLSA, NCWHA, or any other law or regulation, or engaged in any unlawful conduct that could give rise to any claims.

23.     *Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 over the pendent state law claims under the NCWHA; negligent hiring, supervision, and retention; and wrongful termination, because those state law claims arise out of the same nucleus of operative fact as the FLSA and ADEA claims.*

**ANSWER:**     In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations in Paragraph 23 of the Complaint relating to dismissed claims is required. To the extent a response is required, GKN denies the allegation in Paragraph 23 of the Complaint that this Court has supplemental jurisdiction over the NCWHA claims. Further responding, GKN denies that it violated NCWHA or any other law or regulation, or engaged in any unlawful conduct that could give rise to any claims.

24.     *All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.*

**ANSWER:**     In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations in Paragraph 24 of the Complaint relating to dismissed claims is required. To the extent a response is required, GKN denies the allegations in Paragraph 24 of the Complaint.

25.     *Upon information and belief, during the time period relevant to this action, Defendant was an employer that employed Named and Putative Plaintiffs, pursuant to the FLSA, NCWHA, and ADEA, in that Defendant, or its agents, held or implemented the power, inter alia, to control the work performance of Named and Putative Plaintiffs, and Defendant received the benefit of Named and Putative Plaintiffs' labor.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations in Paragraph 25 of the Complaint relating to dismissed claims is required. To the extent a response is required, GKN admits that it was an employer that employed the Named Plaintiffs during their periods of employment. Further responding, GKN denies that it violated the FLSA, the NCWHA or any other law or regulation, or engaged in any unlawful conduct that could give rise to any claims.

*COVERAGE*

*26. At all times material to this action, Defendant has acted, directly or indirectly, in the interest of an employer or joint employer with respect to Named and Putative Plaintiffs.*

**ANSWER:** GKN admits the allegation in Paragraph 26 of the Complaint that during their employment, its employees are subject to the applicable provisions of the FLSA. GKN further denies that this case is appropriate for collective or class adjudication.

*27. At all times material to this action, Defendant was an employer within the defined scope of the FLSA, 29 U.S.C. § 203(d).*

**ANSWER:** GKN admits the allegation in Paragraph 27 of the Complaint that during their employment, its employees are subject to the applicable provisions of the FLSA. GKN further denies that this case is appropriate for collective adjudication.

*28. At all times material to this action, Named and Putative Plaintiffs were individual employees within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.*

**ANSWER:** GKN admits the allegation in Paragraph 27 of the Complaint that during their employment, its employees are subject to the applicable provisions of the FLSA. GKN further denies that this case is appropriate for collective adjudication.

*29. At all times material to this action, Defendant was an enterprise engaged in related activities performed through a unified operation or common control for a common business*

*purpose, as defined by the FLSA, 29 U.S.C. § 203(r).*

**ANSWER:**   GKN admits the allegation in Paragraph 29 of the Complaint that it met the standard of an enterprise under the FLSA.

*30.     At all times material to this action, Defendant was an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.*

**ANSWER:**   GKN admits the allegation in Paragraph 30 of the Complaint that its sales volume meets the threshold for interstate commerce under the FLSA.

*31.     At all times material to this action, Named Plaintiffs were employees of Defendant within the meaning of the ADEA, 29 U.S.C. § 630(f).*

**ANSWER:**   In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations in Paragraph 31 of the Complaint is required.

*32.     At all times material to this action, Defendant has continuously been an employer, with twenty (20) or more employees, engaged in an industry affecting commerce within the meaning of the ADEA, 29 U.S.C. § 630(b).*

**ANSWER:**   In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations in Paragraph 32 of the Complaint is required.

### *FACTUAL ALLEGATIONS COMMON TO ALL COUNTS*

*33.     Defendant GKN Driveline North America, Inc. designs, manufactures and services systems and components for leading aircraft, vehicle and machinery manufacturers.  De-*

*fendant GKN has a focus in developing, building and supplying an extensive range of automotive driveline products and systems, for luxury cars to low-cost cars.*

**ANSWER:** GKN admits that it designs, manufactures, and services systems and components for vehicle manufacturers. GKN denies the remaining allegations contained in the first sentence of Paragraph 33 of the Complaint. GKN admits the allegations contained in the second sentence of Paragraph 33 of the Complaint.

34. *Plaintiff James Mebane began work for GKN in 1998 and resigned in 2003. Plaintiff Mebane returned to work for the company in 2007 as a temporary employee to assist with expenses. In 2011, Plaintiff Mebane was hired full-time as a Machine Operator in the BMW Department.*

**ANSWER:** GKN admits the allegations contained in Paragraph 34 of the Complaint that Plaintiff James Mebane began work for GKN in 1998 and resigned in 1999. GKN admits that Plaintiff James Mebane worked as a temporary employee for GKN in 2011 and was hired full-time as a Machine Operator. GKN lacks information sufficient to form a belief as to the allegations contained in Paragraph 34 of the Complaint that Plaintiff Mebane worked as a temporary employee to assist with expenses, and on that basis denies those allegations.

35. *Plaintiff Mebane's duties included inspecting manufactured parts at the end of the line in a dark, curtained room under an ultraviolet light to search for cracks and defects in the parts prior to shipping.*

**ANSWER:** GKN admits the allegations in Paragraph 35 of the Complaint that Plaintiff Mebane's job duties included inspecting manufactured parts to ensure no cracks or defects exist prior to shipping.

36. *Plaintiff Mebane worked the third shift, which was scheduled from approximately 11:00 p.m. to 7:30 a.m., with two (2) paid ten (10) minute breaks, and one (1) thirty (30) minute*

*lunch break.  Plaintiff Mebane's final pay rate was approximately $18.45 per hour, which in-*
*cluded a premium for working the third shift.*

**ANSWER:**   GKN admits the allegations contained in Paragraph 36 of the Complaint
that Plaintiff Mebane worked the third shift at the Mebane location, from 11:00 p.m. to 7:30
a.m., with two (2) paid ten (10) minute breaks and one (1) thirty (30) minute unpaid lunch break.
GKN further admits that Plaintiff Mebane's final pay rate was at the time of termination was
$18.07 per hour, not including the $0.90 premium for working the third shift.  GKN affirmative-
ly states that Plaintiff Mebane's pay rate increased on April 1, 2018 from $17.52, exclusive of
the $0.90 premium for working the third shift, to $18.07 per hour.

*37.    Plaintiff Mebane was terminated on or about April 23, 2018.*

**ANSWER:**   GKN admits the allegations contained in Paragraph 37 of the Complaint
that Plaintiff Mebane was terminated, and further admits that Plaintiff Mebane was terminated on
April 20, 2018.

*38.    Plaintiff Angela Worsham was hired by Defendant GKN in July 2017.*

**ANSWER:**   GKN admits the allegations contained in Paragraph 38 of the Complaint
and further admits that GKN hired Plaintiff Worsham on July 10, 2017.

*39.    Plaintiff Worsham worked the second shift, which was scheduled from approxi-*
*mately 3:00 p.m. to 11:30 p.m., with two (2) paid ten (10) minute breaks, and one (1) thirty (30)*
*minute lunch break.  Plaintiff Worsham's final pay rate was approximately $14.80 per hour.*

**ANSWER:**   GKN admits the allegations contained in Paragraph 39 of the Complaint
that Plaintiff Worsham worked the second shift in the Mebane locations, and generally was
scheduled to work from 3:00 p.m. to 11:30 p.m., with two (2) paid ten (10) minute breaks and
one (1) thirty (30) minute unpaid lunch break.  GKN further admits that Plaintiff Worsham's fi-
nal pay rate at the time of termination was $14.68 per hour.

**40.** *Plaintiff Worsham was terminated in April 2018.*

**ANSWER:**     GKN denies the allegations contained in Paragraph 40 of the Complaint, but admits that Plaintiff Worsham was terminated in May 2018.

### WAGE-RELATED FACTUAL ALLEGATIONS

**41.** *Upon information and belief, Defendant GKN has more than 10,000 employees at approximately 50 locations around the United States. Six of these locations are in North Carolina, of which five specialize in driveline manufacturing.*

**ANSWER:**     GKN denies the allegations contained in Paragraph 41 of the Complaint, but admits that it has three locations in North Carolina.

**42.** *Defendant GKN employs machinists, line inspectors, and similar positions on its manufacturing floors to produce its products.*

**ANSWER:**     GKN admits the allegations contained in Paragraph 42 of the Complaint.

**43.** *Defendant GKN compensates machinists, line inspectors, and other manufacturing floor employees on an hourly basis. Defendant GKN classifies these employees as hourly non-exempt under the FLSA.*

**ANSWER:**     GKN admits the allegations contained in Paragraph 43 of the Complaint.

**44.** *Plaintiff Mebane worked for Defendant GKN as a machinist and later a line inspector during the relevant period. Plaintiff Worsham worked for Defendant GKN as a machine operator during the relevant period.*

**ANSWER:**     GKN admits that both Plaintiffs worked as Machine Operators. GKN otherwise denies the allegations contained in Paragraph 44 of the Complaint.

**45.** *Defendant requires employees working on the manufacturing floor to work scheduled shifts, typically eight and one-half (8.5) hour shifts, five (5) days per week, with a thirty (30) minute lunch break each day. Defendant often requires employees to work mandatory*

*overtime during seasons of heavy demand, such that employees may work their scheduled shift*

*six (6) to seven (7) days per week during busy months.*

**ANSWER:** GKN admits the allegations contained in Paragraph 45 of the Complaint that employees working on the manufacturing floor in the Mebane location are typically scheduled for eight and one-half (8.5) hour shifts, five(5) days per week, with a thirty (30) minute unpaid lunch break each day. When necessary, GKN requires employees to work overtime during seasons of heavy demand and employees may work six (6) to seven (7) days per week during busy months. GKN otherwise denies the allegations contained in Paragraph 45 of the Complaint.

*46. During the relevant period, to satisfactorily perform their job duties, manufacturing floor employees were required to arrive prior to the start of their scheduled shift, to perform essential job duties including, but not limited to, checking the machines, preparing tools, setting up the machines with required water temperatures, setting machine gauges to zero, ensuring the work area is clean, and engaging in department meetings to receive daily assignments.*

**ANSWER:** GKN denies the allegations contained in Paragraph 46 of the Complaint.

*47. This required pre-shift work was necessary to ensure that employees produced a high-quality product during their shift. Employees who failed to prepare their work area and machines before the beginning of their shift risked producing defective parts, which could lead to written warnings and termination of employment.*

**ANSWER:** GKN denies the allegations contained in Paragraph 47 of the Complaint.

*48. In approximately August 2017, Defendant GKN installed turnstiles in its Mebane location for security reasons, requiring employees to use their badges to enter the building.*

**ANSWER:** GKN denies the allegations contained in Paragraph 48 of the Complaint, but admits that GKN installed turnstiles in its Mebane location in or around December 2016 for safety reasons, requiring employees to use their badges to enter the facility.

49.    At the end of the end shift, employees engaged in activities that included, but were not limited to, cleaning their work areas and inputting production data regarding the day's work into Defendant GKN's computer system.

**ANSWER:**    GKN admits that before clocking out, employees engaged in activities toward the end of the shift that included, but were not limited to, cleaning their work areas and inputting production data regarding the day's work into GKN's computer system.  GKN denies the remaining allegations contained in Paragraph 49 of the Complaint.

50.    As a result of these activities, employees stayed past their scheduled shift end time, engaged in required post-shift activities—pursuant to Defendant's policy and practice of requiring employees clean their work area among other activities—and then clocked out, consistent with Defendant's policy and practice that all employees were required to properly record all hours worked.  Nevertheless, Defendant did not pay Plaintiffs for such time.

**ANSWER:**    GKN denies the allegations contained in Paragraph 50 of the Complaint, except admits that GKN's policies require employees to properly record all hours worked.

51.    In addition to pre- and post-shift work, employees were also required to remain on the premises during lunch breaks, and Plaintiffs understood that such lunch breaks were paid, as Defendant maintained a written policy that employees were required to "clock out" for lunch, if they left the premises for lunch.  Otherwise, such lunch breaks were paid.

**ANSWER:**    In light of the Court's Opinion and Order on Plaintiffs' Motions for Conditional Certification and Class Certification (ECF 82), no response to the allegations in Paragraph 51 of the Complaint is required.  To the extent a response is required, GKN denies the allegations contained in Paragraph 51 of the Complaint, except admits that employees were required to "clock out" if they left the premises.

52.    Since Defendant's handbook policy made clear that Plaintiffs were only required

*to clock-out if they left the premises during lunch, and Plaintiffs frequently were required to re-turn to their workstation during lunch, Plaintiffs understood that such lunch breaks were paid, as long as they stayed on the premises.*

**ANSWER:** In light of the Court's Opinion and Order on Plaintiffs' Motions for Condi-tional Certification and Class Certification (ECF 82), no response to the allegations in Paragraph 52 of the Complaint is required. To the extent a response is required, GKN denies the allega-tions contained in Paragraph 52 of the Complaint.

*53.    Defendant deducted a "tobacco surcharge" on a weekly basis from the pay of employees, including Plaintiff Mebane and Plaintiff Worsham, who used tobacco.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations in Paragraph 53 of the Complaint is required.

*54.    Defendant would also deduct the costs of uniforms from the pay of employees.*

**ANSWER:**    In light of the Court's Opinion and Order on Plaintiffs' Motions for Con-ditional Certification and Class Certification (ECF 82), no response to the allegations in Para-graph 54 of the Complaint is required.

*55.    Defendant did not obtain written authorization to deduct the "tobacco surcharge" or the cost of uniforms.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations in Paragraph 55 of the Complaint is required.

*56.    During the relevant time period, Defendant maintained a written company policy of promising "premium shift pay," or an additional sixty (60) to ninety (90) cents per hour, to employees who worked second or third shift.*

**ANSWER:**    In light of the Court's Opinion and Order on Plaintiffs' Motions for Con-ditional Certification and Class Certification (ECF 82), no response to the allegations in Para-

graph 56 of the Complaint is required. To the extent a response is required, GKN admits the allegations contained in Paragraph 56 of the Complaint that employees regularly assigned to work the second or third shift received "premium shift pay" pursuant to GKN policy.

57.    *Despite informing employees of the premium shift pay rates for second and third shifts, Defendant did not regularly compensate employees working the second or third shifts this promised rate.*

**ANSWER:**    In light of the Court's Opinion and Order on Plaintiffs' Motions for Conditional Certification and Class Certification (ECF 82), no response to the allegations in Paragraph 57 of the Complaint is required. To the extent a response is required, GKN denies the allegations contained in Paragraph 57 of the Complaint.

58.    *For example, Plaintiff Mebane knew his hourly rate, including premium shift pay, to be around $18.45 per hour but his paychecks show he received less than $18.00 an hour.*

**ANSWER:**    GKN denies the allegation contained in Paragraph 58 of the Complaint. GKN affirmatively states that Plaintiff Mebane's pay rate increased on April 1, 2018 from $17.52, exclusive of the $0.90 premium for working the third shift, to $18.07 per hour. GKN further affirmatively states that Plaintiff Mebane's pay rate, including the $0.90 premium for working the third shift, was $18.42 from April 2, 2017 to March 31, 2018.

59.    *Defendant's failure to compensate for all properly recorded hours worked and to pay employees all promised, earned and accrued wages, including lunch breaks, has affected all putative Plaintiffs similarly.*

ANSWER:    GKN denies the allegations contained in Paragraph 59 of the Complaint. GKN further denies that this case is appropriate for collective or class adjudication.

### AGE-BASED HARASSMENT, NEGLIGENT SUPERVISION, ASSAULT, BAT-
### TERY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND RETALIATION
### FACTUAL ALLEGATIONS

60.     *Plaintiff Mebane is sixty-one (61) years old.*

**ANSWER:**     In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 60 of the Complaint is required.

61.     *In approximately early 2017, Defendant GKN hired a machinist, Frank Adu-Sarpong, ("Frank"), who worked alongside Plaintiff Mebane. Frank was in his thirties with a strong build.*

**ANSWER:**     In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 61 of the Complaint is required.

62.     *Shortly after Frank began his employment with Defendant GKN, Frank began to threaten older employees.*

**ANSWER:**     In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 62 of the Complaint is required.

63.     *Frank repeatedly told other employees not to talk to him and that he would "fuck [them] up if [they] kept running [their] mouths." On a regular basis, Frank repeatedly jabbed Plaintiff Mebane in the chest with his forefinger, called Plaintiff Mebane an "old man," and threat-ened to kill Plaintiff Mebane and several other co-workers.*

**ANSWER:**     In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 63 of the Complaint is required.

64.     *Frank repeatedly harassed another employee, "Joey," who was in his fifties, in-cluding by pushing Joey with his body, jabbing him in the chest with his finger, and threatening to "fuck him up" and to hurt him.*

**ANSWER:**     In light of the Court's Opinion and Order on GKN's Motion to Dismiss

(ECF 81), no response to the allegations contained in Paragraph 64 of the Complaint is required.

65.    At one point, Plaintiff Mebane had to pull Frank off Joey.  This behavior ultimately caused Joey to request a transfer to another department. All of the older employees were terrified of Frank.

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 65 of the Complaint is required.

66.    Several employees, including Plaintiff Mebane, complained about Frank's behavior to Defendant GKN's management, including direct supervisor responsible for Plaintiff and Frank, Derrick Barbee; Mr. Barbee's supervisor, Corey Mason; and a lead supervisor, Paul Langford. Mr. Langford took responsibility for reporting the concerns to Defendant GKN's Human Resources Department, as the HR shifts did not overlap with the third shift.

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 66 of the Complaint is required.

67.    Defendant GKN ignored the complaints and took no action to correct the situation, except that Mr. Langford sometimes appeared on the floor to "keep an eye" on Frank. However, Frank only became more aggressive after learning of the complaints.

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 67 of the Complaint is required.

68.    On or about April 21, 2018, Frank became enraged with Plaintiff Mebane, pushed him, and told him, "when you come in the bathroom, I'm going to get you."  Plaintiff Mebane responded by telling Frank to get his hands off him.

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 68 of the Complaint is required.

69.    Later that same day, Frank told Plaintiff Mebane, "I'm going to shoot all of you.

*All of y'all are going to get shot, you watch."*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 69 of the Complaint is required.

*70.     Plaintiff Mebane informed his direct supervisor, Mr. Barbee, of the death threat. Mr. Barbee held an informal meeting with Plaintiff Mebane and the other two employees on the team. At this meeting, Mr. Barbee told the employees that he had advised Defendant GKN's Human Resources Department about the problem with Frank, and that it was clear Defendant GKN had no intention of addressing the problem, and that if the employees believed their lives were in danger, that they should simply defend themselves and yell for help.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 70 of the Complaint is required.

*71.     On or about April 23, 2018, while Plaintiff Mebane was at his work station, Frank came into the booth swinging a large hunting knife, and he stated, "I bought this for you." Plaintiff Mebane shouted and jumped back just in time to avoid being stabbed in the chest or stomach. Plaintiff Mebane immediately ran out of the booth, grabbed a part as if to defend himself, dodged Frank and ran.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 71 of the Complaint is required.

*72.     Frank began to chase Plaintiff Mebane around the floor while swinging the knife and threatening to kill him. Frank soon cornered Plaintiff Mebane, but other employees came to Plaintiff Mebane's aid, and one of them was able to ease the knife out of Frank's hand.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 72 of the Complaint is required.

*73.     Defendant GKN's management was informed, and Frank was ordered to go*

*home. Plaintiff Mebane urged management to call law enforcement due to the seriousness of the incident, but no call was made.*

**ANSWER:**   In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 73 of the Complaint is required.

*74.   Approximately forty-five (45) minutes later, between midnight and 2 a.m., Plaintiff Mebane was also instructed to go home.*

**ANSWER:**   In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 74 of the Complaint is required.

*75.   Given Frank's violent behavior, Plaintiff Mebane did not feel safe leaving the building alone. The shift supervisor, Corey Mason, walked Plaintiff Mebane out of the building.*

**ANSWER:**   In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 75 of the Complaint is required.

*76.   In the parking lot, Plaintiff Mebane and Mr. Mason saw Frank waiting in his car. Frank rolled down his window and began backing toward them. Concerned that he had a gun, Plaintiff Mebane ducked and then crossed a traffic island to put distance between them, and Mr. Mason yelled to him, "don't stop, go to your car."*

**ANSWER:**   In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 76 of the Complaint is required.

*77.   Plaintiff Mebane ran to his vehicle, followed by Frank. Plaintiff Mebane attempted to call 911, but was unable to get a signal, and instead called the guard headquarters. At that point, Frank appeared to leave, but as Plaintiff Mebane left the property, he found Frank waiting for him on the nearby frontage road. Frank then chased Plaintiff Mebane on the highway on his way home, but he was not able to catch him. Mr. Mason called Plaintiff Mebane repeatedly after his departure to ensure that he had arrived home safely.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 77 of the Complaint is required.

78. *After reporting the incident to Defendant GKN's management and prior to leaving the plant, Plaintiff Mebane was instructed to turn in his credentials and wait for a call from management. The following day, Plaintiff Mebane was contacted by Human Resources ("HR") for his version of events. Approximately two weeks later and without being offered the opportunity to return to work, Plaintiff Mebane was terminated by phone, and he later received a letter stating that his termination was due to an unspecified violation of company policy.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 78 of the Complaint is required.

79. *Plaintiff Mebane suffered fear and emotional distress resulting from the ongoing harassment and threats and from the assault, with symptoms including but not limited to headaches, insomnia, nightmares, and high blood pressure.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 79 of the Complaint is required.

80. *Plaintiff Mebane filed a charge of discrimination against Defendant on or about October 17, 2018, with the Equal Employment Opportunity Commission.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 80 of the Complaint is required.

81. *Plaintiff Mebane has not yet received notice of his right to sue for age-based harassment and retaliation, but pleads this claim at this time to promote judicial efficiency by filing all his claims in a single complaint, as the statute of limitations will continue to run on his own and putative plaintiffs' wage-related claims until those claims are filed with the court. Plaintiff Mebane will promptly supplement his complaint with a right to sue letter when it is issued.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 81 of the Complaint is required.

### *FLSA COLLECTIVE ACTION ALLEGATIONS*

82. *Named Plaintiffs bring the First Count of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated employees.*

**ANSWER:** GKN admits that Plaintiffs purport to bring the action as described, but otherwise denies the allegations contained in Paragraph 82 of the Complaint, and denies that the case is appropriate for collective adjudication.

83. *Members of the FLSA class are similarly situated.*

**ANSWER:** GKN denies the allegations contained in Paragraph 83 of the Complaint, and denies that this case is appropriate for collective adjudication.

84. *Members of the FLSA class have substantially similar job requirements and pay provisions, and are subject to common practices, policies, or plans that fail to compensate them for all work performed and fail to compensate them at the appropriate overtime rate for all hours worked in excess of forty (40) per week.*

**ANSWER:** GKN denies the allegations contained in Paragraph 84 of the Complaint, and denies that this case is appropriate for collective adjudication.

85. *There are numerous (in excess of 100) similarly situated current and former manufacturing floor employees that fall within the scope of the aforementioned FLSA class.*

**ANSWER:** GKN admits the allegation contained in Paragraph 85 of the Complaint that there are more than 100 manufacturing floor employees, but otherwise denies the allegations contained in Paragraph 85 of the Complaint. GKN further denies that this case is appropriate for collective adjudication.

86. *These similarly situated employees are known to Defendant, are readily identifia-*

*ble, and can be located through Defendant's records.*

**ANSWER:** GKN denies the allegations contained in Paragraph 86 of the Complaint, and denies that this case is appropriate for collective adjudication.

*87. Members of the proposed FLSA class, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).*

**ANSWER:** GKN denies the allegations contained in Paragraph 87 of the Complaint, and denies that this case is appropriate for collective adjudication.

*88. Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs.*

**ANSWER:** GKN denies the allegations contained in Paragraph 88 of the Complaint, and denies that this case is appropriate for collective adjudication.

*89. Named Plaintiffs consent in writing to assert their claims for unpaid wages under the FLSA pursuant to 29 U.S.C. § 216(b). Named Plaintiffs' signed consent forms are filed with the Court as Exhibits A and B to this Complaint. As this case proceeds, it is likely other individuals will file consent forms and join as opt-in plaintiffs.*

**ANSWER:** GKN admits that the named Plaintiffs consented to assert their claims under the FLSA, but otherwise denies the allegations contained in Paragraph 89 of the Complaint and denies that the case is appropriate for collective adjudication.

*90. Named Plaintiffs request that they be permitted to serve as representatives of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).*

**ANSWER:** GKN admits that Plaintiffs purport to bring the action as described, but otherwise denies the allegations contained in Paragraph 90 of the Complaint, and denies that the case is appropriate for collective adjudication.

91.     *Plaintiffs brings the Second Cause of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all similarly situated employees, for relief to redress and remedy Defendant's violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, et seq.*

**ANSWER:**     GKN admits that Plaintiffs purport to bring the action as described, but otherwise denies the allegations contained in Paragraph 91 of the Complaint, and denies that the case is appropriate for class adjudication.

92.     *Numerosity: The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiffs at this time, upon information and belief, the class comprises more than 100 individuals.*

**ANSWER:**     GKN admits that there are more than 100 manufacturing floor employees, but otherwise denies the allegations contained in Paragraph 92 of the Complaint.  GKN further denies that this case is appropriate for class adjudication.

93.     *Common Questions Predominate: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all putative class members have been harmed by Defendant's failure to lawfully compensate them.  The common questions of law and fact include, but are not limited to, the following:*

a.     *Whether pre-shift and post-shift work performed by putative Class Members is compensable under the NCWHA;*

b.     *Whether Defendant's failure to compensate putative Class Members for pre-shift*

and post-shift work is in violation of the NCWHA;

c.     Whether Defendant failed to compensate putative Class Members at the earned, accrued, and/or promised rate for all hours worked in excess of forty (40) each week;

d.     Whether Defendant provided any advance written notice of their intent to make wage deductions for tobacco use in the manner required by the NCWHA;

e.     If Defendant did provide employees with any form of written notice of its intent to make wage deductions, whether the content of that notice complied with the technical requirements of the NCWHA; and

f.     Whether Defendant failed to compensate putative NC Class Members for all of their earned, accrued, and/or promised wages, including, but not limited to, straight time and overtime on their regular pay date, in violation of the NCWHA.

**ANSWER:**     In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 93 of the Complaint relating to dismissed claims is required.  To the extent a response is required, GKN admits that Plaintiffs purport to bring the action as described, but otherwise denies the allegations contained in Paragraph 93 of the Complaint, and denies that the case is appropriate for class adjudication.

94.     _Typicality:_ The claims of Plaintiffs are typical of the claims which could be alleged by any member of the putative Class, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions.  All putative class members were subject to the same compensation practices of Defendant, as alleged herein, of failing to pay employees for all pre-shift and post-shift work, for hours worked in excess of forty (40) each week at the appropriate hourly rate, and for all hours worked at the appropriate hourly rate.  Defendant's compensation policies and practices affected all putative class members similarly, and Defendant benefited from the same type of unfair and/or unlawful acts as to each putative class

*member. Plaintiffs and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.*

**ANSWER:** GKN admits that Plaintiffs purport to bring the action as described, but otherwise denies the allegations contained in Paragraph 94 of the Complaint, and denies that the case is appropriate for class adjudication.

95. *Adequacy of Representation: Plaintiffs are able to fairly and adequately protect the interests of all members of the proposed class, and there are no known conflicts of interest between Plaintiffs and members of the proposed class. Plaintiffs have retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.*

**ANSWER:** GKN lacks information sufficient to form a belief as to the allegations contained in Paragraph 95 of the Complaint, and on that basis denies those allegations, and further denies that this action is appropriate for class adjudication.

96. *Superiority: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk*

*of inconsistent and/or varying adjudications with respect to the individual members of the class,*

*establishing incompatible standards of conduct for Defendant, and resulting in the impairment of*

*class members' rights and the disposition of their interests through actions to which they are not*

*parties. The issue in this action can be decided by means of common, class-wide proof. In addi-*

*tion, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this*

*action as a class action.*

**ANSWER:** GKN denies the allegations contained in Paragraph 96 of the Complaint and
denies that the case is appropriate for class adjudication.

97.     *Public Policy Considerations: Defendant violated the NCWHA. Just as current*

*employees are often afraid to assert their rights out of fear of direct or indirect retaliation, for-*

*mer employees may also be fearful of bringing claims because doing so can harm their employ-*

*ment, future employment, and future efforts to secure employment. Class action lawsuits provide*

*class members who are not named in the Complaint a degree of anonymity, which allows for*

*vindication of their rights while eliminating or reducing these risks.*

**ANSWER:** GKN denies the allegations contained in Paragraph 97 of the Complaint,
and denies that the case is appropriate for class adjudication.

98.     *Pursuit of this action as a class will provide the most efficient mechanism for ad-*

*judicating the claims of Plaintiffs and members of the proposed class.*

**ANSWER:** GKN denies the allegations contained in Paragraph 97 of the Complaint,
and denies that the case is appropriate for class adjudication.

### COUNT ONE
### *Violation of the Fair Labor Standards Act 29 U.S.C. § 207*
### *Brought by Plaintiffs on Behalf of Themselves and All Similarly Situated Employees*

99.     *Plaintiffs incorporate by reference all preceding paragraphs as if the same were*

*repeated here verbatim.*

**ANSWER:** GKN incorporates all preceding paragraphs of this Answer as if fully set forth in this paragraph.

100. *At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.*

**ANSWER:** GKN admits the allegation in Paragraph 100 of the Complaint that during their employment, its employees are subject to the applicable provisions of the FLSA. GKN further denies that this case is appropriate for collective adjudication.

101. *At all relevant times, Defendant has employed, and continues to employ, "employee[s]," including Named Plaintiffs, and each of the members of the prospective FLSA Class, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.*

**ANSWER:** GKN admits the allegation in Paragraph 101 of the Complaint that during their employment, its employees are subject to the applicable provisions of the FLSA. GKN further denies that this case is appropriate for collective adjudication.

102. *At all relevant times, Defendant has had gross operating revenues in excess of $500,000.*

**ANSWER:** GKN admits the allegation contained in Paragraph 102 of the Complaint that its sales volume meets the threshold for interstate commerce under the FLSA.

103. *The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendant, to compensate all non-exempt employees at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.*

**ANSWER:** GKN admits the allegation contained in Paragraph 103 of the Complaint

that during their employment, its employees are subject to the applicable provisions of the FLSA. GKN further denies that this case is appropriate for collective adjudication.

*104. At all relevant times, Defendant, pursuant to their policies and practices, willfully failed and refused to pay for all hours worked to Plaintiffs, including for required pre-shift and post-shift work performed by Plaintiffs.*

**ANSWER:** GKN denies the allegations contained in Paragraph 104 of the Complaint.

*105. Defendant's failure to pay Plaintiffs for all hours worked, and at the appropriate overtime rate for hours worked in excess of forty (40) per week, in weeks where Plaintiffs worked over 40 hours, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b), since Defendant cannot show they acted in good faith, and a three (3) year, rather than two (2) year statute of limitations, since Defendant's acts constitute willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).*

**ANSWER:** GKN denies the allegations contained in Paragraph 105 of the Complaint.

*106. As a result of Defendant's unlawful acts, Plaintiffs have been deprived of compensation for all required hours worked, and appropriate compensation for all overtime hours worked, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).*

**ANSWER:** GKN denies the allegations contained in Paragraph 106 of the Complaint. GKN further denies that this case is appropriate for collective adjudication.

*107. Plaintiffs and putative plaintiffs each worked more than forty (40) hours in one or more workweeks within the applicable statutory period.*

**ANSWER:** GKN admits the allegations contained in Paragraph 107 of the Complaint that the Named Plaintiffs worked more than forty (40) hours in one or more workweeks within

the applicable statutory period. GKN further denies that this case is appropriate for collective or class adjudication.

**COUNT TWO**
***Violation of the North Carolina Wage and Hour Act N.C. Gen. Stat. § 95-25.6***
***Brought by Plaintiffs on Behalf of Themselves and All Similarly Situated Employees***

108.   *Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.*

**ANSWER:**   GKN incorporates all preceding paragraphs of this Answer as if fully set forth in this paragraph.

109.   *The class period for this cause of action is at least two years from the date of the filing of the initial Complaint. See Dkt. 1.*

**ANSWER:**   The allegations in Paragraph 109 of the Complaint constitute conclusions of law to which no response is required. To the extent a response is required, GKN admits the allegation contained in Paragraph 109 of the Complaint that a two-year statute of limitations is applicable under the NCWHA. GKN further denies that this case is appropriate for class adjudication.

110.   *At all relevant times, Defendant has employed, and/or continues to employ, Named and Putative Plaintiffs within the meaning of the NCWHA.*

**ANSWER:**   GKN admits the allegation contained in Paragraph 110 of the Complaint that during their employment, its employees are subject to the applicable provisions of the NCWHA. GKN further denies that this case is appropriate for class adjudication.

111.   *Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and promised wages, on the employee's regular payday.*

**ANSWER:**   The allegations in Paragraph 111 of the Complaint constitute conclusions

of law to which no response is required. To the extent a response is required, GKN states that the statute speaks for itself.

*112.    Additionally, North Carolina law requires every employer to notify employees of the promised wages and the day of payment as well as making available a written version of the employment practices and policies regarding promised wages. See N.C. Gen. Stat. § 95-25.13(1)-(2).*

**ANSWER:**    The allegations contained in Paragraph 112 of the Complaint constitute conclusions of law to which no response is required. To the extent a response is required, GKN states that the statute speaks for itself.

*113.    Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendant was required to pay Plaintiffs and putative class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA.*

ANSWER:    The allegations in Paragraph 113 of the Complaint constitute conclusions of law to which no response is required. To the extent a response is required, GKN states that the statute speaks for itself.

*114.    Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.8, it is unlawful for an employer to withhold any portion of an employee's wages without the employee's advance written authorization, including the amount and reason for the deduction. If the amount is not available when the employee signs the authorization, the employer must receive advance written notice of the exact amount and of the right to withdraw the authorization.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss

(ECF 81), no response to the allegations contained in Paragraph 114 of the Complaint is required. GKN further avers that the allegations in Paragraph 114 of the Complaint constitute conclusions of law to which no response is required. To the extent a response is required, GKN states that the statute speaks for itself.

115. *Defendant intentionally refused to pay all wages due as set forth in the preceding paragraphs of this Complaint to Plaintiffs and putative class members in violation of the NCWHA.*

**ANSWER:** GKN denies the allegations contained in Paragraph 115 of the Complaint, and denies that the case is appropriate for class action adjudicated.

116. *Defendant was aware that Plaintiffs and putative plaintiffs were not receiving all straight-time wages for all hours worked up to forty (40) and overtime wages for hours worked in excess of forty (40) per week per week pursuant to the promised straight-time rate and corresponding premium overtime rate.*

**ANSWER:** GKN denies the allegations contained in Paragraph 116 of the Complaint, and denies that the case is appropriate for class action adjudicated.

117. *Defendant's production demands and manufacturing process required Plaintiffs and putative class members to monitor the assembly line at all times. In order to meet this requirement, employees arrived to work early, remained on the premises during lunch, only clocking out for lunch if they left the premises—as required by Defendant's policies—and stayed after their regularly scheduled shift time.*

**ANSWER:** GKN denies the allegations contained in Paragraph 117 of the Complaint.

118. *Defendant notified Plaintiffs that as long as they remained on the premises throughout their shift, Plaintiffs did not need to "clock out." In fact, Plaintiffs were only required to "clock out" if they left the premises.*

**ANSWER:** GKN denies the allegations contained in Paragraph 118 of the Complaint.

119. *Additionally, Plaintiffs could be called upon to return to their workstation at any point during their lunch. Explicitly and pursuant to Defendant's written policy, Plaintiffs are required to work any shift or hours assigned.*

**ANSWER:** In light of the Court's Opinion and Order on Plaintiffs' Motions for Conditional Certification and Class Certification (ECF 82), no response to the allegations in Paragraph 119 of the Complaint is required. To the extent a response is required, GKN admits the allegation contained in Paragraph 119 of the Complaint that employees are required to work shifts or hours assigned but otherwise denies the remaining allegations contained in Paragraph 119 of the Complaint.

120. *In order to be ready to return to work as soon as needed and avoid a disruption in the manufacturing process, Defendant promised Plaintiffs a paid lunch break, as consistent with Defendant's handbook, Plaintiffs were required to work all hours or shifts assigned. Further, Plaintiffs were required to "clock out" when leaving the premises. Thus, despite Defendant promising Plaintiffs a paid lunch break, they did not comply with their own handbook policies and practices.*

**ANSWER:** In light of the Court's Opinion and Order on Plaintiffs' Motions for Conditional Certification and Class Certification (ECF 82), no response to the allegations in Paragraph 120 of the Complaint is required. To the extent a response is required, GKN admits the allegation in Paragraph 120 of the Complaint that employees are required to "clock out" before leaving the premises, but otherwise denies the remaining allegations contained in Paragraph 120 of the Complaint.

121. *Rather than compensating Plaintiffs at their promised hourly rate for all hours worked up to forty (40) in a week and one and one-half times the promised hourly rate for hours*

*over forty (40) worked in a week, Defendant did not incorporate the premium shift pay, and as a result, regularly paid as much as ninety (90) cents less per hour than Plaintiffs were promised to receive.*

**ANSWER:**     In light of the Court's Opinion and Order on Plaintiffs' Motions for Conditional Certification and Class Certification (ECF 82), no response to the allegations in Paragraph 121 of the Complaint is required.  To the extent a response is required, GKN denies the allegations contained in Paragraph 121 of the Complaint.

122.     *Defendant employed Named and Putative Plaintiffs within the State of North Carolina.*

**ANSWER:**     GKN admits that it employed Named Plaintiffs within the state of North Carolina, but denies that this case is appropriate for class adjudication.

123.     *At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiffs all owed, earned, and promised wages, including for required pre-shift work performed by Plaintiffs, and at the appropriate overtime rate that Plaintiffs are lawfully entitled to for hours worked in excess of forty (40) in a single workweek.*

**ANSWER:**     GKN denies the allegations contained in Paragraph 123 of the Complaint.

124.     *At all relevant times, Defendant, pursuant to its policies and practices, deducted a portion of employees' wages for tobacco use and uniforms without receiving the required advance written authorization and without providing advance written notice of the amount to be deducted.*

**ANSWER:**     In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 124 of the Complaint is required.  To the extent a response is required, GKN denies the allegations contained in Paragraph 124 of the Complaint.

125.    Consistent with the above, Defendant's failure to pay Plaintiffs all owed, earned, and promised wages was in violation of N.C. Gen. Stat. § 95-25.6.

**ANSWER:**    GKN denies the allegations contained in paragraph 125 of the Complaint.

126.    As a result of Defendant's unlawful policies and practices, Plaintiffs have been deprived of compensation due and owing.

**ANSWER:**    GKN denies the allegations contained in Paragraph 126 of the Complaint.

127.    Defendant's failure to pay Plaintiffs all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages, under N.C. Gen. Stat. § 95-25.22(a1).

**ANSWER:**    GKN denies the allegations contained in Paragraph 127 of the Complaint.

128.    As a result of Defendant's unlawful acts, Plaintiffs have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

**ANSWER:**    GKN denies the allegations contained in Paragraph 128 of the Complaint.

### COUNT THREE
### Violation of the Age Discrimination in Employment Act
### 29 U.S.C. § 621 et seq.
### Age Discrimination, Hostile Work Environment, Wrongful Termination, and Retaliation
### Brought by Plaintiff Mebane

129.    Plaintiff Mebane incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 129 of the Complaint is required.  To the extent a response is required, GKN incorporates all preceding paragraphs of this

Answer as if fully set forth in this paragraph.

130. *Defendant GKN is an "employer" as defined by ADEA, ADEA, 29 U.S.C.* *§ 630(b), because it employs twenty (20) or more employees for each working day in each of* *twenty (20) or more calendar weeks in the current or preceding calendar year.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 130 of the Complaint is required.

131. *As alleged above, Plaintiff Mebane was repeatedly subjected to ridicule, abuse,* *humiliation, and beratement, and, on more than one occasion, Plaintiff Mebane suffered physical* *assault and battery, with serious threats of imminent bodily harm and death as a direct result of* *his age.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 131 of the Complaint is required.

132. *Such discrimination and harassment was ongoing from approximately mid to late* *2017 until April 23, 2018, when Plaintiff Mebane was terminated.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 132 of the Complaint is required.

133. *Such discrimination and harassment was based on Plaintiff Mebane's age, a pro-* *tected status. Plaintiff Mebane's younger co-workers were not treated in the same demeaning* *way Plaintiff Mebane was treated.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 133 of the Complaint is re-

quired.

*134.    Such discrimination and harassment was sufficiently severe and/or pervasive to alter the terms and conditions of Plaintiff Mebane's employment.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 134 of the Complaint is required.

*135.    Such discrimination and harassment was unwelcome.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 135 of the Complaint is required.

*136.    While Plaintiff Mebane and other older employees informed their supervisors and Defendant GKN's Human Resources department, Defendant GKN failed to take any prompt corrective action upon hearing reports of harassment.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 136 of the Complaint is required.

*137.    Plaintiff Mebane engaged in a protected activity under the ADEA when he reported harassment, threats, and assaults to Defendant GKN's management.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 137 of the Complaint is required.

*138.    Defendant GKN responded to Plaintiff Mebane's informal complaint regarding the assault by firing Plaintiff Mebane.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss

(ECF 81), no response to the allegations contained in Paragraph 138 of the Complaint is required.

*139.    Plaintiff Mebane was discharged from employment upon being assaulted with a deadly weapon by a harasser, reporting the assault to Defendant GKN's management, and requesting that law enforcement be called due to the severity of the incident.  This discharge constitutes wrongful termination in violation of 29 U.S.C. § 623(d).*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 139 of the Complaint is required.

*140.    As a direct and proximate result of Defendant GKN's violation of Plaintiff Mebane's rights under the ADEA, as alleged herein, Plaintiff Mebane has been injured and suffered damages, including lost income and benefits, loss of reputation, emotional distress and mental anguish, humiliation, inconvenience, and loss of enjoyment of life.  Accordingly, Plaintiff Mebane is entitled to compensatory damages, back pay, reinstatement or front pay, and attorneys' fees and costs, pursuant to 29 U.S.C. § 626(b).*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 140 of the Complaint is required.

*141.    Additionally, since Defendant Mebane's violations of the ADEA, as alleged herein, was intentional, willful, knowing and malicious, or with reckless indifference to Plaintiff Mebane's federally protected rights, Plaintiff Mebane is entitled to recover liquidated damages from Defendant GKN, pursuant to 29 U.S.C. § 626(b).*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 141 of the Complaint is re-

quired.

### COUNT FOUR
### Negligent Employment, Supervision, and Retention
### North Carolina Common Law
### Brought by Plaintiff Mebane

*142.  Plaintiff Mebane incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.*

**ANSWER:**  In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 142 of the Complaint is required.  To the extent a response is required, GKN incorporates all preceding paragraphs of this Answer as if fully set forth in this paragraph.

*143.  Defendant GKN owed a duty to Plaintiff Mebane to exercise reasonable care in its hiring, supervision, and retention of its employees, in order to protect Plaintiff from the wrongful conduct of their employees, including, but not limited to, Frank Adu-Sarpong.*

**ANSWER:**  In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 143 of the Complaint is required.

*144.  Frank was an incompetent employee in that Defendant GKN's employment and retention of him was dangerous to fellow employees.*

**ANSWER:**  In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 144 of the Complaint is required.

*145.  Defendant GKN knew and/or had a reason to know of Frank's incompetency, in that Plaintiff Mebane and other employees repeatedly complained to Defendant GKN's management of Frank's harassing and threatening behavior.*

**ANSWER:**  In light of the Court's Opinion and Order on GKN's Motion to Dismiss

(ECF 81), no response to the allegations contained in Paragraph 145 of the Complaint is required.

146.    *Defendant violated its duty of care in hiring, supervising, and retaining Frank, who subjected Plaintiff Mebane to the aforementioned abuses, by failing to properly train and supervise him regarding policies prohibiting discrimination and harassment, failing to enforce or implement any such policies, failing to supervise its employees to ensure no such conduct would occur, failing to take action after being alerted to such conduct, and retaining Frank, despite his unlawful acts and improprieties.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 146 of the Complaint is required.

147.    *As a proximate result of the negligence of Defendant GKN, Frank committed a multitude of tortious acts against Plaintiff Mebane, and/or committed acts in violation of ADEA, as alleged herein, including, but not limited to, physical assault and battery, threats of imminent bodily harm or death, intentional and/or negligent infliction of emotional distress, and creation of a hostile working environment through constant beratement and threats, unwanted and demeaning age-based remarks, and explicit and obscene language.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 147 of the Complaint is required.

148.    *As a proximate result of the negligence of Defendant GKN, Plaintiff Mebane has suffered severe emotional distress and other losses, as described above.  Accordingly, Plaintiff Mebane is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 148 of the Complaint is required.

149.    *The actions of Defendant GKN constituted gross negligence and reckless indifference of the rights of Plaintiff Mebane, entitling Plaintiff Mebane to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 149 of the Complaint is required.

### COUNT FIVE
### Assault
### North Carolina Common Law
### Brought by Plaintiff Mebane

150.    *Plaintiff Mebane incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 150 of the Complaint is required. To the extent a response is required, GKN incorporates all preceding paragraphs of this Answer as if fully set forth in this paragraph.

151.    *Frank, an employee of Defendant GKN, intentionally placed Plaintiff Mebane in reasonable fear of imminent bodily harm, and he did, in fact, fear bodily harm, when Frank chased Plaintiff Mebane around the workplace wielding a large hunting knife, when Frank waited for Plaintiff Mebane in a darkened parking lot and pursued him in his vehicle, and when Frank repeatedly threatened Plaintiff Mebane and physically shoved him or jabbed him in the chest, advising him that he would "fuck him up."*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss

(ECF 81), no response to the allegations contained in Paragraph 151 of the Complaint is required.

*152.    Plaintiff Mebane's fear and apprehension was a product of Frank's intentional actions.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 152 of the Complaint is required.

*153.    Frank committed these acts while serving as an employee of Defendant GKN. Plaintiff Mebane and other employees reported Frank's behavior to Defendant GKN, which took no action to prevent this behavior. Accordingly, Defendant GKN ratified Frank's conduct.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 153 of the Complaint is required.

*154.    Plaintiff Mebane suffered fear and emotional distress as a result of these actions, and is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 154 of the Complaint is required.

*155.    Defendant GKN's acts constituted willful, wanton, and malicious conduct, entitling Plaintiff Mebane to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 155 of the Complaint is re-

quired.

## COUNT SIX
### Battery
### North Carolina Common Law
### Brought by Plaintiff Mebane

156.    *Plaintiff Mebane incorporates by reference all preceding paragraphs as if the same were repeated here verbatim*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 156 of the Complaint is required.  To the extent a response is required, GKN incorporates all preceding paragraphs of this Answer as if fully set forth in this paragraph.

157.    *Frank, an employee of Defendant GKN, intentionally and offensively touched Plaintiff Mebane, without his permission, when he jabbed Plaintiff Mebane in the chest and shoved Plaintiff Mebane.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 157 of the Complaint is required.

158.    *Frank committed this act while serving as an employee of Defendant GKN. Plaintiff Mebane and other employees reported Frank's behavior to Defendant GKN, which took no action to prevent this behavior.  Accordingly, Defendant GKN ratified Frank's conduct.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 158 of the Complaint is required.

159.    *Plaintiff Mebane suffered fear and emotional distress as a result of these actions, and is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 159 of the Complaint is required.

160. *Defendant GKN's acts constituted willful, wanton, and malicious conduct, entitling Plaintiff Mebane to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 160 of the Complaint is required.

### COUNT SEVEN
### Intentional Infliction of Emotional Distress
### North Carolina Common Law
### Brought by Plaintiff Mebane

161. *Plaintiff Mebane incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 161 of the Complaint is required. To the extent a response is required, GKN incorporates all preceding paragraphs of this Answer as if fully set forth in this paragraph.

162. *The conduct of Frank, ratified by Defendant GKN, as alleged above, including, but not limited to, physical assault and battery, constant beratement and ridicule, threats of serious bodily injury and/or death, and offensive and demeaning age discrimination, constitutes extreme and outrageous behavior, exceeding all bounds of a civilized society.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 162 of the Complaint is required.

163.     The conduct of Frank, ratified by Defendant GKN, as alleged above, was intended to cause Plaintiff Mebane to suffer severe emotional distress, or was carried out in reckless disregard as to whether it would inflict severe emotional distress upon Plaintiff Mebane, or was certain or substantially certain to result in severe emotional distress on the part of Plaintiff Mebane.

**ANSWER:**     In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 163 of the Complaint is required.

164.     The conduct of Frank, ratified by Defendant GKN, as alleged above, was foreseeable to cause, and did in fact proximately cause, Plaintiff Mebane to suffer from severe emotional distress, mental anguish, humiliation, embarrassment, and pain. Accordingly, Plaintiff Mebane is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).

**ANSWER:**     In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 164 of the Complaint is required.

165.     These acts were committed by Frank while he served as an employee of Defendant GKN and while acting within the scope of his employment, and Defendant GKN further ratified Frank's behavior by taking no action to prevent it.

**ANSWER:**     In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 165 of the Complaint is required.

## COUNT EIGHT
### Negligent Infliction of Emotional Distress
### North Carolina Common Law
### Brought by Plaintiff Mebane

166.    *Plaintiff Mebane incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 166 of the Complaint is required.

167.    *The conduct of Frank, ratified by Defendant GKN, as alleged above, including, but not limited to, physical assault and battery, constant beratement and ridicule, threats of serious bodily injury, and offensive and demeaning age discrimination, constitutes negligent conduct, as it happened on a daily basis, and Defendant GKN was aware of the conduct, but failed to take any reasonable preventative or anticipatory action to protect Plaintiff Mebane.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 167 of the Complaint is required.

168.    *The conduct of Frank, ratified by Defendant GKN, as alleged above, was reasonably foreseeable to cause Plaintiff Mebane to suffer severe emotional distress.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 168 of the Complaint is required.

169.    *As a proximate result of Defendant GKN's negligence, as alleged above, Plaintiff Mebane suffered from severe emotional distress, mental anguish, humiliation, embarrassment, and pain. Accordingly, Plaintiff Mebane is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 169 of the Complaint is required.

170. *These acts were committed by Frank while he served as an employee of Defendant GKN and while acting within the scope of his employment, and Defendant GKN further ratified Frank's behavior by taking no action to prevent it.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 170 of the Complaint is required.

171. *Defendant GKN's acts constituted gross negligence and reckless indifference to the rights of Plaintiff Mebane, entitling Plaintiff Mebane to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 171 of the Complaint is required.

### COUNT NINE
### Wrongful Discharge in Violation of North Carolina Public Policy
### North Carolina Common Law
### Brought by Plaintiff Mebane

172. *It is the public policy of the State of North Carolina, as expressed in, inter alia, N.C. Gen. Stat. §§ 143-422.2, Article I, Section 1 of the North Carolina Constitution, and ubiquitously throughout the statutes and laws of this State, that employees be free from age-based harassment, discrimination and retaliatory treatment in their employment.*

**ANSWER:** In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 172 of the Complaint is required.

*173.    The termination of Plaintiff Mebane's employment, resulting from his complaints and suffering related to the acts of age discrimination, age-based harassment, assault, and battery, was wrongful as against the public policy of the State of North Carolina.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 173 of the Complaint is required.

*174.    Such termination proximately caused Plaintiff Mebane to suffer emotional distress and other losses, as described above.  Accordingly, Plaintiff Mebane is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 174 of the Complaint is required.

*175.    Defendant GKN's acts constituted willful, wanton, and malicious conduct, entitling Plaintiff Mebane to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.*

**ANSWER:**    In light of the Court's Opinion and Order on GKN's Motion to Dismiss (ECF 81), no response to the allegations contained in Paragraph 175 of the Complaint is required.

### *PRAYER FOR RELIEF*

*WHEREFORE, Plaintiffs, and all those similarly situated, collectively pray that this Honorable Court:*

*1.    Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiffs as representatives of all those similarly situated under the FLSA collective action;*

2.      Issue an Order certifying this action as a class action under the NCWHA, and designate Named Plaintiffs as representatives on behalf of all those similarly situated under the NCWHA class;

3.      Award Plaintiffs and all those similarly situated actual damages for all unpaid wages found due, and liquidated damages equal in amount, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a1);

4.      Award Plaintiffs and all those similarly situated pre- and post-judgment interest at the statutory rate, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a);

5.      Award Plaintiffs and all those similarly situated attorney's fees, costs, and disbursements as provided by FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(d);

6.      Award Plaintiff Mebane all back pay, front pay, and past pecuniary losses due as a result of Defendant GKN's unlawful acts;

7.      Award Plaintiff Mebane all compensatory damages due as a result of Defendant GKN's unlawful acts;

8.      Award Plaintiff Mebane all consequential damages due as a result of Defendant GKN's unlawful acts;

9.      Award Plaintiff Mebane punitive damages for Defendant GKN's malicious, reckless, or grossly negligent conduct;

10.     Award Plaintiff Mebane all costs incurred in the prosecution of this action, including reasonable attorney's fees;

11.     Award Plaintiff Mebane pre-judgment interest; and

12.     Grant such further legal and equitable relief as the Court deems necessary and

*proper in the public interest.*

**ANSWER:** GKN denies that it violated the FLSA, NCWHA, or any other law or regulation, or engaged in any unlawful conduct that could give rise to any claims, and denies that Plaintiffs or any purported "class" or "collective" action member is entitled to any relief. GKN further denies that the case is appropriate for collective or class adjudication. GKN respectfully requests that the Court determine that this case is not appropriate for class or collective action treatment, conclude that neither the Plaintiffs nor any other party is entitled to any relief from GKN whatsoever, enter judgment in favor of GKN, award GKN its cost of suit and such other relief as the Court deems appropriate, and dismiss this action with prejudice.

## DEFENSES

1. The Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

2. The claims of putative members of the class and the collective are barred by the applicable statutes of limitations under the FLSA and NCWHA to the extent that the claims involved reflect work performed outside the pertinent limitations periods.

3. GKN acted in good faith and not in a willful manner, rendering the FLSA's two-year statute of limitations applicable, rather than the three-year statute that applies to willful violations.

4. GKN did not willfully commit any alleged violation of NCWHA.

5. Claims under the FLSA are not subject to pre-judgment interest. In the alternative, pre-judgment interest is not available in addition to liquidated damages.

6. This case does not satisfy the requirements for proceeding as a collective action under the FLSA. Plaintiffs are not similarly situated to other individuals.

7. This case does not satisfy the requirements for proceeding as a class action under NCWHA. Among other things, there are no common questions of law, Plaintiffs' claims are not typical of those of the class they seek to represent, Plaintiffs are not adequate class representatives, and a class action is not a fair and efficient method for adjudicating these claims.

8. Allowing this case to proceed on a collective or class basis without permitting GKN to present evidence and defenses specific to each member of a collective or class would deny GKN its right to Due Process under the Fifth Amendment to the United States Constitution.

9. Allowing this case to proceed on a class basis without permitting GKN to present evidence and defenses specific to each member of a class would deny GKN its right to Due Process under Section 19 of the North Carolina Constitution.

10. Allowing this case to proceed on a collective or class basis in a manner that allows GKN the opportunity to present its defenses in a full and fair manner consistent with Due Process would violate the Seventh Amendment to the United States Constitution either by depriving GKN of a meaningful trial by jury or by violating the Reexamination Clause.

11. Allowing this case to proceed on a class basis in a manner that allows GKN the opportunity to present its defenses in a full and fair manner consistent with Due Process would violate Section 25 of the North Carolina Constitution by depriving GKN of a meaningful trial by jury.

12. GKN properly paid Plaintiff and its other employees in compliance with the FLSA and NCWHA.

13. The Complaint is barred, in whole or in part, because some or all of the time for which compensation is sought is *de minimis* and therefore is not compensable.

14. As this case is in its early stages, GKN reserves the right to amend this Answer to assert additional defenses that become apparent as the case progresses.

## DEMAND FOR JURY TRIAL

GKN hereby demands a trial by jury with respect to all issues.

EPSTEIN, BECKER & GREEN, P.C.

PAUL DeCAMP (Special Admission)
MAXINE A. ADAMS (Special Admission)
1227 25th Street, N.W., Suite 700
Washington, D.C.  20037
Tel:  202-861-0900
Fax:  202-861-3571
PDeCamp@ebglaw.com
MAdams@ebglaw.com

OGLETREE, DEAKINS, NASH, SMOAK & STEW-ART, P.C.

__/s/ Kevin S. Joyner_____
KEVIN S. JOYNER (NC BAR No. 25605)
REGINA W. CALABRO (NC BAR No. 20889)
4208 Six Forks Road, Suite 1100
Raleigh, NC  27609
Telephone:  919.787.9700
Facsimile:  919.783.9412
Kevin.Joyner@ogletreedeakins.com
Gina.Calabro@ogletreedeakins.com

*Attorneys for Defendant GKN Driveline North America Inc.*

Dated this the 19th day of November 2020.