IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES MEBANE and ANGELA WORSHAM, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:18-CV-892 |
| GKN DRIVELINE NORTH AMERICA, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Before the Court is a Partial Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), filed by Defendant GKN Driveline North America, Inc. (ECF No. 89.) In Plaintiffs' Third Amended Collective and Class Action Complaint ("Third Amended Complaint"), Plaintiffs allege violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and North Carolina common law. (ECF No. 87.) Plaintiffs bring their FLSA and NCWHA claims as class actions, while Counts Three through Nine—including Plaintiffs' ADEA and N.C. common law claims—are individual claims brought by Plaintiff Mebane and arise out of interactions he had with a co-worker while he was employed by Defendant. (*Id.* ¶¶ 92–162.)

Defendant now moves to dismiss these individual claims. (ECF No. 89.) Defendant first argues that Mebane's ADEA claim (Count Three) is untimely and must be dismissed. (ECF No. 90 at 2.) If the Court dismisses the ADEA claim, Defendant next argues that the Court should dismiss Mebane's North Carolina common law claims (Counts Four through Nine) for lack of supplemental jurisdiction. (*Id.*) Alternatively, Defendant argues that Mebane has failed to plead sufficient facts to sustain his common law claims for intentional infliction of emotional distress ("IIED") (Count Seven), negligent infliction of emotional distress ("NIED") (Count Eight), and wrongful discharge in violation of public policy (Count Nine). (*Id.* at 2–3.)

For the reasons that follow, the Court denies Defendant's motion.

## I. BACKGROUND

Plaintiff James Mebane is a former employee of Defendant's manufacturing facility. (ECF No. 87 ¶ 14.) According to the Third Amended Complaint, Defendant hired Frank Adu-Sarpong to work the night shift alongside Mebane in 2017. (*Id.* ¶ 55.) Adu-Sarpong allegedly targeted older employees with threats and harassment, including Mebane, who was 61 years old. (*Id.* ¶¶ 54, 56.) Mebane alleges that Adu-Sarpong jabbed Mebane in the chest with this forefinger, called him an "old man," and told older employees that he would " F_ck [them] up if [they] kept running [their] mouths." (*Id.* ¶ 57.) Mebane and other employees complained to Defendant's management, but Defendant "ignored the complaints and took no action to correct the situation." (*Id.* ¶¶ 60–61.)

One night in April 2018, Adu-Sarpong shoved Mebane and threatened to shoot him, then promised: "All of y'all are going to get shot, you watch." (*Id.* ¶ 62–63.) Mebane informed

his direct supervisor of the death threat, but the supervisor responded that it was "clear" Defendant "had no intention of addressing the problem," and that Mebane and his coworkers should "simply defend themselves and yell for help." (*Id.* ¶ 64.)

Two nights later, Abu-Sarpong followed Mebane into his work station swinging a large hunting knife and announcing "I bought this for you." (*Id.* ¶ 65.) He then chased Mebane around the shop floor while swinging the knife and threatening to kill him. (*Id.* ¶ 66.) Employees were able to restrain and disarm Abu-Sarpong just as he had Mebane cornered. (*Id.*) When Defendant was informed about the incident and asked to call the police, Defendant refused. (*Id.* ¶ 67.) Instead, Defendant sent Adu-Sarpong home and, just forty-five minutes later, instructed Mebane to leave work as well. (*Id.* ¶ 67–68.) Defendant instructed Mebane to turn in his credentials. (*Id.* ¶ 72.)

Just past midnight, Mebane, afraid to walk to his car alone, asked his supervisor to accompany him to the parking lot. (*Id.* ¶¶ 68–69.) Abu-Sarpong was waiting for them and began backing his car toward Mebane. (*Id.* ¶ 70.) Mebane was afraid Abu-Sarpong was armed with a gun and ran, first ducking past a traffic island and then rushing to his car. (*Id.* ¶¶ 70–71.) Abu-Sarpong left the parking lot but waited just outside, and as soon as Mebane emerged, chased Mebane onto the highway. (*Id.* ¶ 71.) At last, Mebane was able to lose Abu-Sarpong on the highway and make it safely home. (*Id.*)

Defendant's human resources department contacted Mebane the next day to investigate the incident. (*Id.* ¶ 72.) Mebane was not invited to return to work. (*Id.*) Two weeks later, Mebane was fired. (*Id.*) In his termination letter, Defendant stated Mebane was terminated for an unspecified violation of company policy. (*Id.*) According to his complaint,

Mebane "suffered fear and emotional distress resulting from the ongoing harassment and threats and from the assault, with symptoms including but not limited to headaches, insomnia, nightmares, and high blood pressure." (*Id.* ¶ 73.)

Mebane filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on October 17, 2018. (*Id.* ¶ 74.) Mebane then filed this suit just six days later, on October 23, 2018. (ECF No. 1.) His initial complaint included the ADEA and North Carolina common law claims at issue here. (*Id.* ¶¶ 113–59.) Mebane filed his First Amended Complaint on January 2, 2019, and Second Amended Complaint on September 4, 2019, which each included the relevant claims. (ECF Nos. 18, 43.) On September 20, 2019, Defendant moved for partial dismissal of Mebane's Second Amended Complaint. (ECF No. 49.)

While that motion was pending before the Court, Mebane received his Notice of Right to Sue from the EEOC on February 21, 2020. (ECF No. 87-1.) The letter required Mebane to file any suit under the ADEA within ninety days of receipt of the letter. (*Id.*)

On November 5, 2020, this Court dismissed Mebane's ADEA and North Carolina common law claims without prejudice. *Mebane v. GKN Driveline N. Am., Inc.*, 499 F. Supp. 3d 220, 233 (M.D.N.C. 2020). Mebane was required to wait sixty days after filing his charge with the EEOC to file the present suit; consequently, the Court lacked subject matter jurisdiction over the ADEA claim when the suit was filed before expiration of Mebane's sixty days. *Id.* at 229–30. Mebane argued that he had "cured any premature defect" by filing an Amended Complaint seventy-seven days after the EEOC filing. *Id.* at 229. The Court, however, was bound by Fourth Circuit precedent that foreclosed a court from equitably modifying the sixty-

day requirement. *Id.* at 230–31 (citing *Vance v. Whirlpool Corp.*, 707 F.2d 483, 489 (4th Cir. 1983)). The Court dismissed Mebane's ADEA claim without prejudice. *Id.* at 231. Additionally, because the Court lacked subject matter jurisdiction over the ADEA claim, that federal claim could not serve as the basis for establishing supplemental jurisdiction over Mebane's state common law claims. *Id.* at 233. Because those state law claims did not "arise out of a common nucleus of operate facts" as Mebane's other federal claim, the Court lacked subject matter over the N.C. common law claims and dismissed them, also without prejudice. *Id.* at 232.

On January 5, 2021, Plaintiffs filed the Third Amended Complaint reasserting Mebane's ADEA and North Carolina common law claims. (ECF No. 87.) Defendant filed this partial Motion to Dismiss on January 19, 2021. (ECF No. 89.)

## II. DISCUSSION

A motion to dismiss under Rule 12(b)(6) is meant to "test[ ] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

5

A.     ADEA

The ADEA provides that "[n]o civil action may be commenced . . . until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission." 29 U.S.C. § 626(d)(1). If a filed charge is dismissed or otherwise terminated by the EEOC, the EEOC issues notice to the person aggrieved that they may bring suit in state or federal court. § 626(e). Once a party receives such a right-to-sue notice, he has 90 days to bring suit. *Id.*

### 1.     *Relation back*

Mebane argues that his ADEA claim is not barred by the 90-day limitation because his amended pleading relates back to his initial filing. (ECF No. 93 at 9–12.) An untimely suit may survive dismissal if the pleading "relates back" to the date of the original pleading, and the original pleading was timely. Fed. R. Civ. P. 15(c)(1)(B). A subsequent pleading relates back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Id.* "[W]hen a pleading relates back under Rule 15(c), the amended pleading is considered to have been filed on the date that the original pleading which it replaces was filed." *Feldman v. L. Enf't Assocs. Corp.*, 752 F.3d 339, 346 (4th Cir. 2014).

A claim may relate back to an original filing "[e]ven when the District Court lack[ed] jurisdiction over a claim at the time of its original filing." *Id.* at 347 (quoting *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 290 (8th Cir. 1988)); *see also Stewart v. United States*, 620 F.2d 740, 741 (9th Cir. 1980) (per curiam) (stating that relation back is proper even where the original complaint failed for lack of subject matter jurisdiction). In *Feldman*, plaintiff failed to

wait 180 days after filing a complaint with the Secretary of Labor to file his whistleblower suit, as required by the Sarbanes-Oxley Act. *Feldman*, 752 F.3d at 346. The Fourth Circuit held that Plaintiff's second complaint, which alleged substantially similar claims as his first, related back to the original filing. *Id.* at 347. While the court lacked subject matter jurisdiction over the original claim, the court held that it did have subject matter jurisdiction over the amended pleading. *Id.* To hold otherwise would have "resulted in a 'procedural mousetrap' in which the premature assertion of the claim became an 'irretrievable mistake that bars jurisdiction for the duration of th[e] lawsuit.'" *Id.* (quoting *Wilson*, 838 F.2d at 289). Put differently, finding that a claim is simultaneously too late and too early is "absurd," and courts should avoid this "legal merry-go-round." *Franks v. Ross*, 313 F.3d 184, 198 (4th Cir. 2002) (quoting *Sec. Ins. Co. of New Haven, Conn. v. U.S. ex rel. Haydis*, 338 F.2d 444, 446 (9th Cir. 1964)).

The Court finds that an untimely ADEA claim may be saved if it relates back to a claim filed before the 90-day filing limit expired. *See Cherry v. Perdue Farms, Inc.*, No. 2:10-CV-23-FL, 2010 WL 5437222, at *3 (E.D.N.C. Dec. 27, 2010) (reasoning that the 90-day limitation "is akin to a non-jurisdictional statute of limitations subject to the relation-back doctrine of Rule 15") (citing *Hamilton v. 1st Source Bank*, 895 F.2d 159, 165 (4th Cir. 1990)). This is true even where the district court lacked subject matter jurisdiction over the original ADEA claim since, under *Feldman*, a plaintiff's failure to exhaust administrative remedies in the first instance does not deprive district courts of jurisdiction over claims refiled after administrative remedies have been exhausted.

Here, Mebane's refiled ADEA claim is virtually identical to his original claim. In his original Complaint, Mebane alleged that Defendant was his employer; he was harassed and

threatened by his coworker because of his age; Defendant failed to take corrective action; and Defendant fired Mebane for his informal complaint. (ECF No. 1 ¶¶ 113–25.) His Third Amended Complaint makes the same allegations word-for-word. (ECF No. 87 ¶¶ 116–28.) The refiled ADEA claim clearly "arose out of the conduct, transaction, or occurrence set out in" Mebane's initial Complaint. Thus, Mebane's ADEA claim in the Third Amended Complaint relates back to his original ADEA claim.

Defendant argues that Rule 15(c) allows parties to add a new claim or a new party, but not reassert claims identical to those previously dismissed. (ECF No. 94 at 3.) However, Rule 15(c)(1)(B) requires that the amendment asserts "a claim or defense," not that it "change" the claim or defense. *Compare* Fed. R. Civ. P. 15(c)(1)(B) to 15(c)(1)(C) (providing that the amended claim must "change[ ] the party or the naming of the party against whom a claim is asserted"). Courts in this Circuit allow reasserted claims to relate back to original filings so long as the new claims are not futile. *See, e.g., Heywood v. Va. Peninsula Reg'l Jail Auth.*, No. 2:15CV195, 2016 WL 11670725, at *1, *3–4 (E.D. Va. Aug. 10, 2016) (finding that a reasserted claim that now alleged sufficient facts related back to the original claim, which was dismissed for failure to state a claim). Here, Mebane's original claims were dismissed *without prejudice*— his failure to exhaust administrative remedies did not create a "procedural mousetrap" barring reassertion of these claims. Thus, Mebane may reassert his ADEA claim under Rule 15(c)(1)(B).

2. *Equitable tolling*

Even if Mebane's reasserted claim did not relate back to his original claim, the Court finds that the 90-day filing limitation should be equitably tolled. In *Vance v. Whirlpool Corp.*,

the Fourth Circuit held that the 60-day limitation is jurisdictional and dismissed a suit filed within that initial 60-day period for lack of subject matter jurisdiction. 707 F.2d 483, 489 (1983), *op. supplemented on reh'g*, 716 F.2d 1010 (4th Cir. 1983). The court also held, however, that plaintiff could "yet comply with the mandate of § 626(d) by pursuing with the EEOC his charge" and, "[s]hould conciliation efforts by the EEOC prove fruitless, [plaintiff] may refile his complaint in the district court." *Id.* The ADEA's 180-day statute of limitations would not bar refiling the suit, the court reasoned, because it could be "equitably modified where circumstances warrant." *Id.*; *see Vance v. Whirlpool Corp. (Vance II)*, 716 F.2d 1010, 1012–13 (4th Cir. 1983) (tolling the 180-day statute of limitations).

*Vance* did not address whether the 90-day post-notice filing deadline could also be equitably modified. However, the Fourth Circuit has held that an identical 90-day filing deadline in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1), can be equitably tolled. *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 654 (4th Cir. 1987). Thus, the Court finds that the ADEA's 90-day filing period may be equitably tolled. *See Panyanouvong v. Vienna Wolftrap Hotel*, 525 F. Supp. 2d 793, 796 (E.D. Va. 2007) (similarly finding that the 90-day filing period can be equitably tolled).

Equitable tolling is appropriate in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Id.* at 797 (quoting *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001)). It is appropriate only when "extraordinary circumstances beyond [plaintiff's] control prevented [them] from complying with the statutory time limit." *Spencer*, 239 F.3d at 630.

9

Here, Mebane received his right-to-sue letter—and his 90-day period began—while he was waiting for the Court to rule on whether it had subject matter jurisdiction over his original claim. He attempted to amend his complaint during his 90-day window, but the Court subsequently ruled that, because it lacked subject matter jurisdiction over his original claim, it was required by *Vance* to dismiss his amended complaint without prejudice. By the time Mebane's ADEA claim was dismissed, his 90-day filing period had closed. Thus, his delay was entirely beyond his control. Under Defendant's theory a claim amended *during* his 90-day period must be dismissed due to lack of subject matter jurisdiction, but a claim refiled *after* dismissal of the first claim is barred because his 90-day period has expired. The Court declines to adopt Defendant's reasoning, as such would lead to such an unconscionable and grossly unjust result. Instead, the Court finds it appropriate to toll the 90-day period to begin on November 5, 2020—the day the Court dismissed Mebane's original ADEA claim.

Plaintiffs filed the Third Amended Complaint within 90 days of the Court's Order on November 5, 2020. Thus, the Court finds that Mebane's ADEA claim is timely.

### B.     Supplemental jurisdiction

A claim that neither arises from a federal question nor satisfies the requirements for diversity jurisdiction may nevertheless be entertained in federal court by claiming supplemental jurisdiction. 28 U.S.C. § 1367. A federal court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." § 1367(a). To establish supplemental jurisdiction, "[t]he state and federal claims must derive from a common nucleus of operative

fact" such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

As previously stated in the Memorandum Opinion and Order filed on November 5, 2020, the ADEA claim "arises under federal law and shares a common nucleus of operative facts" with Mebane's North Carolina common law claims. *Mebane*, 499 F. Supp. 3d at 232. Consequently, the Court has supplemental jurisdiction over Mebane's state common law claims.

A district court may decline to exercise supplemental jurisdiction if: (1) the claim "raises a novel or complex issue of State law"; (2) the state law claim "substantially predominates" over the federal law claim, (3) the court "has dismissed all claims over which it has original jurisdiction," or (4) in "exceptional circumstances," where "there are other compelling reasons for declining jurisdiction." § 1367(c)(1)–(4). Here, the Court finds that Mebane's state law claims appear to arise under relatively well-developed common law. The federal and state law claims appear to overlap, such that the state law issues do not substantially predominate over the federal issues and issues in common. The Court has not dismissed Mebane's ADEA claim. Finally, there are no compelling reasons to deny supplemental jurisdiction.

Thus, the Court exercises supplemental jurisdiction over Mebane's N.C. common law claims outlined in Counts Four through Nine of his Third Amended Complaint.

## C.    IIED

North Carolina defines the tort of intentional infliction of emotional distress ("IIED") as: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Dickens v. Puryear*, 276 S.E.2d 325, 332 (N.C. 1981). To state

a claim, a plaintiff must allege facts sufficient to show three elements: (1) "extreme and outrageous conduct," (2) "which is intended to cause" or with "reckless indifference to the likelihood that they will cause" (3) "severe emotional distress to another." *Id.* at 335.

Viewing the facts alleged in the light most favorable to Mebane, the Court finds Mebane has sufficiently alleged that: (1) Abu-Sarpong's pattern of harassing Mebane, which culminated in an attempt on Mebane's life, was extreme and outrageous; (2) Abu-Sarpong intended to cause Mebane severe emotional distress; and (3) Mebane actually suffered severe emotional distress. The Court further finds that Mebane has alleged facts from which a reasonable jury could infer that Defendant ratified Abu-Sarpong's conduct.

### 1. *Extreme and outrageous conduct*

Conduct is extreme and outrageous if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Smith–Price v. Charter Behavioral Health Sys.*, 595 S.E.2d 778, 782 (N.C. Ct. App. 2004). It is for the court to decide in the first instance as a matter of law "whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery"; the jury must then determine "whether the conduct complained of is, in fact, sufficiently extreme and outrageous to result in liability." *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 121 (N.C. Ct. App. 1986).

Violent behavior and threats of death can constitute extreme and outrageous conduct. *Dickens*, 276 S.E.2d at 336. In *Dickens*, the Supreme Court of North Carolina found that defendants had engaged in extreme and outrageous conduct when they pointed a pistol at plaintiff, beat him, threatened him with death and castration, and then told him to flee the

state.  *Id.*  The court held that the alleged assault and battery could be "considered in determining the outrageous character of the ultimate threat and the extent of plaintiff's mental or emotional distress caused by it."  *Id.*

Certain severe workplace harassment is also considered extreme and outrageous.  *See, e.g.*, *Brown v. Burlington Indus., Inc.*, 378 S.E.2d 232, 234–35 (N.C. Ct. App. 1989); *Hogan*, 340 S.E.2d at 121.  In *Hogan*, defendant engaged in a repeated and escalating pattern of sexual harassment toward plaintiff that culminated with defendant threatening her with a knife.  *Id.* The North Carolina Court of Appeals found that the conduct was "beyond the bounds usually tolerated by decent society," and that "[n]o person should have to be subjected" to constant harassment "without being afforded remedial recourse through our legal system."  *Id.*

Here, Mebane alleges that Abu-Sarpong engaged in a repeated and escalating pattern of workplace harassment that culminated in an attempt on his life.  Abu-Sarpong discriminated against Mebane because of his age, belittled him, shoved him, and made death threats.  He then chased Mebane around the shop floor with a hunting knife and may have killed him if coworkers had not intervened.  After this violent altercation, Abu-Sarpong again chased Mebane in the parking lot and on the highway.  In no way were Abu-Sarpong's attempts on Mebane's life "normal workplace interactions" as Defendant claims.  (ECF No. 90 at 11).  This was extreme and outrageous conduct by a coworker.  As in *Hogan*, no person should have been subjected to this constant harassment and life-threatening episode without being afforded remedial recourse.

Thus, the Court finds that Mebane has sufficiently alleged facts to show the first element.

13

### 2. Intent or recklessness

The second element is met when defendant "desires to inflict severe emotional distress"; he "knows that such distress is certain, or substantially certain, to result from his conduct"; or he "acts recklessly . . . in deliberate disregard of a high degree of probability that the emotional distress will follow." *Dickens*, 276 S.E.2d at 333.

Defendant does not argue that Mebane failed to allege intentional or reckless behavior. It appears from the Third Amended Complaint that Abu-Sarpong's conduct was designed to make Mebane afraid for his life. Not only did Abu-Sarpong intentionally harass Mebane; he intended to kill him, and then lingered outside their workplace in order to follow Mebane home. This alleged behavior certainly reflects a desire to inflict severe emotional distress.

### 3. Severe emotional distress

Severe emotional distress "means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of *severe and disabling* emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Waddle v. Sparks*, 414 S.E.2d 22, 27 (N.C. 1992) (quoting *Johnson v. Ruark Obstetrics & Gynecology Assoc.*, 395 S.E.2d 85, 97 (N.C. 1990)). The alleged distress must be more than "transient and trivial emotional distress": it must be "*so severe that no reasonable man could be expected to endure it.*" *Id.* at 27–28 (quoting Restatement (Second) of Torts § 46 cmt. j (1965)). Courts consider both the intensity and duration of the distress in assessing severity. *Id.* at 28.

At this stage in the litigation, "[a]n actual diagnosis by a medical professional is not required to assert severe emotional distress." *Russ v. Causey*, 732 F. Supp. 2d 589, 606

(E.D.N.C. 2010) (citing *Soderlund v. Kuch*, 546 S.E.2d 632, 639 (N.C. Ct. App. 2001)). In *Dickens*, plaintiff's allegations that he was "unable to sleep, afraid to go out in the dark, afraid to meet strangers, afraid he may be killed," and was "suffering from chronic diarrhea and a gum disorder" were sufficient to allege severe emotional distress. *Dickens*, 276 S.E. at 328. Similarly in *Spencer v. Town of Chapel Hill*, this Court found that plaintiff suffered severe emotional distress "immediately after" being arrested and searched by police where plaintiff alleged, he "was suffering from extreme shock, apprehension, and terror, . . . finding himself [sic] on the receiving end of a 12-gauge shotgun. . . . He was visibly shaken. . . ." 290 F. Supp. 2d 655, 661 (M.D.N.C. 2003). That plaintiff was later diagnosed with Post Traumatic Stress Disorder. *Id.*

Here, Mebane was allegedly harassed for months and survived a near-death experience. Forty-five minutes later, he was retraumatized when Abu-Sarpong again chased him in the parking lot and attempted to chase him home. Mebane consequently suffered from "fear and emotional distress . . . with symptoms including but not limited to headaches, insomnia, nightmares, and high blood pressure." (ECF No. 87 ¶ 73.) Both Mebane's experience and his symptoms mirror those alleged in *Dickens* and *Spencer*, and his allegations are sufficient at this stage in the litigation to allege severe emotional distress. It is not fatal to Mebane's claim at this stage that he has not alleged any specific medical diagnosis. Thus, Mebane has alleged facts sufficient to show the third element.

### 4. Ratification

An employer may be liable for the torts of his employee when the employee's act was expressly authorized, within the scope of his employment, or "ratified" by the employer.

*Hogan*, 340 S.E.2d at 121 (citing *Snow v. DeButts*, 193 S.E. 224, 226–27 (N.C. 1937)). To show ratification, a plaintiff must show that the employer: (1) "had knowledge of all material facts and circumstances relative to the wrongful act;" and (2) "by words or conduct, show[ed] an intention to ratify the act." *Id.* at 122 (citing *Carolina Equip. & Parts Co. v. Anders*, 144 S.E.2d 252, 258 (N.C. 1965)). Ratification is a question of fact for a jury, and "[t]he jury may find ratification from any course of conduct on the part of the [employer] which reasonably tends to show an intention on his part to ratify the [employee's] unauthorized acts." *Anders*, 144 S.E.2d at 258. Ratifying conduct may include "a failure to act after being appri[s]ed of the material facts and circumstances to the wrongful conduct." *Watson v. Dixon*, 502 S.E.2d 15, 20 (N.C. Ct. App. 1998).

Here, Defendant does not dispute in its briefing that it ratified Abu-Sarpong's conduct. (*See* ECF Nos. 90, 94.) Further, Mebane alleges he and his coworkers repeatedly made Defendant aware of Abu-Sarpong's harassment and death threats. Mebane's direct supervisor informed him and others that Defendant "had no intention of addressing" Abu-Sarpong's harassment, (ECF No. 87 ¶ 64), and Abu-Sarpong was not disciplined or separated from Mebane in the months leading up to his attack. When Abu-Sarpong attempted to kill Mebane, Mebane immediately made his managers aware of the situation. Despite Mebane's pleas, Defendant refused to contact law enforcement and allowed Abu-Sarpong to leave work unrestrained. Mebane's shift supervisor then witnessed Abu-Sarpong chase Mebane in the parking lot, but again failed to contact law enforcement and again allowed Abu-Sarpong to leave uninhibited.

The Court finds that Mebane has sufficiently alleged Defendant was fully aware of all material facts concerning Abu-Sarpong's harassment, discrimination, and violent nature. Mebane has further sufficiently alleged facts from which a reasonable jury could infer that Defendant ratified Abu-Sarpong's harassment and attack. Thus, the Court finds that Mebane has stated a claim for IIED against Defendant. Count Seven will not be dismissed.[1]

### D.   NIED

To state a claim for negligent infliction of emotional distress ("NIED"), a plaintiff must allege that "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson*, 395 S.E.2d at 97.

The first element is satisfied upon a showing of "ordinary negligence." *Id.* Ordinary negligence is "the breach of a legal duty owed by defendant that proximately causes injury to plaintiff." *Guthrie v. Conroy*, 567 S.E.2d 403, 410 (N.C. Ct. App. 2002). "An employer has a nondelegable duty to provide for the safety of its employees in the work environment." *Spaulding v. Honeywell Intern., Inc.*, 646 S.E.2d 645, 650 (N.C. Ct. App. 2007). This duty is breached when an employer fails "to exercise ordinary care in providing a reasonably safe place for [the employee] to work." *Deligny v. Tate Furniture Co.*, 86 S.E. 980, 986 (N.C. 1915). The second element, foreseeability, refers to the "natural and probable consequences" of defendant's actions. *See Wood v. Carolina Tel. & Tel. Co.*, 46 S.E.2d 717, 719 (N.C. 1948). The

---

[1] Mebane alternatively argues that Defendant is vicariously liable for Abu-Sarpong's tortious behavior because Abu-Sarpong was acting within the scope of his employment. (ECF No. 87 ¶ 152.) Because the Court finds that Mebane has sufficiently stated a claim for relief under his ratification theory, the Court does not reach the question as to whether Mebane sufficiently pleaded that Abu-Sarpong was acting within the scope of his employment.

third element, "severe emotional distress," is identical to the third element of IIED discussed in Part C, *supra*. *Waddle*, 414 S.E.2d at 27 (adopting the "same standard" for a claim of IIED as for NIED).

Here, Mebane appears to offer two theories for liability under NIED. First, Mebane alleges that Abu-Sarpong's conduct, ratified by Defendant, constituted negligent conduct. (ECF No. 87 ¶ 154.) Taking all facts pleaded by Mebane as true, however, Abu-Sarpong's conduct was intentional. "Allegations of intentional conduct . . . cannot satisfy the negligence element of an NIED claim." *Horne v. Cumberland Cnty. Hosp. Sys., Inc.*, 746 S.E.2d 13, 19 (N.C. Ct. App. 2013). Mebane's second theory is that Defendant's conduct was itself negligent, in that Defendant "was aware of [Abu-Sarpong's] conduct but failed to take any reasonable preventative or anticipatory action to protect Plaintiff Mebane." (ECF No. 87 ¶ 154; *see id.* ¶ 158 ("Defendant GKN's acts constituted gross negligence and reckless indifference to the rights of Plaintiff Mebane.").)

The Court finds that, taking the facts alleged by Mebane as true and all inferences in his favor, Mebane has sufficiently stated a claim for NIED under this second theory. Under the first element, Defendant owed Mebane a duty as his employer to exercise reasonable care to provide Mebane with a safe place to work. Defendant allegedly abdicated this responsibility by allowing Abu-Sarpong to: (1) continue to work with Mebane for months without discipline or termination; (2) walk free after attempting to kill Mebane; and (3) twice lie in wait for Mebane and resume his chase. Employers exercising ordinary care do not allow those who attempt murder to roam free in company parking lots. Mebane has pleaded facts sufficient to satisfy the first element. Under the second element, it is reasonably foreseeable that an

employee that repeatedly makes death threats may act on those threats and imminently foreseeable that a person who just tried to kill his coworker might try again within the hour. Further, severe emotional distress is a natural and probable consequence of chronic harassment and a near death experience. Thus, Mebane has sufficiently pleaded that his severe emotional distress was foreseeable. Finally, under element three, Mebane sufficiently pleaded that he suffered from severe emotional distress for the reasons outlined in Part C.3, *supra*.

In sum, Mebane has pleaded facts sufficient to support a claim for NIED. Defendant's Motion to Dismiss Count Eight must be denied.

### E.     Wrongful termination

In North Carolina, an at-will employee has a claim for wrongful discharge if "the termination is done for an unlawful reason or purpose that contravenes public policy." *Garner v. Rentenbach Constructors, Inc.*, 515 S.E.2d 438, 441 (N.C. 1999) (internal quotations and emphasis omitted). A discharge contravenes public policy if it "has a tendency to be injurious to the public or against the public good." *Coman v. Thomas Mfg. Co.*, 381 S.E.2d 445, 447 n.2 (N.C. 1980). "The North Carolina Equal Employment Practices Act ("NCEEPA") prohibits discrimination based on age as against public policy." *Moser v. Driller's Serv., Inc.*, 988 F. Supp. 2d 559, 565 (W.D.N.C. 2013); *see* N.C. Gen. Stat. § 143-422.2(a) (2019). Wrongful discharge claims under the NCEEPA "are analyzed in accordance with the proof scheme applicable to federal discrimination claims"—in this case, the ADEA. *Higgins v. Synergy Coverage Sols., LLC*, No. 18 CVS 12548, 2020 WL 256486, at *19 (N.C. Super. Jan. 15, 2020) (quoting *Hill v. Belk Stores Servs., Inc.*, No. 3:06-CV-398, 2009 WL 2426314, at *5 (W.D.N.C. Aug. 5, 2009)); *see also N.C. Dep't of Corr. v. Gibson*, 301 S.E.2d 78, 82 (N.C. 1983) ("[North Carolina courts] look to

federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases.").

Discharge is wrongful under the ADEA if age was the "but-for" cause of the termination. *Bodkin v. Town of Strasburg*, 386 F. App'x 411, 413 (4th Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)). Discriminatory conduct is a but-for cause of a subsequent termination only where there exists a "nexus" between the discrimination and the termination. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010). Applying an identical standard under Title VII, the Fourth Circuit found that a coworker's sexual harassment of plaintiff was a but-for cause of defendant's decision to terminate her where defendant made light of her sexual harassment allegations prior to termination. *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 333 (4th Cir. 2012). There, a nexus existed between the workplace harassment and the termination even where the harasser himself "took no part in any decision to . . . fire" plaintiff. *Id.* at 332.

Here, Mebane alleges facts that, when taken as true, suggest that age discrimination was a but-for cause of his termination. Mebane alleges that Abu-Sarpong engaged in an escalating pattern of age-based harassment that climaxed in an attempt on Mebane's life. Defendant allegedly ratified this discrimination by failing to take any measures to protect Mebane before or after the attack. Further, Defendant allegedly asked for Mebane's credentials immediately after the attack and then terminated him without allowing him to return to work. Given Defendant's unresponsive behavior toward Mebane's complaints of harassment and the closeness in time between Abu-Sarpong's attack and Mebane's termination, there appears to be a nexus between age discrimination and Mebane's termination. In other words, but for

20

Abu-Sarpong's age-motivated harassment and attack, Mebane would not have been fired. Thus, Mebane has stated a claim for wrongful discharge.[2]

## CONCLUSION

The Court finds that Mebane's ADEA claim is not barred by the 90-day filing deadline limitation. The Court consequently finds that it has federal question jurisdiction over Mebane's ADEA claim and supplemental jurisdiction over Mebane's state common law claims. In addition, the Court finds that Mebane has pleaded facts sufficient to state a claim for relief under theories of IIED, NIED, and wrongful discharge.

For the reasons stated herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that the Defendant's Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), (ECF No. 89), is DENIED.

This, the 27th day of September 2021.

/s/ Loretta C. Biggs
United States District Judge

---

[2] Mebane alternatively argues that his termination violated North Carolina's public policy against assault and battery as evidenced in the state's criminal code, N.C. Gen. Stat. § 14-33 (2019). (ECF No. 93 at 20.) North Carolina courts have not exempted victims of violence from the state's at-will employment doctrine, however, and it would be inappropriate for this Court to do so in their stead. *See Imes v. City of Asheville*, 594 S.E.2d 397, 400 (N.C. Ct. App. 2004) (declining to create a public policy exemption to the at-will employment doctrine for victims of domestic violence); *see generally Jones v. Duke Energy Corp.*, 43 F. App'x 599, 600 (4th Cir. 2002) (declining to expand the public policy exception beyond the scope established by state courts).

Case 1:18-cv-00892-LCB-LPA   Document 117   Filed 09/27/21   Page 21 of 21