IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No.: 1:18-CV-892-LCB-LPA

| | | |
|---|---|---|
| JAMES MEBANE and ANGELA WORSHAM, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) ) | **PLAINTIFFS' FOURTH AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT** |
| GKN DRIVELINE NORTH AMERICA, INC., | ) ) ) | |
| *Defendant.* | ) | |

COME NOW, Plaintiffs James Mebane and Angela Worsham on behalf of themselves and all others similarly situated, by and through undersigned counsel, and hereby set forth this collective action for violation of the Fair Labor Standards Act under § 216(b), and a representative action under the North Carolina Wage and Hour Act pursuant to Fed. R. Civ. P. 23, and alleges as follows:

## PRELIMINARY STATEMENT

1.     Plaintiffs, on behalf of themselves and all others similarly situated, bring this action against GKN Driveline North America, Inc., ("GKN" or "Defendant") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq*., for unpaid overtime compensation, unpaid wages, and related penalties and damages.

2.     Plaintiffs consist of current and former employees working at Defendant GKN's manufacturing facilities.  Defendant has a policy, pattern or practice of failing to

pay employees for all scheduled and overtime hours worked (even though such hours were properly recorded), and failing to pay employees all earned, promised and accrued wages. In particular, throughout the relevant period, Defendant has maintained a corporate policy and practice of rounding Plaintiffs' hours worked to scheduled shift times and failing to compensate employees for all hours worked, (even though such hours were properly recorded), including mandatory pre-shift and post-shift work, as well as required work performed during scheduled meal breaks, and failing to compensate employees at the promised rate for hours worked less than 40 per week and/or overtime rate for all hours worked in excess of forty (40) per week,

3.      Defendant's pay practices and policies are in direct violation of the FLSA and the NCWHA; and therefore Plaintiffs, on behalf of themselves, and all others similarly situated, seek promised wages and overtime premiums for all regular-rate and overtime work required, suffered, or permitted by Defendant, liquidated damages and/or other damages as permitted by applicable law; attorneys' fees, costs and expenses incurred in this action.

4.      Plaintiffs bring this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class:

> All individuals who were, are, or will be employed at Defendant GKN's North Carolina facilities on the manufacturing floor in non-managerial positions who were not compensated for all of their hours worked, including, but not limited, above forty (40) per week any time within three years prior to the commencement of this action, through the present.

5.     Defendant is liable for its failure to pay Plaintiffs for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

6.     Plaintiffs who elect to participate in this FLSA collective action seek compensation for all work performed for Defendant, regardless of whether the work was performed outside scheduled shift times, compensation at the appropriate overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

7.     Plaintiffs also bring this action, on their own behalf, and as a representative of similarly situated current, former or future manufacturing employees, employed by Defendant at GKN's manufacturing facilities in North Carolina, under the NCWHA. Plaintiffs, who are North Carolina residents and who worked for Defendant in North Carolina, assert that they and the putative class, who work or worked in North Carolina for Defendant, are entitled to compensation for all work performed for Defendant before, during, and/or after their scheduled shift.  Additionally, whether the workweek totaled greater or fewer than forty (40) hours, compensation at the appropriate regular and overtime rate for all hours worked in excess of forty (40) per week, for an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

8.     Plaintiffs seek class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of Defendant's employees in North Carolina:

> Individuals who were, are, or will be employed at Defendant GKN's North Carolina facilities on the manufacturing floor in non-managerial positions, were not compensated all promised, earned, and accrued wages due to

3

Defendant's rounding policy, including, but not limited to, compensation for all hours worked up to forty (40) in a week and for hours worked above forty (40) in a week within two years prior to the commencement of this action, through the present.

9.      Plaintiff Mebane also brings this action individually for age-based harassment, discrimination, and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 to 29 U.S.C. § 634 in addition to assault, battery, intentional infliction of emotional distress, and negligent employment, supervision and retention. As alleged with greater specificity below, Defendant GKN subjected Plaintiff Mebane to age-based discrimination and harassment, which created a hostile work environment, leading to Plaintiff Mebane's being placed in a life-threatening situation. When Plaintiff Mebane reported this situation, Defendant GKN took an unlawful adverse employment action against Plaintiff Mebane. Accordingly, Plaintiff Mebane seeks all available relief for these claims, including, but not limited to, back pay, front pay, past pecuniary losses, prejudgment interest, compensatory damages, punitive damages, attorney's fees and costs, and all other relief permitted by applicable law.

## PARTIES

10.      Plaintiff Mebane is an adult citizen and resident of the State of North Carolina, residing in Burlington.

11.      Plaintiff Worsham is an adult citizen and resident of the State of North Carolina, residing in Graham.

12.      Defendant GKN is organized under Delaware law and has its principal place of business at 2220 North Opdyke Road, Auburn Hills, MI 48326.

4

13.     Defendant operates three regional facilities, including GKN Driveline – Alamance (located in Mebane), GKN Driveline – Roxboro, and GKN Driveline – Sanford.

14.     Plaintiff Mebane worked for Defendant GKN in its Mebane, North Carolina, location as a non-exempt, hourly paid Machine Operator and later Line Inspector from approximately 2011 until on or about April 23, 2018.   During his employment with Defendant GKN, Plaintiff Mebane also worked at the GKN Driveline – Roxboro location.

15.     Plaintiff Worsham worked for Defendant GKN in its Mebane, North Carolina location as a non-exempt, hourly paid Machine Operator.   She was directly hired by GKN in July 2017 and remained in that position until April 2018.

16.     The FLSA collective action Putative Plaintiffs consist of individuals who have worked for Defendant, who were non-exempt employees paid an hourly wage, and who were not properly paid their overtime given Defendant's policy and practice of rounding down the number of hours employees worked and properly recorded pursuant to Defendant's strict policy that all employees accurately record all hours worked, including any time spent in any pre and/or post shift activities.

17.     Plaintiffs bring this action on their own behalf and, pursuant to 29 U.S.C. § 216(b), as representatives of a proposed collective action of similarly situated employees.

## JURISDICTION AND VENUE

18.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*. and under ADEA, 29 U.S.C. § 621 *et seq.*

5

19.     The United States District Court for the Middle District of North Carolina has personal jurisdiction because Defendant conducts business in Alamance County, North Carolina, which is located within this District.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendant conducted business within the Middle District of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

21.     The claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.

22.     Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 over the pendent state law claims under the NCWHA; negligent hiring, supervision, and retention; and wrongful termination, because those state law claims arise out of the same nucleus of operative fact as the FLSA and ADEA claims.

23.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

24.     Upon information and belief, during the time period relevant to this action, Defendant was an employer that employed Named and Putative Plaintiffs, pursuant to the FLSA, NCWHA, and ADEA, in that Defendant, or its agents, held or implemented the power, *inter alia*, to control the work performance of Named and Putative Plaintiffs, and Defendant received the benefit of Named and Putative Plaintiffs' labor.

## **COVERAGE**

25.     At all times material to this action, Defendant has acted, directly or indirectly,

6

in the interest of an employer or joint employer with respect to Named and Putative Plaintiffs.

26.     At all times material to this action, Defendant was an employer within the defined scope of the FLSA, 29 U.S.C. § 203(d).

27.     At all times material to this action, Named and Putative Plaintiffs were individual employees within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

28.     At all times material to this action, Defendant was an enterprise engaged in related activities performed through a unified operation or common control for a common business purpose, as defined by the FLSA, 29 U.S.C. § 203(r).

29.     At all times material to this action, Defendant was an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

30.     At all times material to this action, Named Plaintiffs were employees of Defendant within the meaning of the ADEA, 29 U.S.C. § 630(f).

31.     At all times material to this action, Defendant has continuously been an employer, with twenty (20) or more employees, engaged in an industry affecting commerce within the meaning of the ADEA, 29 U.S.C. § 630(b).

**CONDITIONS PRECEDENT TO FILING LAWSUIT**

7

32.     On or about October 17, 2018, Plaintiff Mebane filed a charge of discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC"), alleging violations of the ADEA.

33.     On February 21, 2020, the EEOC issued a Notice of Right to Sue to Plaintiff Mebane against Defendant, attached hereto as Exhibit A.

34.     Plaintiff Mebane has therefore exhausted all administrative remedies prior to commencing this action under the ADEA.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

35.     Defendant GKN Driveline North America, Inc. designs, manufactures and services systems and components for leading aircraft, vehicle and machinery manufacturers.  Defendant GKN has a focus in developing, building and supplying an extensive range of automotive driveline products and systems, for luxury cars to low-cost cars.

36.     Plaintiff James Mebane began work for GKN in 1998 and resigned in 2003. Plaintiff Mebane returned to work for the company in 2007 as a temporary employee to assist with expenses.  In 2011, Plaintiff Mebane was hired full-time as a Machine Operator in the BMW Department.

37.     Plaintiff Mebane's duties included inspecting manufactured parts at the end of the line in a dark, curtained room under an ultraviolet light to search for cracks and defects in the parts prior to shipping.

38.     Plaintiff Mebane worked the third shift, which was scheduled from approximately 11:00 p.m. to 7:30 a.m., with two (2) paid ten (10) minute breaks, and one

8

(1) thirty (30) minute lunch break. Plaintiff Mebane's final pay rate was approximately $18.45 per hour, which included a premium for working the third shift.

39.     Plaintiff Mebane was terminated on or about April 23, 2018.

40.     Plaintiff Angela Worsham was hired by Defendant GKN in July 2017.

41.     Plaintiff Worsham worked the second shift, which was scheduled from approximately 3:00 p.m. to 11:30 p.m., with two (2) paid ten (10) minute breaks, and one (1) thirty (30) minute lunch break. Plaintiff Worsham's final pay rate was approximately $14.80 per hour.

42.     Plaintiff Worsham was terminated in April 2018.

## WAGE-RELATED FACTUAL ALLEGATIONS

43.     Upon information and belief, Defendant GKN has more than 10,000 employees at approximately 50 locations around the United States. Six of these locations are in North Carolina, of which five specialize in driveline manufacturing.

44.     Defendant GKN employs machinists, line inspectors, and similar positions on its manufacturing floors to produce its products.

45.     Defendant GKN compensates machinists, line inspectors, and other manufacturing floor employees on an hourly basis. Defendant GKN classifies these employees as hourly non-exempt under the FLSA.

46.     Plaintiff Mebane worked for Defendant GKN as a machinist and later a line inspector during the relevant period. Plaintiff Worsham worked for Defendant GKN as a machine operator during the relevant period.

47.     Defendant requires employees working on the manufacturing floor to work

9

scheduled shifts, typically eight and one-half (8.5) hour shifts, five (5) days per week, with a thirty (30) minute lunch break each day. Some employees are required to work up to twelve (12) hour shifts and up to seven (7) days a week, contingent upon Defendant's production demands. Defendant often requires employees to work mandatory overtime during seasons of heavy demand, such that employees may work their scheduled shift six (6) to seven (7) days per week during busy months.

48.     During the relevant period, to satisfactorily perform their job duties and meet work production demands, manufacturing floor employees were required to perform work-related duties beyond their scheduled shift times, including before their shift start time, during their scheduled meal breaks, and after the end of their shift end time.

49.     Specifically, manufacturing floor employees were required to arrive prior to the start of their scheduled shift, to perform essential job duties including, but not limited to, checking the machines, preparing tools, setting up the machines with required water temperatures, setting machine gauges to zero, ensuring the work area is clean, and engaging in department meetings to receive daily assignments.

50.     This required pre-shift work was necessary to ensure that employees produced a high-quality product during their shift. Employees who failed to prepare their work area and machines before the beginning of their shift risked producing defective parts, which could lead to written warnings and termination of employment.

51.     In approximately August 2017, Defendant GKN installed turnstiles in its Mebane location for security reasons, requiring employees to use their badges to enter the building.

52.     In order to meet production demands, including ensuring machines remained operating at all times, Plaintiffs often worked during their scheduled meal breaks or ate while they operated machinery.  For example, on days where Defendant was short-staffed, Plaintiffs would only have approximately fifteen (15) minutes to eat.

53.     Additionally, when Plaintiffs were able to take a meal break, they were typically unable to take the full thirty (30) minutes and instead took, on average, a fifteen (15) to twenty (20) minute break, because Defendant's cafeteria was located relatively far from most workstations, requiring Plaintiffs to commit five to ten minutes of their meal breaks to walking and Plaintiffs, who regularly worked with harmful materials, including lead and metal shavings, were required to wash off before eating.

54.     At the end of the end shift, employees engaged in activities that included, but were not limited to, cleaning their work areas and inputting production data regarding the day's work into Defendant GKN's computer system.

55.     As a result of these activities, employees stayed past their scheduled shift end time, engaged in required post-shift activities—pursuant to Defendant's policy and practice of requiring employees clean their work area among other activities—and then clocked out, consistent with Defendant's policy and practice that all employees were required to properly record all hours worked.  Nevertheless, Defendant did not pay Plaintiffs for such time.

56.     Specifically, pursuant to Defendant's Kronos Rounding Policy, Defendant rounded down Plaintiffs' hours worked to Plaintiffs' scheduled shift times and rounded any lunch break up to thirty (30) minutes, automatically deducting 30 minutes from

employees' total daily hours worked, irrespective of whether employees took a lunch break or not, which resulted in an organizational practice of underpaying its employees.

57.     Defendant's parent company GKN's unlawful compensation practices, (including deducting a rounded thirty (30) minutes from employees shifts), were also the subject of a class action, filed on December 16, 2016, in the case of *Ismael Diaz v. GKN Aerospace CHEM-TRONICS Inc.*, No. 37-2016-00044445-CU-OE-CTL (Cal. Super. 2016).  In that action, the parties reached a settlement, which was ultimately approved by the court.

58.     Despite the *Diaz* litigation, Defendant continued to carry out unlawful pay practices, as alleged herein.

59.     Defendant's failure to compensate for all properly recorded hours worked, including all work performed from the time Plaintiffs clocked in through the time Plaintiffs clocked out, and to pay employees all promised, earned and accrued wages, has affected all putative Plaintiffs similarly.

## AGE-BASED HARASSMENT, NEGLIGENT SUPERVISION, ASSAULT, BATTERY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND RETALIATION FACTUAL ALLEGATIONS

60.     Plaintiff Mebane is sixty-one (61) years old.

61.     In approximately early 2017, Defendant GKN hired a machinist, Frank Adu-Sarpong, ("Frank"), who worked alongside Plaintiff Mebane.  Frank was in his thirties with a strong build.

62.     Shortly after Frank began his employment with Defendant GKN, Frank began to threaten older employees.

12

63. Frank repeatedly told other employees not to talk to him and that he would "fuck [them] up if [they] kept running [their] mouths." On a regular basis, Frank repeatedly jabbed Plaintiff Mebane in the chest with his forefinger, called Plaintiff Mebane an "old man," and threatened to kill Plaintiff Mebane and several other co-workers.

64. Frank repeatedly harassed another employee, "Joey," who was in his fifties, including by pushing Joey with his body, jabbing him in the chest with his finger, and threatening to "fuck him up" and to hurt him.

65. At one point, Plaintiff Mebane had to pull Frank off Joey. This behavior ultimately caused Joey to request a transfer to another department. All of the older employees were terrified of Frank.

66. Several employees, including Plaintiff Mebane, complained about Frank's behavior to Defendant GKN's management, including direct supervisor responsible for Plaintiff and Frank, Derrick Barbee; Mr. Barbee's supervisor, Corey Mason; and a lead supervisor, Paul Langford. Mr. Langford took responsibility for reporting the concerns to Defendant GKN's Human Resources Department, as the HR shifts did not overlap with the third shift.

67. Defendant GKN ignored the complaints and took no action to correct the situation, except that Mr. Langford sometimes appeared on the floor to "keep an eye" on Frank. However, Frank only became more aggressive after learning of the complaints.

68. On or about April 21, 2018, Frank became enraged with Plaintiff Mebane, pushed him, and told him, "When you come in the bathroom, I'm going to get you." Plaintiff Mebane responded by telling Frank to get his hands off him.

13

69.     Later that same day, Frank told Plaintiff Mebane, "I'm going to shoot all of you.  All of y'all are going to get shot, you watch."

70.     Plaintiff Mebane informed his direct supervisor, Mr. Barbee, of the death threat.  Mr. Barbee held an informal meeting with Plaintiff Mebane and the other two employees on the team. At this meeting, Mr. Barbee told the employees that he had advised Defendant GKN's Human Resources Department about the problem with Frank, and that it was clear Defendant GKN had no intention of addressing the problem, and that if the employees believed their lives were in danger, that they should simply defend themselves and yell for help.

71.     On or about April 23, 2018, while Plaintiff Mebane was at his work station, Frank came into the booth swinging a large hunting knife, and he stated, "I bought this for you."  Plaintiff Mebane shouted and jumped back just in time to avoid being stabbed in the chest or stomach.  Plaintiff Mebane immediately ran out of the booth, grabbed a part as if to defend himself, dodged Frank and ran.

72.     Frank began to chase Plaintiff Mebane around the floor while swinging the knife and threatening to kill him.  Frank soon cornered Plaintiff Mebane, but other employees came to Plaintiff Mebane's aid, and one of them was able to ease the knife out of Frank's hand.

73.     Defendant GKN's management was informed, and Frank was ordered to go home.  Plaintiff Mebane urged management to call law enforcement due to the seriousness of the incident, but no call was made.

14

74.     Approximately forty-five (45) minutes later, between midnight and 2 a.m., Plaintiff Mebane was also instructed to go home.

75.     Given Frank's violent behavior, Plaintiff Mebane did not feel safe leaving the building alone. The shift supervisor, Corey Mason, walked Plaintiff Mebane out of the building.

76.     In the parking lot, Plaintiff Mebane and Mr. Mason saw Frank waiting in his car. Frank rolled down his window and began backing toward them. Concerned that he had a gun, Plaintiff Mebane ducked and then crossed a traffic island to put distance between them, and Mr. Mason yelled to him, "don't stop, go to your car."

77.     Plaintiff Mebane ran to his vehicle, followed by Frank. Plaintiff Mebane attempted to call 911, but was unable to get a signal, and instead called the guard headquarters. At that point, Frank appeared to leave, but as Plaintiff Mebane left the property, he found Frank waiting for him on the nearby frontage road. Frank then chased Plaintiff Mebane on the highway on his way home, but he was not able to catch him. Mr. Mason called Plaintiff Mebane repeatedly after his departure to ensure that he had arrived home safely.

78.     After reporting the incident to Defendant GKN's management and prior to leaving the plant, Plaintiff Mebane was instructed to turn in his credentials and wait for a call from management. The following day, Plaintiff Mebane was contacted by Human Resources ("HR") for his version of events. Approximately two weeks later and without being offered the opportunity to return to work, Plaintiff Mebane was terminated by phone,

and he later received a letter stating that his termination was due to an unspecified violation of company policy.

79.     Plaintiff Mebane suffered fear and emotional distress resulting from the ongoing harassment and threats and from the assault, with symptoms including but not limited to headaches, insomnia, nightmares, and high blood pressure.

80.     Plaintiff Mebane filed a charge of discrimination against Defendant on or about October 17, 2018, with the Equal Employment Opportunity Commission, and received his Notice of Right to Sue from the EEOC on February 21, 2020.

## FLSA COLLECTIVE ACTION ALLEGATIONS

81.     Named Plaintiffs bring the First Count of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated employees.

82.     Members of the FLSA class are similarly situated.

83.     Members of the FLSA class have substantially similar job requirements and pay provisions, and are subject to common practices, policies, or plans that fail to compensate them for all work performed and fail to compensate them at the appropriate overtime rate for all hours worked in excess of forty (40) per week.

84.     There are numerous (in excess of 1000) similarly situated current and former manufacturing floor employees that fall within the scope of the aforementioned FLSA class.

85.     These similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

16

86. Members of the proposed FLSA class, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

87. Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs.

88. Named Plaintiffs consent in writing to assert their claims for unpaid wages under the FLSA pursuant to 29 U.S.C. § 216(b). Named Plaintiffs' signed consent forms are filed with the Court as Exhibits A and B to this Complaint. As this case proceeds, it is likely other individuals will file consent forms and join as opt-in plaintiffs.

89. Named Plaintiffs request that they be permitted to serve as representatives of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

## NCWHA CLASS ACTION ALLEGATIONS

90. Plaintiffs brings the Second Cause of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all similarly situated employees, for relief to redress and remedy Defendant's violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, et seq.

91. <u>Numerosity</u>: The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiffs at this time, upon information and belief, the class comprises more than 1000 individuals.

92. <u>Common Questions Predominate</u>: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and

17

these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all putative class members have been harmed by Defendant's failure to lawfully compensate them. The common questions of law and fact include, but are not limited to, the following:

    a. Whether pre-shift work, working "lunch breaks," and post-shift work performed by putative Class Members is compensable under the NCWHA;

    b. Whether Defendant's failure to compensate putative Class Members for all hours worked due Defendant's Kronos rounding system is in violation of the NCWHA;

    c. Whether Defendant failed to compensate putative Class Members at the earned, accrued, and/or promised rate for all hours worked in excess of forty (40) each week pursuant to § 95-25.6; and

    d. Whether Defendant failed to compensate putative NC Class Members for all of their earned, accrued, and/or promised wages, including, but not limited to, straight time and overtime on their regular pay date, in violation of the NCWHA.

93. <u>Typicality</u>: The claims of Plaintiffs are typical of the claims which could be alleged by any member of the putative Class, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendant, as alleged herein, of failing to pay employees for all pre-shift and post-shift work, for hours worked in excess

of forty (40) each week at the appropriate hourly rate, and for all hours worked at the appropriate hourly rate. Defendant's compensation policies and practices affected all putative class members similarly, and Defendant benefited from the same type of unfair and/or unlawful acts as to each putative class member. Plaintiffs and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

94.     <u>Adequacy of Representation</u>: Plaintiffs are able to fairly and adequately protect the interests of all members of the proposed class, and there are no known conflicts of interest between Plaintiffs and members of the proposed class. Plaintiffs have retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.

95.     <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual

litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

96. Public Policy Considerations: Defendant violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

97. Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed class.

**COUNT ONE**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 207**
**Brought by Plaintiffs on Behalf of Themselves and All Similarly Situated Employees**

98. Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

99. At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

100. At all relevant times, Defendant has employed, and continues to employ, "employee[s]," including Named Plaintiffs, and each of the members of the prospective FLSA Class, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

101. At all relevant times, Defendant has had gross operating revenues in excess of $500,000.

102. The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendant, to compensate all non-exempt employees at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

103. At all relevant times, Defendant, pursuant to their policies and practices, willfully failed and refused to pay for all hours worked to Plaintiffs, including for required pre-shift and post-shift work performed by Plaintiffs.

104. Defendant's failure to pay Plaintiffs for all hours worked, and at the appropriate overtime rate for hours worked in excess of forty (40) per week, in weeks where Plaintiffs worked over 40 hours, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b), since Defendant cannot show they acted in good faith, and a three (3) year, rather than two (2)

year statute of limitations, since Defendant's acts constitute willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

105. As a result of Defendant's unlawful acts, Plaintiffs have been deprived of compensation for all required hours worked, and appropriate compensation for all overtime hours worked, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

106. Plaintiffs and putative plaintiffs each worked more than forty (40) hours in one or more workweeks within the applicable statutory period.

## COUNT TWO
### Violation of the North Carolina Wage and Hour Act
### N.C. Gen. Stat. § 95-25.6
### Brought by Plaintiffs on Behalf of Themselves and All Similarly Situated Employees

107. Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

108. The class period for this cause of action is at least two years from the date of the filing of the initial Complaint. *See* Dkt. 1.

109. At all relevant times, Defendant has employed, and/or continues to employ, Named and Putative Plaintiffs within the meaning of the NCWHA.

110. Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and promised wages, on the employee's regular payday.

111. Additionally, North Carolina law requires every employer to notify employees of the promised wages and the day of payment as well as making available a

22

written version of the employment practices and policies regarding promised wages. *See* N.C. Gen. Stat. § 95-25.13(1)-(2).

112.    Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendant was required to pay Plaintiffs and putative class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA.

113.    Every employer shall maintain complete and accurate records that document, in relevant part, the hours worked each workweek and all other records required to compute wages. 13 NCAC 12.0801.

114.    Defendant intentionally refused to pay all wages due, including wages for all hours worked, as accurately recorded by Plaintiffs, and as set forth in the preceding paragraphs of this Complaint, to Plaintiffs and putative class members in violation of the NCWHA.

115.    Defendant was aware that Plaintiffs and putative plaintiffs were not receiving all straight-time wages for all hours worked up to forty (40) and overtime wages for hours worked in excess of forty (40) per week per week pursuant to the promised straight-time rate and corresponding premium overtime rate.

116.    Defendant's production demands and manufacturing process required Plaintiffs and putative class members to monitor the assembly line at all times. In order to meet this requirement, employees arrived to work early, —as required by Defendant's

23

policies—work through all or part of their meal breaks, and stayed after their regularly scheduled shift time.

117. Defendant employed Named and Putative Plaintiffs within the State of North Carolina.

118. At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiffs all owed, earned, and promised wages, including for all work-related activities performed from the moment they clock in through the moment they clocked out, including, for example, required pre-shift work performed by Plaintiffs, and at the appropriate overtime rate that Plaintiffs are lawfully entitled to for hours worked in excess of forty (40) in a single workweek.

119. Consistent with the above, Defendant's failure to pay Plaintiffs all owed, earned, and promised wages was in violation of N.C. Gen. Stat. § 95-25.6.

120. As a result of Defendant's unlawful policies and practices, Plaintiffs have been deprived of compensation due and owing.

121. Defendant's failure to pay Plaintiffs all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages, under N.C. Gen. Stat. § 95-25.22(a1).

122. As a result of Defendant's unlawful acts, Plaintiffs have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

**Violation of the Age Discrimination in Employment Act**
**29 U.S.C. § 621 *et seq.***
**Age Discrimination, Hostile Work Environment, Wrongful Termination, and**
**Retaliation**
**Brought by Plaintiff Mebane**

123.    Plaintiff Mebane incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

124.    Defendant GKN is an "employer" as defined by ADEA, ADEA, 29 U.S.C. § 630(b), because it employs twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

125.    As alleged above, Plaintiff Mebane was repeatedly subjected to ridicule, abuse, humiliation, and beratement, and, on more than one occasion, Plaintiff Mebane suffered physical assault and battery, with serious threats of imminent bodily harm and death as a direct result of his age.

126.    Such discrimination and harassment was ongoing from approximately mid to late 2017 until April 23, 2018, when Plaintiff Mebane was terminated.

127.    Such discrimination and harassment was based on Plaintiff Mebane's age, a protected status. Plaintiff Mebane's younger co-workers were not treated in the same demeaning way Plaintiff Mebane was treated.

128.    Such discrimination and harassment was sufficiently severe and/or pervasive to alter the terms and conditions of Plaintiff Mebane's employment.

129.    Such discrimination and harassment was unwelcome.

130.    While Plaintiff Mebane and other older employees informed their supervisors and Defendant GKN's Human Resources department, Defendant GKN failed

25

to take any prompt corrective action upon hearing reports of harassment.

131.  Plaintiff Mebane engaged in a protected activity under the ADEA when he reported harassment, threats, and assaults to Defendant GKN's management.

132.  Defendant GKN responded to Plaintiff Mebane's informal complaint regarding the assault by firing Plaintiff Mebane.

133.  Plaintiff Mebane was discharged from employment upon being assaulted with a deadly weapon by a harasser, reporting the assault to Defendant GKN's management, and requesting that law enforcement be called due to the severity of the incident.  This discharge constitutes wrongful termination in violation of 29 U.S.C. § 623(d).

134.  As a direct and proximate result of Defendant GKN's violation of Plaintiff Mebane's rights under the ADEA, as alleged herein, Plaintiff Mebane has been injured and suffered damages, including lost income and benefits, loss of reputation, emotional distress and mental anguish, humiliation, inconvenience, and loss of enjoyment of life. Accordingly, Plaintiff Mebane is entitled to compensatory damages, back pay, reinstatement or front pay, and attorneys' fees and costs, pursuant to 29 U.S.C. § 626(b).

135.  Additionally, since Defendant Mebane's violations of the ADEA, as alleged herein, was intentional, willful, knowing and malicious, or with reckless indifference to Plaintiff Mebane's federally protected rights, Plaintiff Mebane is entitled to recover liquidated damages from Defendant GKN, pursuant to 29 U.S.C. § 626(b).

### COUNT FOUR
**Negligent Employment, Supervision, and Retention**
**North Carolina Common Law**

26

**Brought by Plaintiff Mebane**

136. Plaintiff Mebane incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

137. Defendant GKN owed a duty to Plaintiff Mebane to exercise reasonable care in its hiring, supervision, and retention of its employees, in order to protect Plaintiff from the wrongful conduct of their employees, including, but not limited to, Frank Adu-Sarpong.

138. Frank was an incompetent employee in that Defendant GKN's employment and retention of him was dangerous to fellow employees.

139. Defendant GKN knew and/or had a reason to know of Frank's incompetency, in that Plaintiff Mebane and other employees repeatedly complained to Defendant GKN's management of Frank's harassing and threatening behavior.

140. Defendant violated its duty of care in hiring, supervising, and retaining Frank, who subjected Plaintiff Mebane to the aforementioned abuses, by failing to properly train and supervise him regarding policies prohibiting discrimination and harassment, failing to enforce or implement any such policies, failing to supervise its employees to ensure no such conduct would occur, failing to take action after being alerted to such conduct, and retaining Frank, despite his unlawful acts and improprieties.

141. As a proximate result of the negligence of Defendant GKN, Frank committed a multitude of tortious acts against Plaintiff Mebane, and/or committed acts in violation of ADEA, as alleged herein, including, but not limited to, physical assault and battery, threats of imminent bodily harm or death, intentional and/or negligent infliction of emotional distress, and creation of a hostile working environment through constant beratement and

27

threats, unwanted and demeaning age-based remarks, and explicit and obscene language.

142.  As a proximate result of the negligence of Defendant GKN, Plaintiff Mebane has suffered severe emotional distress and other losses, as described above. Accordingly, Plaintiff Mebane is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).

143.  The actions of Defendant GKN constituted gross negligence and reckless indifference of the rights of Plaintiff Mebane, entitling Plaintiff Mebane to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.

## COUNT FIVE
### Assault
### North Carolina Common Law
### Brought by Plaintiff Mebane

144.  Plaintiff Mebane incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

145.  Frank, an employee of Defendant GKN, intentionally placed Plaintiff Mebane in reasonable fear of imminent bodily harm, and he did, in fact, fear bodily harm, when Frank chased Plaintiff Mebane around the workplace wielding a large hunting knife, when Frank waited for Plaintiff Mebane in a darkened parking lot and pursued him in his vehicle, and when Frank repeatedly threatened Plaintiff Mebane and physically shoved him or jabbed him in the chest, advising him that he would "fuck him up."

146.  Plaintiff Mebane's fear and apprehension was a product of Frank's intentional actions.

147.  Frank committed these acts while serving as an employee of Defendant

GKN. Plaintiff Mebane and other employees reported Frank's behavior to Defendant GKN, which took no action to prevent this behavior. Accordingly, Defendant GKN ratified Frank's conduct.

148. Plaintiff Mebane suffered fear and emotional distress as a result of these actions, and is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).

149. Defendant GKN's acts constituted willful, wanton, and malicious conduct, entitling Plaintiff Mebane to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.

<u>**COUNT SIX**</u>
**Battery**
**North Carolina Common Law**
**Brought by Plaintiff Mebane**

150. Plaintiff Mebane incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

151. Frank, an employee of Defendant GKN, intentionally and offensively touched Plaintiff Mebane, without his permission, when he jabbed Plaintiff Mebane in the chest and shoved Plaintiff Mebane.

152. Frank committed this act while serving as an employee of Defendant GKN. Plaintiff Mebane and other employees reported Frank's behavior to Defendant GKN, which took no action to prevent this behavior. Accordingly, Defendant GKN ratified Frank's conduct.

153. Plaintiff Mebane suffered fear and emotional distress as a result of these

actions, and is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).

154. Defendant GKN's acts constituted willful, wanton, and malicious conduct, entitling Plaintiff Mebane to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.

## COUNT SEVEN
### Intentional Infliction of Emotional Distress
### North Carolina Common Law
### Brought by Plaintiff Mebane

155. Plaintiff Mebane incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

156. The conduct of Frank, ratified by Defendant GKN, as alleged above, including, but not limited to, physical assault and battery, constant beratement and ridicule, threats of serious bodily injury and/or death, and offensive and demeaning age discrimination, constitutes extreme and outrageous behavior, exceeding all bounds of a civilized society.

157. The conduct of Frank, ratified by Defendant GKN, as alleged above, was intended to cause Plaintiff Mebane to suffer severe emotional distress, or was carried out in reckless disregard as to whether it would inflict severe emotional distress upon Plaintiff Mebane, or was certain or substantially certain to result in severe emotional distress on the part of Plaintiff Mebane.

158. The conduct of Frank, ratified by Defendant GKN, as alleged above, was foreseeable to cause, and did in fact proximately cause, Plaintiff Mebane to suffer from

30

severe emotional distress, mental anguish, humiliation, embarrassment, and pain. Accordingly, Plaintiff Mebane is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).

159.    These acts were committed by Frank while he served as an employee of Defendant GKN and while acting within the scope of his employment, and Defendant GKN further ratified Frank's behavior by taking no action to prevent it.

### COUNT EIGHT
**Negligent Infliction of Emotional Distress**
**North Carolina Common Law**
**Brought by Plaintiff Mebane**

160.    Plaintiff Mebane incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

161.    The conduct of Frank, ratified by Defendant GKN, as alleged above, including, but not limited to, physical assault and battery, constant beratement and ridicule, threats of serious bodily injury, and offensive and demeaning age discrimination, constitutes negligent conduct, as it happened on a daily basis, and Defendant GKN was aware of the conduct, but failed to take any reasonable preventative or anticipatory action to protect Plaintiff Mebane.

162.    The conduct of Frank, ratified by Defendant GKN, as alleged above, was reasonably foreseeable to cause Plaintiff Mebane to suffer severe emotional distress.

163.    As a proximate result of Defendant GKN's negligence, as alleged above, Plaintiff Mebane suffered from severe emotional distress, mental anguish, humiliation, embarrassment, and pain.    Accordingly, Plaintiff Mebane is entitled to compensatory

31

damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).

164.    These acts were committed by Frank while he served as an employee of Defendant GKN and while acting within the scope of his employment, and Defendant GKN further ratified Frank's behavior by taking no action to prevent it.

165.    Defendant GKN's acts constituted gross negligence and reckless indifference to the rights of Plaintiff Mebane, entitling Plaintiff Mebane to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.

**COUNT NINE**
**Wrongful Discharge in Violation of North Carolina Public Policy**
**North Carolina Common Law**
**Brought by Plaintiff Mebane**

166.    It is the public policy of the State of North Carolina, as expressed in, *inter alia*, N.C. Gen. Stat. §§ 143-422.2, Article I, Section 1 of the North Carolina Constitution, and ubiquitously throughout the statutes and laws of this State, that employees be free from age-based harassment, discrimination and retaliatory treatment in their employment.

167.    The termination of Plaintiff Mebane's employment, resulting from his complaints and suffering related to the acts of age discrimination, age-based harassment, assault, and battery, was wrongful as against the public policy of the State of North Carolina.

168.    Such termination proximately caused Plaintiff Mebane to suffer emotional distress and other losses, as described above.  Accordingly, Plaintiff Mebane is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).

32

169.    Defendant GKN's acts constituted willful, wanton, and malicious conduct, entitling Plaintiff Mebane to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, and all those similarly situated, collectively pray that this Honorable Court:

1.    Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiffs as representatives of all those similarly situated under the FLSA collective action;

2.    Issue an Order certifying this action as a class action under the NCWHA, and designate Named Plaintiffs as representatives on behalf of all those similarly situated under the NCWHA class;

3.    Award Plaintiffs and all those similarly situated actual damages for all unpaid wages found due, and liquidated damages equal in amount, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a1);

4.    Award Plaintiffs and all those similarly situated pre- and post-judgment interest at the statutory rate, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a);

5.    Award Plaintiffs and all those similarly situated attorney's fees, costs, and disbursements as provided by FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(d);

6. Award Plaintiff Mebane all back pay, front pay, and past pecuniary losses due as a result of Defendant GKN's unlawful acts;

7. Award Plaintiff Mebane all compensatory damages due as a result of Defendant GKN's unlawful acts;

8. Award Plaintiff Mebane all consequential damages due as a result of Defendant GKN's unlawful acts;

9. Award Plaintiff Mebane punitive damages for Defendant GKN's malicious, reckless, or grossly negligent conduct;

10. Award Plaintiff Mebane all costs incurred in the prosecution of this action, including reasonable attorney's fees;

11. Award Plaintiff Mebane pre-judgment interest; and

12. Grant such further legal and equitable relief as the Court deems necessary and proper in the public interest.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Named Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this March 15, 2022.

_/s/ Gilda A. Hernandez_
Gilda A. Hernandez (NCSB No. 36812)
Charlotte C. Smith (NCSB No. 53616)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Tel: (919) 741-8693

34

Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com
*Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 15, 2022, a true and correct copy of the foregoing **PLAINTIFFS' FOURTH AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT** was delivered via the CM/ECF system to the following:

Kevin S. Joyner (NC Bar No. 25604)
Regina W. Calabro (NC Bar No. 20889)
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
4208 Six Forks Road, Suite 1100
Raleigh, North Carolina 27609
Phone: 919-787-9700
Facsimile: 919-783-9412
Kevin.joyner@ogletree.com
regina.calabro@ogletree.com

Paul DeCamp
Maxine A. Adams
**EPSTEIN BECKER & GREEN, P.C.**
1227 25th St., N.W., Suite 700
Washington, D.C. 20037
T: (202) 861-1819, (202) 861-1840
F: (202) 296-2882, (202) 296-3020
PDeCamp@ebglaw.com
MAdams@ebglaw.com

*Attorneys for Defendant*

                        */s/ Gilda A. Hernandez*
                        Gilda A. Hernandez (NCSB No. 36812)
                        Charlotte Smith (NCSB No. 53616)
                        **THE LAW OFFICES OF GILDA A.**
                        **HERNANDEZ, PLLC**
                        1020 Southhill Dr. Ste. 130
                        Cary, NC 27513
                        Tel: (919) 741-8693
                        Fax: (919) 869-1853
                        ghernandez@gildahernandezlaw.com
                        csmith@gildahernandezlaw.com

                        *Attorneys for Plaintiffs*