IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES MEBANE and ANGELA WORSHAM, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:18-CV-892 |
| GKN DRIVELINE NORTH AMERICA, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court is Plaintiffs' Motion to Amend Previously Certified Class or, in the alternative, to Certify Class Claims, filed on March 31, 2022. (ECF No. 148.) Also before the Court is Plaintiffs' Motion for Summary Judgment, filed on November 29, 2021. (ECF No. 128.) For the reasons stated herein, Plaintiffs' motion to certify will be granted in part and denied in part, and Plaintiffs' motion for summary judgment, which was filed based on a complaint and certified class which have since been amended, will be denied without prejudice as moot.

**I.       BACKGROUND**

Defendant operates three manufacturing facilities in North Carolina. (ECF No. 146 ¶ 13.) Plaintiffs worked for Defendant as non-exempt, hourly employees until April 2018. (*Id.* ¶¶ 14, 15.) They filed this suit on their own behalf and on behalf of similarly situated

employees on October 23, 2018, alleging that Defendant failed to pay its employees for all hours worked in violation of the Fair Labor Standards Act ("FLSA") and North Carolina Wage and Hour Act ("NCWHA"). (*Id.* ¶¶ 90–122.) Among other charges, Plaintiffs alleged that Defendant did not compensate employees for work performed before shifts began or after shifts ended due to its "Rounding Policy," even though employees notified Defendant of actual hours worked by clocking in and out. *See Mebane v. GKN Driveline N. Am., Inc.*, 337 F.R.D. 479, 492 (M.D.N.C. 2020). On November 5, 2020, this Court conditionally certified Plaintiffs' FLSA claims and certified the following NCWHA class:

> Individuals who were, are, or will be employed at Defendant GKN's North Carolina facilities on the manufacturing floor in non-managerial positions, were not compensated all promised, earned, and accrued wages due to Defendant's rounding policy, including, but not limited to, compensation for all hours worked up to forty (40) in a week and for hours worked above forty (40) in a week within two years prior to the commencement of this action, through the present.

*Id.* at 494.

On June 23, 2021, Plaintiffs requested leave to file a Fourth Amended Complaint ("FAC") to add allegations that class members were also not compensated when they worked during scheduled lunch breaks due to Defendant's "Automatic Deduction Policy." (ECF Nos. 107; 108 at 6–7.) Under Defendant's Automatic Deduction Policy, Defendant generally scheduled an unpaid thirty-minute meal break during each hourly employee's shift. (ECF No. 73-1 ¶¶ 7–8.) Until January 2020, employees did not clock-out during these meal periods unless they left Defendant's premises. (*See id.* at 9, 13; ECF Nos. 108-2 ¶ 14; 132-1 ¶ 18.) Instead, Defendant automatically deducted thirty minutes from each employee's total hours worked each shift. (ECF No. 56-1 at 162:21–163:1.) Defendant ended the automatic

deduction in approximately January 2020 and now requires employees to clock in and out during their meal period. (ECF No. 132-1 ¶ 19.)

Named Plaintiffs and sixteen Class Members testify that they worked during unpaid meals or otherwise did not receive full thirty-minute meal breaks. Named Plaintiff Mebane testifies that he frequently worked through lunch to monitor Defendant's machines because Defendant did not turn the machines off during lunch, and Mebane "could not leave the machine unoccupied while [it was] running" without losing product or risking a jam in the machine. (ECF No. 129-5 at 168:4–169:20.) Other employees likewise worked through meals or were called back to work during meals, often because, due to staffing shortages, no one else could cover their workstations or respond to emergencies. (ECF Nos. 108-2 ¶ 13; 108-3 ¶¶ 8, 9; 108-4 ¶¶ 8, 9; 108-5 ¶ 13; 108-6 ¶ 14; 108-10 ¶ 11; 108-12 ¶¶ 14–17; 108-13 ¶¶ 6–8; 108-14 ¶ 7; 108-16 ¶¶ 11–12; 108-17 ¶ 11.)

Named Plaintiff Worsham testifies that she took a meal break every day, but her meals were truncated because she had to use a portion of her unpaid thirty minutes to clean oil and metal shavings from her hands, navigate her oily workstation floor, retrieve her lunch from the cafeteria, and then timely return to her workstation before her shift began. (ECF No. 129-6 at 134:23–138:16.) Other employees likewise used unpaid mealtime to wash before eating, (ECF Nos. 108-3 ¶ 9; 108-7 ¶ 13; 108-8 ¶ 19; 108-9 ¶ 9; 108-10 ¶ 12; 108-14 ¶ 6; 108-17 ¶ 12), or walk to and from their workstation, (ECF Nos. 108-7 ¶ 13; 108-9 ¶ 9; 108-10 ¶ 12; 108-11 ¶ 11). Individual employees also complain that they spent mealtime removing and storing protective equipment, (ECF Nos. 108-8 ¶ 19; 108-14 ¶ 6), or had to wait in line to microwave their food, (ECF Nos. 108-9 ¶ 9; 108-10 ¶ 12; 108-11 ¶ 11).

Plaintiffs also offer evidence that supervisors directed or witnessed unpaid mealtime work. One employee testifies that supervisors required employees to work during the unpaid meals. (*See* ECF No. 108-16 ¶ 14 ("My supervisor often instructed me to let operators eat while working so production would not stop.").) Another testifies that his supervisor acknowledged that he "was not going to be paid for [lunch] even if [he] worked through it," (ECF No. 108-5 ¶ 14), while a third testifies that supervisors penalized employees for turning machines off during lunch, (ECF No. 108-8 ¶¶ 20–21). Other employees testify that they reported working through lunch to their supervisors or to Human Resources, but problems persisted. (*See, e.g.*, ECF Nos. 108-2 ¶¶ 13–14; 108-6 ¶ 18; 108-12 ¶ 17.) Each employee testified to "personally speaking with, observing, and working alongside" other employees who worked during meals. (*See, e.g.*, ECF No. 108-17 ¶ 14.)

Defendants offer rebuttal evidence that employees did not work during unpaid mealtimes. One employee testifies that he worked through lunch "once in a blue moon, maybe once a month" or once every "two or three months." (ECF No. 134-11 at 48:4-16.) Defendants offer additional testimony from thirty-eight employees that never performed unpaid meal break work. (*See generally* ECF No. 151 at 15 (citing ECF Nos. 134-12–134-15; 134-17–134-47; 134-63; 134-66; 134-67).) These thirty-eight employees have opted out of the certified Rounding Policy Class. (*See generally* ECF No. 152 at 6 n.2 (citing ECF Nos. 134-12–134-15; 134-17–134-47; 134-66; 134-67).)

This Court granted Plaintiffs' motion to amend their complaint on March 10, 2022 but clarified that "Plaintiffs' newly asserted claim that Class members were not paid for hours worked during lunch falls outside the scope of the NCWHA Class certified by this Court" and

"Plaintiffs must file a separate motion to amend the Court's Order to certify a new Class." (ECF No. 145 at 6.) Plaintiffs' motion followed. (ECF No. 148.) Discovery has now closed, and a trial is scheduled in this case for January 9, 2023. (ECF No. 150.)

## II.     STANDARD OF REVIEW

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). "Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation." *Gen. Tele. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

In order to be certified under Rule 23, a class must first comply with the four prerequisites established in the Rule's subsection (a): "(1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003) (citing Fed. R. Civ. P. 23(a)). Once that baseline is established, the class action "must fall within one of the three categories enumerated in Rule 23(b)." *Id.* (citing Fed. R. Civ. P. 23(b)). Plaintiffs seek class certification in this case under Rule 23(b)(3), (ECF No. 148 at 1), which requires both that "questions of law or fact common to class members predominate over any questions affecting only individual members" and, second, that "a class action is superior to other available methods" of adjudication, Fed. R. Civ. P. 23(b)(3).

A party seeking class certification under Rule 23 "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove" his ability to meet all of the prerequisites the Rule requires. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) ("The party seeking class

5

certification bears the burden of proof." (citation omitted)). Yet while the plaintiff bears the burden to demonstrate compliance, a district court also "has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (citing *Wal-Mart*, 564 U.S. at 350–51). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351. However, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

When considering whether or not to certify a class, a court need not certify either all claims or none. Rather, Rule 23(c)(4) allows a court to separate claims and define narrow classes with respect to particular issues "[w]hen appropriate." Fed. R. Civ. P. 23(c)(4). The Fourth Circuit has counseled courts to "take full advantage of the provision in subsection (c)(4) permitting class treatment of separate issues in the case" where an action "includes multiple claims." *Gunnells*, 348 F.3d at 441 (emphasis omitted). This "enabl[es] courts to restructure complex cases to meet the other requirements for maintaining a class action" and secure "the advantages and economies of adjudicating issues that are common to the entire class on a representative basis." *Id.* (quoting 7B Wright & Miller, *Federal Practice and Procedure* § 1790). Each separated class must meet the requirements of Rule 23 to be certified. *Id.*

## III. ANALYSIS

Plaintiffs seek to amend the NCWHA class to include claims for wages lost due to Defendant's Automatic Deduction Policy or, in the alternative, certify a separate Automatic

6

Deduction class. (ECF No. 149 at 6.) The Court finds it appropriate to separate the Rounding Policy and Automatic Deduction claims into separate classes pursuant to Rule 23(c)(4). The two claims involve different questions of law and fact that require nuanced analysis of each under Rule 23.

First, the two classes are not coextensive. Employee testimony shows that employees engaged in different conduct during unpaid mealtimes that may or may not be compensable, and some testified that they never worked during lunch. Second, Plaintiffs' Rounding Policy claim is supported by Defendant's time records, which document which employees clocked in before or clocked out after their shifts began or ended. Employees did not typically clock out during lunch, so Plaintiffs' Automatic Deduction claim must be supported by evidence that individual Class members worked during unpaid mealtimes on particular occasions. Third, the Court has not received briefing on the relevant legal standard for assessing whether Defendant's Automatic Deduction Policy violated the NCWHA and will not offer an opinion here on what the relevant standard is. It appears, however, that whether an employee's mealtime activities are compensable may be a "flexible and realistic" question that requires the trier of fact to determine "whether, on balance, employees use mealtime for their own, or for their employer's benefit." *Roy v. Cnty. of Lexington*, 141 F.3d 533, 545 (4th Cir. 1998) (analyzing a meal work claim under FLSA). It appears, therefore, that the Automatic Deduction claims depend on issues of law and fact that will vary significantly between members of the Rounding Policy Class. It would consequently be inappropriate to merely amend the Rounding Policy Class to include Plaintiffs' Automatic Deduction claims.

Moreover, Plaintiffs' evidence does not show a uniform theory of liability for their Automatic Deduction claims. Mebane and approximately eleven putative class members testify that they completed normal work at their workstations or responded to emergencies during meal breaks, primarily because of understaffing. Worsham, on the other hand, testifies that she took every meal break but lost time due to washing her hands and walking to and from her workstation. Other Class members spent unpaid time removing and storing protective equipment or waiting in line for the microwave. Thus, it appears that resolving whether Mebane or Worsham completed compensable work during unpaid mealtimes will resolve the same question for some, but not all, putative class members.

Accordingly, the Court will examine two potential classes for certification: one, represented by Mebane, that conducted ordinary or emergency work during unpaid mealtimes; and a second, represented by Worsham, that were otherwise unable to take a full thirty-minutes for lunch.

### A. Mebane's class

Under Rule 23(a), a class must meet the requirements of numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1)–(4). Regarding Mebane's Automatic Deduction class, there is an open question as to the number of employees who actually worked during meals. Of the Approximately 3,000 employees subject to the Automatic Deduction Policy, approximately twelve (including Mebane) testify that they regularly stayed at their station during all or part of their lunch or were called back from lunch early to deal with an emergency. One employee testifies to working through lunch "once in a blue moon"; approximately five of Plaintiffs' affiants testify to missing mealtime for other reasons; and

thirty-eight employees testify that they never worked through lunch. At this stage, however, it is not necessary to determine the exact size of the putative class. Plaintiffs' twelve affiants are sufficient evidence of a larger cohort of employees who worked during lunch, and each testified to "personally speaking with, observing, and working alongside" other employees who worked during meals. Thus, the Court finds that a sufficiently numerous group of employees worked during unpaid mealtimes, satisfying the first element. Plaintiff will ultimately bear the burden of demonstrating the approximate total number of members of the class.

Second, the commonality element requires a plaintiff to demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Because "any competently crafted class complaint literally raises common questions," what matters most to commonality is "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *See Wal-Mart*, 564 U.S. at 349–50 (internal quotations omitted). Although Rule 23(a)(2) speaks of "questions," plural, "[a] single common question will suffice," so long as it is "of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *EQT*, 764 F.3d at 360 (citing *Wal-Mart*, 564 U.S. at 350, 359). That said, "[t]he common questions must be dispositive and over-shadow other issues" in the case, *Lienhart*, 255 F.3d at 146 (citation omitted), and a plaintiff must show that he or she has suffered the same injury and not merely a violation of a particular provision of law, *Wal-Mart*, 564 U.S. at 349–50 (citing *Falcon*, 457 U.S. 147, 157 (1982)).

9

Here, it is undisputed that all putative class members were subject to the challenged Automatic Deduction policy. All worked in some capacity during unpaid mealtimes. All shared the same injury in lost wages. And the same alleged misconduct—automatically deducting thirty-minutes from their wages—caused each's injury. Thus, the question of liability under the NCWHA is common to the entire putative class and answering that question will resolve class members' claims.

Defendant argues that individual factual differences between putative class members destroys commonality, but this argument is unpersuasive. Given the Court's narrow definition of this putative class, it appears that facts relevant to the determination of liability are substantially similar among putative members. And although differences in frequency and duration of mealtime work exist, these individual differences appear to go primarily to damages and are overshadowed by common issues of liability.

Third, typicality is demonstrated when a representative's pursuit of her own interests "simultaneously tend[s] to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). An appropriate analysis of typicality begins "with a review of the elements of plaintiffs' *prima facie* case and the facts on which the plaintiff would necessarily rely to prove it." *Id.* at 467. A court must then "determine the extent to which those facts would also prove the claims of the absent class members." *Id.*

To make out a *prima facie* case under the NCWHA, a plaintiff must show that she "(1) earned wages that (2) an employer did not pay (3) at the proper time." *Mebane*, 337 F.R.D. at 493. To show that he earned wages, Mebane must demonstrate that the work he performed during mealtimes was compensable. Since putative class members also performed ordinary or

10

emergency job duties during mealtimes, Mebane's proof of this element will require facts and argument that would tend to prove that putative members' work was also compensable. The same is true of the second and third elements. Defendant points out individual differences between Mebane's testimony and the testimony of putative class members, such as the difference between remaining at one's workstation due to short staffing and returning to work early to address an emergency. At this stage, however, it appears these nuances are not so great as to defeat typicality. Each putative member completed work typical of his or her position during mealtimes, often because Defendant did not have another employee who could be called upon to do the work instead. Thus, Mebane's claim is typical of putative class members' claims.

Fourth, Plaintiffs must show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In addition to the plaintiff being a member of the class, "basic due process requires that named plaintiffs [also] possess undivided loyalties to absent class members." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998). Moreover, under Rule 23(a)(4), a court must also find that class counsel is "qualified, experienced and generally able to conduct the proposed litigation." *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 476 (E.D.N.C. 2010) (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)). Here, Mebane's interests are aligned with other employees who worked during unpaid mealtimes and were not compensated, and there is no evidence that his loyalties are divided. Testimony from employees who have opted out of the Class is irrelevant to the question of whether Plaintiffs adequately represent the interests of Class members. Further, this Court reviewed Class Counsel's qualifications and involvement in similar litigation and

11

found that she satisfies Rule 23(a)(4). Nothing in the record compels any change in that conclusion here. Thus, the putative class satisfies the adequacy requirement.

When a plaintiff can satisfy each element of Rule 23(a), they must additionally meet one of the requirements under 23(b). Fed. R. Civ. P. 23(b). In this case, Plaintiffs seek class certification under Rule 23(b)(3), (ECF No. 67 at 6), which requires (1) that "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) that "a class action is superior to other available methods" of adjudication, Fed. R. Civ. P. 23(b)(3). Four factors are pertinent to the predominance and superiority inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.*

A predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). A court must consider "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues," *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:49, 195–96 (5th ed. 2012)). An individual issue is one where evidence varies between class members whereas common issues are present when "the same

evidence will suffice for each member to make a prima facie showing. . . ." *Id.* (quoting Rubenstein, *supra* § 4:50, 196–97). Ultimately, this "balancing test of common and individual issues is qualitative, not quantitative." *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013) (citing *Gunnells*, 348 F.3d at 429).

Here, putative class members share a common theory of liability and substantially similar facts. Each seeks payment for time actually worked during unpaid mealtimes. Defendant argues that variations between members' mealtime experiences preclude class certification. (ECF No. 151 at 8–12.) These differences, however, appear to be either irrelevant or manageable in this class action. First, questions about which class members performed meal break work and the frequency and duration of that work go to a calculation of damages. Although such a calculation will depend on facts that vary from member to member, these individual questions are outweighed in importance and prevalence by the common questions of liability discussed above. Second, Defendant has not shown that questions about supervisor involvement in alleged unpaid meal break work is relevant to Defendant's obligation under the NCWHA to compensate Class members for all hours worked. At this stage, individual differences in supervisor involvement does not defeat class certification. Third, remaining differences in testimony appear to be overblown. Putative members offer highly similar accounts of mealtime work, and differences do not appear to meaningfully impact class certification at this stage.

Applying the Rule 23(b)(3) factors, class members have limited interest in individually controlling the prosecution of separate actions that would likely result in low levels of damages compared to the high cost of litigating individual suits. No litigation has begun by or against

13

Class members. Concentrating the claims in this Court, which is relatively central to Defendant's North Carolina facilities, is desirable and lends itself to judicial efficiency and consistency of outcomes. Finally, the primary difficulty in managing this class action will be in calculating damages if liability is established. As mentioned, it appears that not all 3,000 employees worked during unpaid mealtimes, and Plaintiff bears the burden to show how many employees are represented by Mebane and the eleven other affiants. At this stage, however, it is not clear that a calculation of damages would require "3,000-plus mini-trials." *See Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d Cir. 1994) ("Courts commonly allow representative employees to prove violations with respect to all employees.") (collecting cases). Whether Plaintiffs' evidence is sufficient to show that Defendant violated the rights of employees beyond those who have testified is a question better left to future stages of this litigation. At this stage, the Court finds that manageability concerns are outweighed by the advantages and economies of class litigation.

For these reasons, the Court will certify the following Rule 23 Automatic Deduction Class:

> Individuals who were, are, or will be employed at Defendant GKN's North Carolina facilities on the manufacturing floor in non-managerial positions, were not compensated all promised, earned, and accrued wages for hours worked during unpaid meals due to Defendant's automatic deduction policy, including, but not limited to, compensation for all hours worked up to forty (40) in a week and for hours worked above forty (40) in a week within two years prior to the commencement of this action, through the present.

**B.      Worsham's class**

Unlike Mebane's class, numerous problems with Worsham's class are readily apparent. First, employees' testimony of why they were unable to take full thirty-minute meals vary widely from removing protection equipment to washing hands, waiting for the microwave,

and walking to and from meal stations. It appears, therefore, that questions of liability may not be resolvable class-wide, since whether an employees' activities were compensable may require a detailed factual analysis and balancing that is specific to each employee. Second, Worsham's experience is typical of some, but not all, putative class members. Other employees mention activities, such as removing protective equipment, that Worsham does not mention, and other employees do not recount spending time navigating an oily workstation floor. Again, these nuanced differences may be directly relevant to determining whether each employee engaged in compensable work during unpaid meal breaks. Third, determining which of the 3,000 potential class members are owed compensation under this theory of liability, and how much they are owed, would likely prove to be entirely unmanageable. Not only will factual differences between employees predominate, but variations in a single employee's mealtime activities from one day to the next could, on balance, lead a jury to determine that an employee engaged in compensable work on some days but not others. Thus, extrapolating the amount of time employees engaged in compensable work would likely prove impossible.

Since Worsham's putative class does not meet the requirements of commonality or typicality, and since individual issues predominate, the Court will not certify a separate class to include employees who spent mealtime conducting these activities.

## IV. NOTICE

Plaintiffs attached a proposed "Additional Notice of Rights" to their motion. (ECF No. 149-1.) Since this Court will grant in part and deny in part Plaintiffs' motion and certify a separate Automatic Deduction Class, Plaintiffs' proposed "Additional Notice of Rights" is insufficient notice pursuant to Rule 23(c)(2)(B). Plaintiffs will be ordered to submit a revised

proposed notice to members of the approved Automatic Deduction Class within fifteen days of this Order.

For the reasons stated herein, the Court enters the following:

**ORDER**

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Amend Previously Certified Class or, in the alternative, to Certify Class Claims, (ECF No. 148), is **GRANTED** in part and **DENIED** in part. It is **GRANTED** with respect to claims that employees were not paid for ordinary, or emergency work conducted during mealtimes due to Defendant's Automatic Deduction Policy as outlined in this Memorandum Opinion. It is **DENIED** with respect to all other claims.

**IT IS FURTHER ORDERED** that Plaintiffs shall submit within fifteen days of this Order a proposed Notice to be sent to members of the newly certified Automatic Deduction class that complies with Rule 23(c)(2)(B). Defendant may, but need not, submit a response to such proposed Notice within ten days of being served therewith.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment, (ECF No. 128), is **DENIED WITHOUT PREJUDICE**. Plaintiffs may refile their motion within thirty days of this Order.

This, the 2nd day of August 2022.

/s/ Loretta C. Biggs
United States District Judge