**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| JAMES MEBANE and ANGELA WORSHAM, on behalf of themselves and all others similarly situated, | ) | |
| Plaintiffs, | ) | 1:18CV892 |
| v. | ) | |
| GKN DRIVELINE NORTH AMERICA, INC., | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court is Defendant's Motion for Reconsideration, (ECF No. 156), relating to this Court's Order (the "Order") issued on August 2, 2022, (ECF No. 154). The Order certified a Rule 23(b)(3) class of employees that were not paid for ordinary, or emergency work conducted during mealtimes due to Defendant's Automatic Deduction Policy. (ECF No. 154 at 16.) For the reasons stated herein, Defendant's motion will be granted in part and denied in part.

## I. BACKGROUND

On November 5, 2020, this Court conditionally certified Plaintiffs' Fair Labor Standards Act ("FLSA") collective action and certified the following North Carolina Wage and Hour Act ("NCWHA") class under Rule 23:

> Individuals who were, are, or will be employed at Defendant GKN's North Carolina facilities on the manufacturing floor in non-managerial positions, were not compensated all promised, earned, and accrued wages due to Defendant's rounding policy, including, but not limited to, compensation for all hours worked up to forty (40) in a week and for hours worked above forty (40) in a

week within two years prior to the commencement of this action, through the present.

*Mebane v. GKN Driveline N. Am., Inc.*, 337 F.R.D. 479, 494 (M.D.N.C. 2020).

After Plaintiffs filed a Fourth Amended Complaint, (ECF No. 146), the Court conditionally certified another Rule 23 class on August 2, 2022, including employees that worked during their scheduled lunch breaks and were impacted by Defendant's "Automatic Deduction Policy"[1] ("Automatic Deduction Class"), (ECF No. 154 at 14). The Court defined that class as:

> Individuals who were, are, or will be employed at Defendant GKN's North Carolina facilities on the manufacturing floor in non-managerial positions, were not compensated all promised, earned, and accrued wages for hours worked during unpaid meals due to Defendant's automatic deduction policy, including, but not limited to, compensation for all hours worked up to forty (40) in a week and for hours worked above forty (40) in a week within two years prior to the commencement of this action, through the present.

(ECF No. 154 at 14.)

Defendant now requests reconsideration of the Court's order certifying the Automatic Deduction Class, arguing that (1) "the Court incorrectly certified the Automatic Deduction Class without requiring Plaintiff Mebane to establish that the class is ascertainable," and (2) "the Automatic Deduction Class is an improper merits-based fail-safe class." (ECF No. 157 at 6.)

## II. STANDARD OF REVIEW

Under Rule 54(b) of the Federal Rules of Civil Procedure, the "district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final

[1] Under Defendant's Automatic Deduction Policy, Defendant generally scheduled an unpaid thirty-minute meal break during each hourly employee's shift. (ECF No. 73-1 ¶¶ 7–8.) Until January 2020, employees did not clock-out during these meal periods unless they left Defendant's premises. (See *id.* at 9, 13; ECF Nos. 108-2 ¶ 14; 132-1 ¶ 18.) Instead, Defendant automatically deducted thirty minutes from each employee's total hours worked each shift. (ECF No. 56-1 at 162:21–163:1.)

judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment . . . ."). "Said power is committed to the discretion of the district court" and may be exercised as justice requires. *Am. Canoe Ass'n*, 326 F.3d at 515.

The Fourth Circuit has held that Rule 54(b) motions "are not subject to the strict standards applicable to motions for reconsideration of a final judgment," under Rule 59(e). *Id.* at 514. Nonetheless, courts in this Circuit have frequently looked to the standards under Rule 59(e) for guidance in considering motions for reconsideration under Rule 54(b). Accordingly, reconsideration under Rule 54(b), like Rule 59(e), "is appropriate on the following grounds: (1) to account for an intervening change in controlling law; (2) to account for newly discovered evidence, or (3) to correct a clear error of law or prevent manifest injustice." *South Carolina v. United States*, 232 F. Supp. 3d 785, 793 (D.S.C. 2017). Such motions "should not be used to rehash arguments the court has already considered" or "to raise new arguments or evidence that could have been raised previously." *Id.* at 793.

## III. DISCUSSION

### A. Ascertainability

Defendant first argues that the Court incorrectly certified the Automatic Deduction Class without requiring Plaintiff Mebane to establish that the class is ascertainable. (ECF No. 157 at 11.) Specifically, Defendant alleges that the Court did not provide any analysis indicating it could readily identify the class members in reference to objective criteria. (*Id.*) Defendant notes the necessity that Plaintiffs show there is an "administratively feasible [way] for the court to determine whether a particular individual is a member at some point." (*Id.* at 12 (quoting *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019)).) Defendant

contends that the Order "is completely silent on the ascertainability requirement and does not address whether Mr. Mebane has met his burden of demonstrating that members of the Automatic Deduction Class are readily identifiable." (*Id.* at 13.) Further, Defendant maintains that, in any event, the class is not ascertainable because there is "no feasible mechanism or workable criteria [that] exist[s] for identifying which employees worked unpaid during meal periods." (*Id.* at 15.)

The requirement that a class be "ascertainable," or in other words, "that the members of a proposed class be 'readily identifiable,'" is an "*implicit* threshold requirement." *Krakauer*, 925 F.3d at 654–55 (emphasis added) (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)). The Fourth Circuit has emphasized that "[t]he goal is not to 'identify every class member at the time of certification'"; rather, the goal is "to define a class in such a way as to ensure that there will be some 'administratively feasible [way] for the court to determine whether a particular individual is a member' at some point." *Id.* at 658 (quoting *EQT Prod. Co.*, 764 F.3d at 358); *see also EQT Prod. Co.*, 764 F.3d at 358 ("The plaintiffs need not be able to identify every class member at the time of certification. But '[i]f class members are impossible to identify without extensive and individualized fact-finding or "mini-trials," then a class action is inappropriate.'" (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012))).

In its Order, the Court was able to readily identify at least twelve affiants who "regularly stayed at their station during all or part of their lunch or were called back from lunch early to deal with an emergency." (ECF No. 154 at 8.) The Court found these identified affiants constituted "sufficient evidence of a larger cohort of employees who worked during lunch." (*Id.* at 9.) The Court further noted that "it is undisputed that all putative class members were

subject to the challenged Automatic Deduction policy. All worked in some capacity during unpaid mealtimes. All shared the same injury in lost wages. And the same alleged misconduct—automatically deducting thirty-minutes from their wages—caused each's injury." (*Id.* at 10.) When identifying these initial class members against the criteria it laid out for the Automatic Deduction Class, (*id.* at 14), the Court did not engage in "extensive and individualized fact-finding or 'mini-trials,'" *EQT Prod. Co.*, 764 F.3d at 358 (quoting *Marcus*, 687 F.3d at 593). Other district courts have certified similar classes concerning virtually identical automatic deduction policies without finding issues of ascertainability. *See, e.g.*, *Morales v. Leggett & Platt Inc.*, No. 215CV01911, 2018 WL 1638887, at *7 (E.D. Cal. Apr. 5, 2018) (rejecting argument that an auto-deduct class was not ascertainable for lack of records of meal breaks being taken and noting that the court would not have to engage in "difficult individual inquiries"); *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 396–97 (N.D.N.Y. 2011) (finding that a subclass of employees subject to defendants' thirty-minute auto-deduct policy was ascertainable).

Given the nature of the Automatic Deduction Policy here—which did not require employees to clock in and out for their lunch breaks and deducted that time regardless of whether the employee took their break—establishing that an employee worked through lunch would necessarily require some representative testimony of employees. (ECF No. 167 at 5.) Through the Automatic Deduction Policy and lack of recordkeeping around employees' lunch breaks, Defendant gained a considerable advantage in thwarting a potential class action. As Defendant puts it, its lack of records around meal breaks "creates a gaping ascertainability void here that Plaintiffs cannot fill without resorting to individualized fact-finding." (*Id.* at 6–7.) However, allowing this argument to defeat the Automatic Deduction Class "would be creating

an incentive for employers not to keep records and thus avoid potential lawsuits." *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 483 (3d Cir. 2020). As mentioned above, the Court does not find it would have to engage in difficult individual inquiries to ascertain the Automatic Deduction Class at some point in the proceedings. *Krakauer*, 925 F.3d at 658. Accordingly, the Court declines to reconsider its Order on the basis of ascertainability.

**B. Fail-Safe Class**

Next, Defendant argues that even if the ascertainability issue is overcome, the Automatic Deduction Class is an improper merits-based fail-safe class.[2] (ECF No. 157 at 16.) Defendant defines a fail-safe class as "one that 'is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'" (*Id.* at 16 (quoting *EQT Prod. Co.*, 764 F.3d at 360 n.9).) Defendant argues that the Automatic Deduction Class "is a textbook fail-safe class because class members must establish liability against GKN in order to join the class. Specifically, putative class members must establish that they suffered the injury of unpaid 'promised, earned, and accrued wages' for meal beak [sic] work." (*Id.* at 21.)

While the Fourth Circuit has not directly spoken on the permissibility of fail-safe classes, it is generally accepted that fail-safe class definitions are "improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012); *see also*, *e.g.*, *EQT Prod. Co.*, 764 F.3d at 360 n.9 (requesting that a district court on remand

[2] Defendant maintains, and the Court agrees, that the Rounding Class certified on November 5, 2020, does not present the same fail-safe concerns as the Automatic Deduction Class though the language is nearly identical. (ECF No. 167 at 12 ("GKN's records contain data from which the parties can readily generate a list of employees who were mathematically affected by GKN's rounding policy and therefore part of the Rounding Class. For this reason, the fact that the Rounding Class is defined in fail-safe terms is less problematic because the documentary evidence tells us who is and is not in the Rounding Class, and therefore individualized merits inquiries are unnecessary to establish class membership.").)

consider whether the class definition at issue was a fail-safe class (citing *Messner*, 669 F.3d at 825)); *White v. Hilton Hotels Ret. Plan*, No. CV 16-856, 2022 WL 1050570, at *5 (D.D.C. Mar. 22, 2022) ("[O]f the nine circuits to consider the matter, eight circuits have either adopted a categorical rule against fail-safe classes or discussed such a rule with approval. Only the Fifth Circuit has rejected the applicability of the rule against fail-safe classes." (footnotes omitted)).

Class definitions falling within the impermissible fail-safe category include those requiring a merits determination or liability finding against a defendant to establish class membership. For example, in *Chado v. National Auto Inspections, LLC*, No. CV 17-2945, 2019 WL 1981042 (D. Md. May 3, 2019), another district court in the Fourth Circuit initially certified a class defined as: "All persons that work or worked for Defendant as a Vehicle Protection Specialist between October 5, 2014 and the present and who were not paid an overtime rate of 'time and a half' their regular rate for all hours worked over forty (40) in a workweek." *Chado*, 2019 WL 1981042, at *4. On a motion for reconsideration of that class certification, the court found that the definition created an impermissible fail-safe class because it "requires determination of whether a class member was *not* paid an overtime rate for all hours in excess of forty before it can be said that such an individual is a member of the class." *Id.* Rather than decertify the class, the court modified the class to the plaintiffs' proposed redefinition, changing it to: "All persons who worked for Defendants as Vehicle Protection Specialists between October 5, 2014, and the present and who were compensated pursuant to NAI's uniform compensation plan." *Id.* at *5; *see also, e.g.*, *Beck v. Cuyahoga County*, No. 19CV818, 2022 WL 4363562, at *6 (N.D. Ohio Sept. 16, 2022) (finding a class defined as employees "who were not compensated at a rate of one and one half times their regular rate of pay for all hours worked over forty in a workweek" to be a "clear fail-safe class definition"); *In re AutoZone, Inc.,*

*Wage & Hour Emp. Pracs. Litig.*, 289 F.R.D. 526, 545–56 (N.D. Cal. 2012) (noting that a class defined as including only employees "to whom Defendant failed to fully reimburse all mileage" was a "problematic" fail-safe class); *Mr. Dee's Inc. v. Inmar, Inc.*, No. 19CV141, 2022 WL 1750537, at *3 (M.D.N.C. Apr. 27, 2022) (explaining that the proposed classes were "impermissible fail-safe classes because class membership is conditioned on having suffered antitrust injury or impact in the form of increased shipping fees").

Additionally, some courts have expressed reluctance about certifying or refused to certify automatic-deduction classes similar to that here because of fail-safe issues. *See, e.g.*, *Betts v. Cent. Ohio Gaming Ventures, LLC*, No. 16-CV-373, 2018 WL 2316641, at *6 n.5 (S.D. Ohio Jan. 5, 2018) (expressing "concern[] that the proposed class definition may constitute a fail-safe class"); *Jones-Turner v. Yellow Enter. Sys., LLC*, No. 07CV-218, 2011 WL 4861882, at *3 (W.D. Ky. Oct. 13, 2011) (rejecting an auto-deduct meal break class as an impermissible fail-safe).

"Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science." *Messner*, 669 F.3d at 825. When a fail-safe issue arises, some courts have erred on the side of "refining the class definition rather than by flatly denying class certification on that basis." *Id.*; *see also, e.g.*, *Campbell v. First Am. Title Ins. Co.*, 269 F.R.D. 68, 73–74 (D. Me. 2010) ("A court may, in an exercise of its discretion, revise a proposed class definition to avoid the problem of a fail-safe class.").

Here, the Automatic Deduction Class defines the class in part as "Individuals who . . . were not compensated all promised, earned, and accrued wages for hours worked during unpaid meals due to Defendant's automatic deduction policy." (ECF No. 154 at 14.) This appears problematic because the class is defined so that "the class members either win or are

not in the class . . . the Court cannot enter an adverse judgment against the class." *In re AutoZone*, 289 F.R.D. at 545–46 (quoting *Genenbacher v. CenturyTel Fiber Co. II*, 244 F.R.D. 485, 488 (C.D. Ill. 2007)). Thus, the Court finds that modification of the Automatic Deduction Class definition is necessary to avoid it being an impermissible fail-safe class.

In light of Plaintiffs' reliance on the Court's Order certifying the Automatic Deduction Class, the Court will allow Plaintiffs to file supplemental briefing proposing a new class definition to address the impermissible fail-safe issue outlined herein.

Accordingly, Defendant's motion is granted in part and denied in part. For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion for Reconsideration, (ECF No. 156), is **GRANTED IN PART** and **DENIED IN PART**. The motion is **granted** to the extent that it seeks reconsideration of its Order dated August 2, 2022. The motion is **denied** to the extent that it requests that the Court vacate the August 2, 2022, Order.

**IT IS FURTHER ORDERED** that Plaintiffs shall submit supplemental briefing proposing a new class definition of the Automatic Deduction Class consistent with this Memorandum and Order within fourteen (14) days of the entry of this Order. Defendant shall have fourteen (14) days from the filing of Plaintiffs' proposed redefinition to file a response. Both parties' briefs shall not exceed 3,125 words.

This, the 16th day of November 2022.

/s/Loretta C. Biggs
United States District Judge