# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JAMES MEBANE and ANGELA WORSHAM, on behalf of themselves and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) 1:18CV892 |
| v. | ) ) ) |
| GKN DRIVELINE NORTH AMERICA, INC., | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Before the Court is Defendant GKN Driveline North America, Inc.'s Motion to Decertify the Class and Collective Action, (ECF No. 173), as well as cross-motions for partial summary judgment, (ECF Nos. 171 & 174). For the reasons stated herein, Defendant's Motion to Decertify the Class and Collective Action will be granted, and both parties' cross-motions for partial summary judgment will be denied as moot.

**I.   BACKGROUND**

On November 5, 2020, this Court conditionally certified Plaintiffs' Fair Labor Standards Act ("FLSA") collective action and certified the following North Carolina Wage and Hour Act ("NCWHA") class under Rule 23, herein referred to as the "Rounding Class":

> Individuals who were, are, or will be employed at Defendant GKN's North Carolina facilities on the manufacturing floor in non-managerial positions, were not compensated all promised, earned, and accrued wages due to Defendant's rounding policy, including, but not limited to, compensation for all hours worked up to forty (40) in a week and for hours worked above forty (40) in a week within two years prior to the commencement of this action, through the present.

*Mebane v. GKN Driveline N. Am., Inc.*, 337 F.R.D. 479, 494 (M.D.N.C. 2020).

After Plaintiffs filed a Fourth Amended Complaint, (ECF No. 146), the Court certified an additional Rule 23 class on August 2, 2022, including employees that worked during their scheduled lunch breaks and were impacted by Defendant's "Automatic Deduction Policy" ("Automatic Deduction Class"), (ECF No. 154 at 14). The Court defined that class as:

> Individuals who were, are, or will be employed at Defendant GKN's North Carolina facilities on the manufacturing floor in non-managerial positions, were not compensated all promised, earned, and accrued wages for hours worked during unpaid meals due to Defendant's automatic deduction policy, including, but not limited to, compensation for all hours worked up to forty (40) in a week and for hours worked above forty (40) in a week within two years prior to the commencement of this action, through the present.

(ECF No. 154 at 14.)

On August 16, 2022, Defendant requested reconsideration of the Court's order certifying the Automatic Deduction Class, (ECF No. 156), arguing that (1) "the Court incorrectly certified the Automatic Deduction Class without requiring Plaintiff Mebane to establish that the class is ascertainable," and (2) "the Automatic Deduction Class is an improper merits-based fail-safe class," (ECF No. 157 at 6).

On November 16, 2022, this Court granted in part and denied in part Defendant's motion to reconsider, (ECF No. 179), and found that modification of the Automatic Deduction Class definition was necessary to avoid it being an impermissible fail-safe class, (*id.* at 9). The Court requested that Plaintiffs submit a proposed redefinition of the Automatic Deduction Class. (*Id.*) Plaintiffs then proposed the following redefinition:

> All Individuals who were, are, or will be employed at Defendant GKN's North Carolina facilities on the manufacturing floor in non-managerial positions, subjected to an automatic 30-minute meal break deduction, and who have or may have worked through or during unpaid meal breaks without compensation

2

at least once at any time within two years prior to the commencement of this action, through the present.

(ECF No. 183 at 2–3.)

Defendant now moves to decertify Plaintiffs' FLSA collective action, the Rule 23 Rounding Class, and the Rule 23 Automatic Deduction Class. (ECF No. 173.) Defendant also moves for partial summary judgment on Plaintiffs' collective and class claims related to the Rounding Class, as well as Plaintiff James Mebane's individual claims.[1] (ECF No. 171.) Plaintiffs likewise move for partial summary judgment on their claims related to both the Rounding Class and Automatic Deduction Class. (ECF No. 174.)

The Court, now having the full benefit of discovery before it, must first determine whether both the Rounding Class and Automatic Deduction Class can still satisfy the requirements for collective and class certification under the FLSA and Rule 23.

## II. DISCUSSION

### A. FLSA Collective Action Decertification

Certification of a FLSA collective action requires "(1) that the Plaintiffs in the class be 'similarly situated,'[2] and (2) that the plaintiffs included in the class 'opt in' by filing with the Court their consent to the suit." *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006) (citing *Brooks v. BellSouth Telecomms., Inc.*, 164 F.R.D. 561, 568 (N.D. Ala. 1995)).

Courts have established a two-step analysis in deciding whether plaintiffs are "similarly situated," beginning with a "notice stage" that simply determines whether providing initial

---

[1] The parties have represented that Plaintiff James Mebane's individual claims have been settled and no longer need to be addressed by the Court. (ECF No. 181.)

[2] The FLSA does not define the term "similarly situated" and neither has the Fourth Circuit. *O'Quinn v. TransCanada USA Servs., Inc.*, No. 19-CV-00844, 2020 WL 3497491, at *6 (S.D. W.Va. June 29, 2020).

3

notification of the action to potential class members is appropriate. *Id.* (citing *de Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 662 (E.D. Pa. 2001)). This first stage applies a "fairly lenient standard," *id.* (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995), and "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan," *id.* (quoting *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392 (D. N.J. 1988)). At the first stage, a court "does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *O'Quinn*, 2020 WL 3497491, at *7 (quoting *Hughes v. Gulf Interstate Field Servs., Inc.*, No. 14-CV-000432, 2015 WL 4112312, at *1 (S.D. Ohio July 7, 2015)). A defendant's subsequent motion for decertification triggers the second stage of this analysis, and only then does the court employ a "heightened fact-specific standard" in determining whether Plaintiffs have met the "similarly situated" bar. *Choimbol*, 475 F. Supp. 2d at 563.

At the first-stage inquiry in the present matter, this Court granted Plaintiff's motion to conditionally certify a FLSA collective based on the time allegedly lost due to Defendant's rounding of time clock entries at the start and end of workers' shifts. (ECF No. 82 at 4.) The Court found that the Plaintiffs had "claimed a violation of FLSA that entails a common policy or scheme that would apply to others," and concluded its first-stage inquiry. (*Id.*)

The motion now before the Court is in the second stage of the inquiry. Accordingly, the Court must apply a heightened fact-specific standard to the "similarly situated" analysis to determine whether the collective action can proceed to trial or must be decertified.

"Courts have identified a number of factors to consider at this [second] stage, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness

4

and procedural considerations." *Weckesser v. Knight Enterprises S.E., LLC*, 391 F. Supp. 3d 529, 532 (D.S.C. 2019) (quoting *Curtis v. Time Warner Ent.-Advance/Newhouse P'ship*, No. 12-CV-2370, 2013 WL 1874848, at *3 (D.S.C. May 3, 2013)).

In its motion to decertify the collective action on Plaintiffs' rounding claim, Defendant argues that "[d]iscovery has confirmed that each plaintiff's claim for alleged unpaid pre-shift, post-shift, and meal period work rests entirely upon individualized circumstances, and no factual nexus exists that binds the plaintiffs' claims together," and that "GKN's defenses to these claims are correspondingly individualized." (ECF No. 176 at 19.) Defendant also maintains that "[a]s a result, myriad fairness and manageability issues inhere in adjudicating these claims and defenses on a class or collective basis." (*Id.*)

Defendant first emphasizes that "the rounding data shows that not every individual suffered a net loss due to rounding," and, in fact, "some individuals gained." (ECF No. 176 at 28.) Defendant cites expert testimony which it argues shows that "whether any given plaintiff received a net gain or suffered a net loss from GKN's rounding rules depends entirely upon the facility, time period, or rounding rule in question." (ECF No. 176 at 28.) Specifically, Defendant cites evidence that employees across all three of Defendant's facilities experienced a net loss of 0.65 minutes, or 39 seconds, per shift due to the rounding, but that various subsets of employees were impacted differently across facilities. (*Id.*) For example, one group in Sanford experienced a net gain of 0.10 minutes, or six seconds, and for 72% of the shifts of that Sanford subset, the rounding practice had either no effect or resulted in a net gain to the employee. (ECF No. 176 at 29.) Defendant also cites discrepancies in the net loss of time per shift based on whether a three-minute or seven-minute rounding policy was used. (*Id.*)

5

Defendant next argues that even if plaintiffs suffered a net loss due to rounding, the evidence shows that whether Plaintiffs performed compensable work activities during those rounded minutes is a highly variable and individualized inquiry. (ECF No. 176 at 28.) Defendant cites Plaintiffs' testimony showing discrepancies in the compensability of their pre- and post-shift activities. (*Id.* at 30.) Defendant points to the Third Circuit's decision in *Ferreras v. American Airlines, Inc.*, 946 F.3d 178 (3d Cir. 2019), as instructive. (ECF No. 176 at 31.) There, in reversing a class certification, the court noted how "some employees testified that they began working immediately after clocking in" while "[o]thers testified that they chatted with co-workers or watched TV after clocking in but before their shifts began," and "[t]hus, whether they were actually working pre- and post-shift [wa]s an open and inherently individualized question." 946 F.3d at 186.

Finally, Defendant maintains that fairness and procedural considerations mandate decertification of the collective. (ECF No. 176 at 36.) Defendant points to the "highly individualized inquiries and defenses," "lack of genuinely representative testimony," and how factual variations "have the tremendous potential to confuse jury members." (*Id.* at 37.) Defendant also highlights that Plaintiffs provide "no workable trial plan or model on which a jury could reliably determine damages for either claim." (*Id.*)

Plaintiff, in response, argues that the evidence shows Plaintiffs are similarly situated "because Plaintiffs were subject to the same policies and practices," and that Defendant highlights only "irrelevant differences." (ECF No. 182 at 29–30.) Plaintiff argues that "common claims *and* defenses relate to the legality of GKN's policies and practices that were uniformly applied across shifts and locations" which "outweigh[s] any potentially individualized defenses." (*Id.* at 31.) As to fairness and procedural considerations, Plaintiff

6

argues that "collective adjudication is fair and efficient because Plaintiffs' claims present common issues subject to common proof" and that "Plaintiffs' hours and damages . . . can be determined using each Plaintiff's time and pay data, along with representative testimony." (*Id.* at 32.)

In light of the evidence now before it, the Court finds that Plaintiffs' rounding claim cannot move forward as a collective action given the individualized inquiries necessary to assess Defendant's liability for Plaintiffs' pre- and post-shift work. The record is replete with evidence highlighting disparate factual settings of each individual plaintiff and the procedural unfeasibility of moving forward with this collective action.

As an initial matter, whether Plaintiffs are entitled to compensation for their pre- and post-shift activities depends on whether such activities are compensable under the FLSA. *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 363 (4th Cir. 2011). The acts of clocking in and clocking out alone are not "principal activities" which equate to compensable work time. *See id.* Here, one of the core issues with Plaintiffs' rounding claim is whether employees were engaging in compensable work during their time impacted by Defendant's blanket rounding policy. (ECF No. 176 at 31.) Plaintiffs argue this is "irrelevant" because "Plaintiffs were subject to the same [rounding] policies and practices." (ECF No. 182 at 29.)

The Court disagrees with Defendant's assessment. Here, the Court finds that Plaintiffs' time and pay records alone would not provide the common proof necessary to establish the uncompensated work during Plaintiffs' pre- and post-shift periods. The record demonstrates highly variable employee testimony regarding the various activities that took place during these periods. For example, some Plaintiffs testified that they clocked in prior to the beginning of their shift to conduct hand-offs from the previous shift, to put on protective equipment, to

7

handle the overwhelming amount of work, to discuss and coordinate with other employees, to check on unaddressed items, to check on machines, to start paperwork, among other activities. (*See, e.g.*, ECF Nos. 176-51 ¶¶ 7–8; 176-49 ¶ 4; 176-50 ¶ 5; 176-70 at 35:13-17; 176-66 at 191:20–192:3; 176-22 ¶¶ 6–7; 176-27 ¶ 8; 176-31 ¶¶ 9–10; 176-47 ¶ 10; 176-41 ¶ 8; 176-43 ¶ 4; 176-45 ¶¶ 6–7; 176-48 ¶ 4; 176-54 ¶ 7; 176-56 ¶ 4; 176-21 ¶ 6; 176-44 ¶ 4; 176-46 ¶ 5.) Some also testified that if they clocked in before their shift started, they would "generally . . . not perform any work during that timeframe," (ECF No. 176-20 ¶ 10), while another testified that he "roamed quite a bit," (ECF No. 176-68 at 19:19). (*See also, e.g.*, Jeffreys Dep. 65:3-10; Nelson Dep. 84:8-85:2; Terrell Dep. 37:1-14; Henry Decl. ¶¶4, 10; Way Decl. ¶7; Richmond Decl. ¶7.)

In terms of post-shift shift activities performed, Plaintiffs testified to various tasks such as cleaning up work areas, making sure everything was put away, completing inspections, running various reports, retrieving substandard products, replenishing supplies, and taking showers. (*See, e.g.*, ECF Nos. 176-39 ¶ 8; 176-14 ¶ 9; 176-15 ¶ 4; 176-63 at 117:5-9; 176-18 ¶¶ 4, 8; 176-42 ¶¶ 3, 5; 176-45 ¶ 8; 176-46 ¶ 6; 176-47 ¶ 11; 176-48 ¶ 5; 176-51 ¶ 9; 176-49 ¶ 5; 176-50 ¶ 6; 176-54 ¶ 6; 176-21 ¶9; 176-34 ¶ 9; 176-44 ¶ 5.)

The present case is thus similar to *Ferreras v. American Airlines, Inc.*, 946 F.3d 178 (3d Cir. 2019). Like in *Ferraras*, the record here demonstrates that "there was substantial variability in what [employees] were doing" before their shifts started. 946 F.3d at 186. Because the record does not contain representative proof that employees were all engaged in compensable activities, "the employees would need individualized, not representative, evidence to prove their case." *Id.* at 187. The Court finds that such fact-intensive individual inquiries are not amenable to collective treatment.

8

Additionally, as Defendant points out, testimony shows that Plaintiffs clocked in "anywhere from five to 90 minutes before their shift" and that "post-shift activity was equally disparate and ranged from five minutes to four hours." (ECF No. 176 at 33 (citing ECF Nos. 176-49 ¶ 6; 176-50 ¶ 7; 176-7 ¶ 8; 176-9 ¶ 4; 176-39 ¶ 8; 176-12 ¶ 9; 176-14 ¶ 9; 176-66 at 98:19-21; 176-67 at 138:1-7; 176-65 at 100:17-23; 176-63 at 124:10-12; 176-70 at 100:6-9; 176-21 ¶ 9; 176-42 ¶ 13; 176-43 ¶ 5; 176-44 ¶ 5; 176-45 ¶ 9; 176-46 ¶ 6; 176-47 ¶ 11; 176-48 ¶ 5.) Accordingly, how soon each Plaintiff began a compensable work activity after clocking in appears to be highly dependent on the individual.

Rather than meaningfully respond to these individual differences, Plaintiff stresses that Defendant's rounding policy was universal and that such differences are "irrelevant," "attenuated," and "inconsequential." (ECF No. 182 at 30.) Plaintiff makes no effort to show that a plausible mechanism exists for determining how many minutes each employee spent performing compensable work before and after their scheduled shifts. "What matters at this stage of the FLSA analysis is the nature of the 'factual inquiry' ultimately required for FLSA liability—whether [Defendant's] rounding policy 'was applied in such a manner that it actually resulted in unpaid work.'" *Creal*, 155 F. Supp. 3d at 838 (quoting *Kelly v. Healthcare Servs. Grp., Inc.*, No. 13-CV-00441, 2015 WL 3464131, at *5 (E.D. Tex. June 1, 2015)). Because this determination rests upon individualized testimony, the Court also finds this to be grounds to decertify the collective.

Several other courts have decertified similar collective actions, noting that "the need for such individualized inquiries precludes 'a common answer to the question of whether Plaintiffs actually worked pre-shift and post-shift work,' and thus renders it 'impossible to generate common answers on a class wide basis.'" *Creal v. Grp. O, Inc.*, 155 F. Supp. 3d 831,

9

839–40 (N.D. Ill. 2016); *see also, e.g.*, *Elder v. Comcast Corp.*, No. 12-C-1157, 2015 WL 3475968, at *8–9 (N.D. Ill. June 1, 2015); *Marshall v. Amsted Rail Co.*, No. 10-CV-0011, 2012 WL 5499431, at *10 (S.D. Ill. Nov. 13, 2012).

Other courts have also decertified Rule 23 rounding classes, finding that "individualized proof would be required to determine whether employees were actually working during the pre-and post-shift gap periods" and these individualized issues would "take over th[e] litigation." *See, e.g., also Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191–92 (11th Cir. 2009); *Cornn v. United Parcel Serv., Inc.*, 2005 WL 2072091, at *2 (N.D. Cal. Aug. 26, 2005) (noting that "individual questions predominate over whether time spent on [pre-shift] activities should be counted as hours worked and, if so, how much time, if any, was spent on these activities and improperly excluded"); *Clausnitzer v. Fed. Exp. Corp.*, 248 F.R.D. 647, 661 (S.D. Fla. 2008) (noting that, like here, defendant's time records, as well as statistical analysis, did not indicate whether employees were actually working during gap periods); *Avila v. Ardian Corp.*, No. 18-CV-4795, 2022 WL 3370024, at *5 (E.D.N.Y. Aug. 16, 2022) (denying certification of rounding claim because each member would have to establish "how many hours he or she worked" and "how much he or she was paid" which "would be a mini-trial").

Further, new evidence demonstrates that whether all employees were even impacted by the rounding policy in a negative manner is unclear. Data reveals several instances in which Defendant's rounding policy benefited employees because they gained compensable minutes. For instance, at the Defendant's Sanford facility, "the percent of shifts in which the rounding resulted in more paid hours to the employee (33.34%) is higher than the percent of shifts in which rounding resulted in less paid time to the employee (28.05%)." (ECF 176-61 ¶ 22.) The percent of shifts where no effect was seen, in combination with shifts where a net gain was

seen, amounts to around 72% of shifts of the Sanford facility. (*Id.* at Table 7C.) It is thus unclear whether individual employees actually suffered a net loss or net gain from the rounding policy. Courts have both rejected claims and decertified collectives where a "rounding policy on average favors neither overpayment nor underpayment." *See, e.g.*, *Houston v. Saint Luke's Health Sys., Inc.*, No. 4:17-CV-00266, 2022 WL 1299121, at *8 (W.D. Mo. Mar. 29, 2022) ("The employee-by-employee analysis also showed 34.7% of employees had time added by the rounding policy, and 0.9% were not impacted. Even assuming 64.4% of employees had time removed from shifts performed during the relevant time period, this conclusion does not necessarily equate to systematic under compensation because the rounding policy at issue both adds and subtracts time. Employee by employee analysis of a slightly different timeframe could produce a result in which a majority of employees had time added through rounding.").

The Court did not have the benefit of the various plaintiff affidavits and expert evidence at the initial certification stage, but based on the record before it now, it appears that individualized inquiries would overwhelm the Court and make proceeding as a collective virtually impossible. Accordingly, in applying this heightened fact-specific standard, the Court finds that Plaintiffs are not "similarly situated" and cannot proceed as a collective action under the FLSA. The Court therefore finds that decertification is warranted.

### B. Rule 23 Decertification

"A court considering a motion to decertify a Rule 23 class applies the same standard used in determining whether to certify the class in the first instance." *Lorenzo v. Prime Commc'ns, L.P.*, No. 12-CV-69, 2018 WL 2291295, at *2 (E.D.N.C. Jan. 31, 2018), *report and recommendation adopted*, No. 12-CV-69, 2018 WL 1535476 (E.D.N.C. Mar. 29, 2018) (citing *Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015)). While the Court "may not engage in 'free-ranging merits

11

inquiries,'" the merits of a party's claim "may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

As the Court has outlined previously, to be certified under Rule 23, a class must first comply with the four prerequisites established in the Rule's subsection (a): "(1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003) (citing Fed. R. Civ. P. 23(a)). Whereas here, Plaintiffs seek class certification under Rule 23(b)(3), Plaintiffs must also demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3).

1. Rounding Class

Defendant's arguments in supporting its motion to decertify the Rule 23 Rounding Class mirror its arguments made with respect to decertifying the collective action on Plaintiffs' rounding claims. (ECF No. 176 at 28–40.) While the Rule 23 and FLSA collective action certification standards vary to some extent, "the case law has largely merged the standards, though with some terminological differences." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). Accordingly, the Court finds that Plaintiffs' Rule 23 Rounding Class must be decertified for the same reasons outlined in its discussion of the collective action above. *See supra* Section II.A.

2. Automatic Deduction Class

With respect to the Automatic Deduction Class, Defendant argues that three main deficiencies: (1) Plaintiffs have failed to show a formal or de facto policy or practice requiring

12

unpaid meal break work; (2) that establishing liability is a highly individualized inquiry; and (3) that the class is unascertainable. (ECF No. 176 at 20.)

As to the first deficiency, Defendant argues that "commonality does not exist simply because all class members worked under the same automatic deduction timekeeping system," (*id.* at 20); rather, Defendant maintains that "the plaintiff can establish commonality only by showing that the employer had a common practice to violate its formal policy and not pay for meal break work," (*id.* at 21).

Defendant likewise cites the testimony of forty employees from across its three facilities who reaffirmed that "(1) GKN *never* required them to perform unpaid meal break work, (2) they missed their meal periods on very rare occasions, and/or (3) they were paid for *all* meal break work or given additional break time." (ECF No. 176 at 21.)

Regarding the second deficiency, Defendant argues that individualized issues will predominate on the question of whether each class member performed unpaid meal break work and that "the record shows that the experiences of Mr. Mebane and his supporting witnesses are not generally representative of the meal breaks of other class members." (ECF No. 176 at 25.) Defendant also maintains that individualized issues will predominate on the question of whether it knew about unpaid meal break work and that "the testimonial evidence demonstrates that class members performed meal break work without informing their supervisor." (*Id.* at 26.) Defendant contends that this warrants decertification because it must be permitted to cross-examine and present rebuttal with respect to whether Defendant knew about individual employees' meal break work. (*Id.* at 26–27.)

Finally, Defendant incorporates its prior briefing in its motion to reconsider, (ECF Nos. 156, 157, 167), as to its ascertainability concerns. The essence of Defendant's argument

13

is that there is "no feasible mechanism or workable criteria [that] exist[s] for identifying which employees worked unpaid during meal periods." (ECF No. 157 at 15.)

In response to Defendant's arguments, Plaintiffs first counter that Defendant's motion for decertification is improper unless Defendant can put forward a "substantial change in law or fact." (ECF No. 182 at 16–17.) Plaintiffs maintain that Defendant "has not provided any new information or argument that should prompt this Court to reconsider its sound reasoning and analysis detailed in its earlier orders." (*Id.* at 18.) Regarding the new employee declarations put forth by Defendant, Plaintiffs characterize these as "happy camper" declarations that should not be given much weight. (*Id.* at 21.) Plaintiffs again emphasize that Defendant "utilize[d] a uniform automatic deduction policy, 'which did not require employees to clock in and out for their lunch breaks and deducted that time regardless of whether the employee took their break,'" (*id.* at 24) and argue Defendant's "concerns regarding 'lack of common evidence' to establish which employees worked during meal breaks" are "exaggerated," (*id.*).

As an initial matter, to establish a claim for unpaid meal break work under the NCWHA, class members must establish that (1) they each performed unpaid compensable work during meal breaks, and (2) Defendant had actual or constructive knowledge that they were working without compensation. *Marshall v. Novant Health, Inc.*, No. 318-CV-00633, 2020 WL 5577888, at *8 (W.D.N.C. Sept. 17, 2020). The Court here finds that the individualized factfinding necessary to establish these elements warrants decertification of the Automatic Deduction Class.

In its initial certification of the automatic deduction claim, the Court noted that the testimony of Mebane and eleven supporting affiants put forward by Plaintiff was sufficient grounds for certification because "[e]ach putative member completed work typical of his or

14

her position during mealtimes, often because Defendant did not have another employee who could be called upon to do the work instead." (ECF No. 154 at 11.) However, after reviewing the entirety of the evidentiary record, the Court finds that the experiences of Mebane and his supporting witnesses are not generally representative of the meal breaks of other class members. Indeed, the current record before the Court contains evidence from 61 witnesses regarding their meal break experiences, (ECF Nos. 176-3 through 176-56; 176-63 through 176-71; 129-13), and notably, of these witnesses, only 17 testify to regularly performing work during meal periods. (*Compare* ECF Nos. 176-51 ¶¶ 14–17; 176-56 ¶¶ 10–12; 176-55 ¶¶ 10–12; 176-49 ¶¶ 11–12, *with* ECF Nos. 176-3 ¶¶ 14–15, 17; 176-8 ¶¶ 14–15, 17; 176-31 ¶ 16; 176-11 ¶ 17; 176-25 ¶¶ 16-17.) Thus, individual issues are apparent with respect to Plaintiffs' claimed work during meal breaks. Many employees stated they did not work during unpaid breaks, and for those who did, individual inquiries would be necessary to determine the amount of time actually spent working. *See Babineau*, 576 F.3d at 1194 (noting that "there is simply no way to tell from the tracker data how long an employee worked during a break" and that "the data might not be sufficient to prove that an employee actually worked during a break, and therefore, further individualized inquiries might be necessary").

Plaintiff offers no meaningful explanation for how these individualized inquiries could be handled through representative testimony and does not put forth any methodology for determining which witnesses are representative of the non-testifying class members. (ECF No. 182 at 23–26.) Here, "[t]he differences among the potential class members show that 'proof of the essential elements of the cause of action requires individual treatment,' and therefore that issues common to the putative class do not predominate over individual issues." *Jarosz v. St. Mary Med. Ctr.*, No. CIV.A. 10-3330, 2014 WL 4722614 (E.D. Pa. Sept. 22, 2014)

15

(citing *In re Linerboard Antitrust Litig.*, 305 F.3d at 156; Hernandez, 2013 WL 2245894 at *7–10; *Camilotes*, 286 F.R.D. at 354–55; *Burkhart–Deal*, 2010 WL 457122 at *3–6).

In addition to the deficiency of whether plaintiffs actually worked during meal breaks, it is also apparent to the Court that whether Defendant had actual or constructive knowledge of any unpaid meal break work is a highly individualized inquiry not amenable to class treatment. Discovery has yielded no evidence that Defendant generally required unpaid meal break work or "had actual or constructive knowledge that [employees] were working without compensation."

Rather, the record demonstrates that class members engaged in work during meal breaks in response to highly individualized circumstances, often without the knowledge of Defendant. For example, some employees testified that they did not inform supervisors when engaging in meal-break work, (ECF No. 176-65 at 108:15–109:13), that supervisors never required meal break work and that they engaged in it voluntarily, (*id.* at 116:17-20, 119:18-23), and that they never reported meal break work to anyone and assumed managers knew, (*id.* at 116:22-117:3, 119:24–120:10, 124:21–125:5). In fact, some testified that their supervisor advised that they "needed to make sure to actually take [his] break." (ECF No. 176-44 ¶ 14.) Without any common basis for determining whether Defendant knew of unpaid meal break work, this Court follows the guidance of several other courts and finds the Automatic Deduction Class must be decertified. *See, e.g.*, *Jarosz*, 2014 WL 4722614, at *9; *Saleen v. Waste Mgmt., Inc.*, 649 F.Supp.2d 937, 940-41 (D. Minn. 2009).

This same issue also highlights the problem of the individuality of Defendant's defenses regarding whether supervisors or management had actual or constructive knowledge of any meal break work performed by each class member. *See, e.g.*, *Prise v. Alderwoods Grp., Inc.*, 817

16

F. Supp. 2d 651, 681 (W.D. Pa. 2011) ("Several of the individualized defenses to liability previously discussed are applicable to the meal break class, such as whether the employee was required to perform work . . . during a meal break, whether the particular meal break was a bona fide meal break, including the time, frequency and duration of the interruptions, and whether the employee received compensation for a meal break."); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. CIV.A. 09-85J, 2011 WL 6372873, at *9 (W.D. Pa. Dec. 20, 2011) (decertifying class where individualized defenses included whether defendant's management had knowledge of off-duty work and whether individual plaintiffs actually worked overtime without compensation). Plaintiff does not appear to directly address this argument apart from reiterating that the "class claims . . . can (and should) be adjudicated entirely on Defendant's policies, practices, along with time and pay records for Plaintiffs, in addition to, a small representative sampling of Plaintiffs," and that Defendant's alleged "'defenses' are red herrings." (ECF No. 182 at 27.)

In sum, the evidentiary record makes clear that that both the automatic deduction claims and rounding claims implicate highly individualized facts and circumstances unique to each plaintiff, making it untenable to allow this matter to proceed on a class and collective basis. Plaintiff advances no meaningful way to address such issues. Accordingly, Defendant's motion to decertify the FLSA collective action, Rule 23 Rounding Class, Rule 23 Automatic Deduction Class is granted, and both parties' motions for summary judgment are denied as moot.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Decertify the Class and Collective Action, (ECF No. 173), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant GKN Driveline North America, Inc.'s Motion for Partial Summary Judgment, (ECF No. 171), is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiffs' Amended Motion for Partial Summary Judgment, (ECF No. 174), is **DENIED AS MOOT**.

This, the 12th day of May 2023.

/s/ Loretta C. Biggs
United States District Judge