IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES MEBANE and ANGELA WORSHAM, | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) ) | CA No.: 1:18-cv-892-LCB-LPA |
| GKN DRIVELINE NORTH AMERICA, INC., | ) ) ) | |
| *Defendant*. | ) ) | |
| _____ | ) | |

**<u>DECLARATION OF GILDA ADRIANA HERNANDEZ IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS</u>**

I, Gilda Adriana Hernandez, declare as follows:

1.      I am the owner and lead attorney of The Law Offices of Gilda A. Hernandez, PLLC ("GAH").

2.      I am an attorney in good standing, duly licensed and admitted to the North Carolina Bar (2007). I am licensed to practice law in the following jurisdictions: United States Fourth Circuit Court of Appeals (2017); United States Eleventh Circuit Court of Appeals (2016); United States District Court Northern District of Georgia (2010); United States Eastern District of New York (2010); United States District of Connecticut (2011); United States District Court Eastern District of North Carolina (2008); United States District Court Western District of North Carolina (2016); and United States District Court Middle District of North Carolina (2014); North Carolina Superior Courts (2008); and North Carolina Court of Appeals (2011).

3.      The testimony set forth in this Declaration is based on first-hand knowledge

about which I could and would testify competently in open Court, if called upon to do so, and on records contemporaneously generated and kept by my Firm in the ordinary course of its law practice.

4. I provide this Declaration for the purpose of setting forth the background to describe the work completed by my firm in this action, our rates, and expenses incurred in the course of this litigation, and to support Plaintiffs' motions for attorneys' fees and costs.

### ***Adequacy of Counsel***

5. I graduated from the University of Illinois, Chicago with a B.A. in Criminal Justice and received my Juris Doctor degree from Southwestern University School of Law, Los Angeles, California.

6. In 1997, I started my wage and hour career. I worked as a United States Department of Labor, Wage and Hour ("USDOL-WHD") investigator, enforcing and administering wage and hour laws pursuant to the Fair Labor Standards Act ("FLSA"), Family Medical Leave Act ("FMLA"), Migrant Seasonal Protection Act ("MSPA"), the Davis Bacon Act ("DBA"), Service Contracts Act ("SCA"), and certain employment standards and worker protections under the Immigration and Nationality Act.

7. As a WHD investigator, I investigated employers in all industries, including, but not limited to, hospitality, construction, healthcare, technology, food processing, manufacturing, agricultural, garment, trucking, and government contracts to determine compliance with all relevant wage and hour laws, regarding overtime, minimum wage, prevailing wages, child labor, misclassification of salaried employees, H-1(B) issues, in addition to, providing employers with guidance on achieving and maintaining compliance.

2

8.      Additionally, as a WHD official, I was tasked to either participate and/or be a liaison on behalf of the USDOL-WHD for joint task force operations conducted in Los Angeles, involving the Federal Bureau of Investigation ("FBI"), Drug Enforcement Agency ("DEA"), and Immigration Customs and Enforcement ("ICE") to combat child, sex, and labor trafficking issues within the hospitality, agricultural, garment, and food processing industries, as applicable.

9.      In 2002, I interned with the United States Equal Employment Opportunity Commission ("EEOC") in the Hearings Unit with the Los Angeles District Office where I conducted legal research, drafted orders, responded to motions, (including motions for summary judgment), and drafted findings of fact and conclusions of law for use by an administrative judge in rendering a decision on employment discrimination cases.

10.     In 2003, I interned with the United States Department of Labor – Regional Solicitor of Labor in Los Angeles, California, where I conducted legal research on relevant wage and hour laws and advised Regional Solicitors of Labor on whether cases were suitable for wage and hour litigation.

11.     Since 2008, I have worked in private practice, exclusively representing employees in single plaintiff, multi-plaintiff, and collective/class action litigation for violations of the Fair Labor Standards Act ("FLSA"), North Carolina Wage and Hour Act ("NCWHA"), and other relevant state wage and hour laws primarily in federal court. Since that time, I have represented thousands of workers and recovered in excess of $50 million dollars in both nationwide and local North Carolina collective/class actions.

12.     In 2011, I tried the first-of-its-kind NCWHA wage and hour class action in

3

Mecklenburg County, obtaining a verdict on behalf of a class of janitorial workers, resulting in actual and liquidated damages, pre-judgement interest, and attorneys' fees and costs. *See Guerrero v. Pro Klean, Inc*., Superior Court Division File Number 09CVS29529 County of Mecklenburg (July 12, 2012). In March 2023, I tried a NCWHA individual action in Wake County, obtaining a verdict on behalf of a real estate sales manager for unpaid commissions resulting in actual and liquidated damages and pre-judgment interest. *See Brown v. Caruso Homes Inc*., Superior Court Division File No.19CVS500511 County of Wake (June 2, 2023).

13. In September 2020, I argued before the Fourth Circuit on behalf of GAH's clients involving both an FLSA collective and NCWHA classes, to reverse a District Court's ruling, granting summary judgment in favor of defendant. In November 2020, the Fourth Circuit, affirmed in part, *vacated in part*, and *remanded* for further proceedings. *See Wai Man Tom v. Hosp. Ventures LLC,* 980 F.3d 1027, 1031 (4th Cir. 2020).

14. GAH are the attorneys for Plaintiffs. The GAH firm has substantial experience in prosecuting and settling wage and hour collective/class actions and are well-versed in wage and hour law and class action law.

15. Given GAH's substantial experience in prosecuting wage and hour class and collective actions, GAH has been regularly appointed class counsel in such matters. Additionally, prior to this matter, GAH has resolved matters (either in direct negotiation, voluntary, or court-ordered mediation) in which GAH has represented an individual or collective/class action wage and hour matters. *See Cirillo v. Citrix Systs., Inc.* No.: 5:21-cv-00088-BO, Dkt. 129 (E.D.N.C. Jan. 5, 2024) (consolidated with *Stiles v. Citrix Systs.,*

*Inc.,* No.: 5:23-cv-00060-BO) (GAH appointed as class counsel, settlement approved for $5.9 million affecting approximately 530 salespeople for earned and unpaid straight and overtime wages due to off the clock work); *Edwards v. City of Raleigh, No.* 5:23-CV-683-FL, 2024 WL 4156829 (E.D.N.C. Sept. 11, 2024) (FLSA conditionally certified for potential violations of 29 C.F.R. § 207(k) and notice has been mailed to over 700 police officers); *Daniel v. Stericycle, Inc., et al.*, CA No. 3:20-cv-00655-RJC-DCK (W.D.N.C.) (collective/class action settlement involving over 300 drivers and granting final approval of $725,000 for automatic 30 minute lunch breaks - but working an average of one to two times per week through such breaks); *Hollis et al. v. Valley Proteins, Inc.*, No. 321CV00112FDWDSC, 2022 WL 703606, at *1 (W.D.N.C. Aug. 2, 2022) (granting final approval of $6,750,000 collective/class action settlement for over 400 drivers who worked in excess of 40 hours per week but not paid all earned and accrued straight and overtime wages - and appointing GAH as class counsel) (final approval granting $2.25 million in attorneys' fees on August 2, 2022 (Dkt. 123)); *Tom v. Hosp. Ventures LLC*, No. 5:17-CV-98-FL, 2021 WL 2272386, at *9 (E.D.N.C. June 3, 2021) (finding "Counsel Hernandez has zealously advocated for her clients in this case and has pursued an appeal that was in part successful) (settlement for approximately 63 servers and settlement approved for $1,600,000 of which $1 million represented attorneys' fees and costs on November 29, 2022 (Dkt. 240)); *Roldan v. Bland Landscaping Co., Inc.*, No. 320CV00276KDBDSC, 2022 WL 304838, at *10 (W.D.N.C. Feb. 1, 2022) (granting conditional and class certification and appointing GAH as class counsel) (settlement approved in the amount of $1,750,000 on December 19, 2022 for approximately 300 foremen (Dkt. 68) (granting fees

5

in the amount of $583,000.00)); *Pontones et al v. San Jose Inc., et al.,* 5:18-cv-00219-D, Dkt. 243 (Aug. 19, 2022) (settlement approved in the amount of $1,500,000.00 for approximately 100 restaurant workers, in which $500,000.00 represented attorneys' fees and costs); *James v. RPS Holdings, LLC*, No. 1:20CV134, 2021 WL 5889479, at *14 (M.D.N.C. Dec. 13, 2021) (conditionally certifying collective action of exotic dancers represented by GAH) (litigation stayed with arbitration proceedings in effect); *Mearidy v. nThrive Solutions, Inc.*, No. 1:20-cv-00387-LCB-LPA, Dkt. 45 (M.D.N.C. Nov. 30, 2021) (representing over 300 call center employees in settlement class – average 10 minutes off the clock for pre-shift activities) (settlement approved for $500,000); *Pontones v. Los Tres Magueyes, Inc., d/b/a Los Tres Magueyes – Cary, NC and Danville, VA, et al.*, No. 5:18-cv-87-FL, Dkt. 155 (E.D.N.C. Sept. 21, 2021) (representing one named plaintiff and five opt-in plaintiffs who worked for defendants as servers in a collective settlement of $475,000); *Lewis v. Precision Concepts Group, LLC*, No. 1:18-cv-00064-LCB-JEP, Dkt. 93 (M.D.N.C. March 23, 2021) (representing over 100 assembly line workers) (settlement approved for $630,000 and $375,000 approved for attorneys' fees and costs); *Myers v. Loomis Armored US, LLC*, No. 3:18-cv-00532-FDW-DSC (W.D.N.C. April 9, 2020) (representing over 800-armed security technicians) (settlement approved for $1.5 million); *Reynolds v. Fid. Investments Institutional Operations Co., Inc.,* No. 1:18-CV-423, 2020 WL 92092, at *3 (M.D.N.C. Jan. 8, 2020) (representing in excess of 2,000 nationwide employees) (settlement approved for $3 million); *Lang v. Duplin County*, No. 7:18-cv-00077-BO (E.D.N.C. Jan. 29, 2020) (representing 65 employees) (settlement approved for $495,000.00); *Kincaid v. Courier Express/Charlotte Inc., et al*, No. 1:18-cv-707-AT (N.D.

6

Ga Jan. 31, 2019) (appointing GAH as class counsel for the settlement classes – approximately 1500 couriers affected) (settlement approved for $1,600,000); *Berber v. Hutchison Tree Serv.*, No. 5:15-CV-143-D, 2018 WL 3869980, at *2 (E.D.N.C. Aug. 14, 2018) (appointed class counsel in conditional/class certification action; affecting over 120 individuals) (settlement approved for $3 million dollars; $1 million in fees and costs); *Velasquez-Monterrosa v. Mi Casita Rests.*, No. 5:14-CV-448-BO, 2016 U.S. Dist. LEXIS 56089 (E.D.N.C. Sept. 26, 2017) (GAH appointed class counsel in collective/class action affecting over 200 individuals; settlement approved for $2.5 million); *Alfaro Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*, No. 5:13CV810-F, 2015 U.S. Dist. LEXIS 1320225 (E.D.N.C. Sep. 28, 2015) (affecting 16 workers) (settlement approved for $250,000); *Tomkins v. Amedisys, Inc.*, No. 3:12-cv-1082 (WWE), 2014 U.S. Dist. LEXIS 3660 (D. Conn. Jan. 13, 2014) (represented over 2500 clinicians in a nationwide action involving in excess of 35 states; settlement approved for $8 million in 2016); *Rindfleisch v. Gentiva Health Services, Inc.*, No. 1:10-cv-3288-SCJ, 2011 U.S. Dist. LEXIS 57949 (N.D. Ga. Apr. 13, 2011) (represented 140 clinicians in a nationwide collective action in over thirty states; settlement approved for $3.3 million in 2017); *McLaurin v. Prestage Foods Inc.*, 271 F.R.D. 465, 479 (E.D.N.C. 2010) (affecting approximately 1,800 Class Members) (settlement approved for $1.8 million); *see also Mitchell v. Smithfield Packing Co*., 2011 U.S. Dist. LEXIS 108974, *10 (E.D.N.C. 2011)[1] ("….Gilda Hernandez [who is a] capable trial counsel with substantial experience in complex civil litigation, including class action

---

[1] Smithfield cases collectively affected approximately 3,500 Class Members.

lawsuits"); *Horne v. Smithfield Packing Co.*, 2011 U.S. Dist. LEXIS 108978, *10 (E.D.N.C. 2011) ("The court finds that Ms. Hernandez ….will fairly and adequately represent the interests of the class"); *Romero v. Mountaire Farms Inc.*, 796 F. Supp. 2d 700, 715 (E.D.N.C. 2011) ("the court finds that plaintiffs' counsel possess the necessary qualifications") (affecting approximately 10,000 poultry processing employees); *Guerrero et al v. Pro Klean, Inc.*, CA No. 09 CVS 29529 (Mecklenburg County, Superior Ct. 2012) ("Ms. Hernandez has specialized experience in the field of wage and hour law.").

16.    I have also been involved in many educational and legal groups, including the American Bar Association, National Employment Lawyers Association, the National Employment Law Project, the North Carolina Advocates for Justice, and the North Carolina Bar Association, for which I have authored articles relating to FLSA and NCWHA requirements. Additionally, I have lectured on various FLSA and NCWHA topics, including collective/class action litigation at meetings, conferences, Employment Law 360 wage and hour articles, and CLE programs sponsored by the National Employment Lawyers Association, the North Carolina Bar Association, and the North Carolina Advocates for Justice.

17.    Furthermore, as the owner and managing partner of GAH, I supervise and train attorneys in FLSA, NCWHA, and employment litigation. When I started my practice, I was a solo practitioner. However, in light of the high demand for our firm's legal services, the firm now has five (5) attorneys, four (4) paralegals, and one (1) damages analyst, with the anticipated hiring of two more attorneys in the next six months to one year.

8

### *Nature of Plaintiffs' Claims*

18.     Plaintiff James Mebane worked at GKN Driveline Manufacturing, Inc. ("Defendant") at both its Mebane and Roxboro, North Carolina locations as a Machine Operator, and later, as a Line Inspector, from approximately 2011 until on or about April 23, 2018. Plaintiff Angela Worsham worked at Defendant's Mebane location as a Machine Operator from July 2017 until April 2018.

19.     Plaintiffs Mebane and Worsham assert claims (collectively "Plaintiffs") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), 201, *et seq.* and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq*. Plaintiffs assert that Defendant has a policy, pattern, or practice of failing to pay employees all earned, promised and accrued wages by failing to compensate employees at the promised rate for all hours worked less than forty (40) per week and/or at a premium overtime rate for all hours worked in excess of forty (40) per week. In particular, Plaintiffs contend that throughout the relevant period, Defendant maintained a corporate policy of both mandating Plaintiffs to perform work activities before the start of and after the end of their scheduled shifts without compensation, in addition to failing to compensate employees for time spent working through lunch "breaks," or automatically deducting thirty (30) minutes from employees' workday, irrespective of whether they actually take a lunch break.

20.     On these grounds, Plaintiffs sought to recover unpaid wages, including promised wages, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

## *Plaintiffs' Investigation of Claims*

21.     Plaintiffs' counsel was initially contacted in 2018 by James Mebane to address concerns regarding Defendant's compensation policies or practices, as well as individual concerns of age discrimination after his ultimate termination. Following weeks of preliminary discussions with several early opt-ins, including current, named plaintiff, and legal analysis into potential claims, Plaintiffs' counsel found that GKN employees had experienced FLSA and NCWHA violations, among Plaintiff Mebane's individual claims of age discrimination. Plaintiffs' counsel was retained by James Mebane in June 2018 and Angela Worsham in October 2018.

22.     Plaintiffs' counsel immediately began a legal and factual investigation of their  claims, including conducting a thorough investigation into the merits of the potential claims and defenses. This effort included investigation and a legal examination of the underlying merits of the collective and class claims, the likelihood of obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of damages, the likelihood of  collective and class certification, research of the applicable law concerning the potential claims and potential defenses, along with any potential previous FLSA litigation and/or wage and hour investigations by government agencies relating to Defendant's compensation policies.

23.     Plaintiffs' counsel ultimately conducted in-depth interviews with all opt-ins and named plaintiffs to determine what activities they asserted to have engaged in throughout meal breaks and before and after scheduled shifts, were such activities performed on or "off the clock," what paperwork they completed (if any), how long such

10

activities took, the types of wages they received, how the compensation policies were communicated to Plaintiffs, when they were permitted to report time worked and be paid for that time, the hours that they individually worked, the number of hours they worked for which they were not paid, their rates of pay, any deductions for wages, and if so, the basis for such deductions, the wages they were paid, and other information relevant to their claims.

24. Throughout the litigation, Plaintiffs' counsel has maintained contact with each named and opt-in plaintiff (and subsequent proceedings),[2] addressing individual concerns as they arose, providing progress updates, and seeking additional information as needed.

### ***The Litigation***

**A. Procedural History of the Case**

*i. Pleading Stage*

25. On October 23, 2018, Plaintiffs James Mebane and Angela Worsham filed a complaint in the U.S. District Court for the Middle District of North Carolina against Defendant GKN Driveline North America, Inc. and Randstad USA, LLC, raising putative collective-action claims under the FLSA and putative class-action claims under North Carolina state law, in addition to Plaintiff Mebane's individual ADEA and North Carolina state common law claims. Dkt. 1.

---

[2] *See Ayers v. GKN Driveline NA, Inc.,* CA No.: 1:23-cv-00581-LCB-LPA; *Carson v. GKN Driveline, NA, Inc.,* CA No.: 1:23-cv-00583-LCB-LPA; *Ferges v. GKN Driveline NA, Inc.*, CA No.: 1:23-cv-00585-LCB-LPA.

26. On December 12, 2018, Defendant filed a Partial Motion to Dismiss. Dkt. 15.

27. On January 2, 2019, Plaintiffs filed their First Amended Complaint removing claims made against Defendant Randstad US, LLC[3] by Plaintiff Angela Worsham. Dkt. 18. Two days later, Plaintiffs joined Defendant GKN in filing a Joint Stipulation dismissing the same claims without prejudice. Dkt. 19. On January 8, 2019, Defendant responded by moving a second time for Partial Dismissal. Dkt. 20. On January 29, 2019, Plaintiffs filed their Response in Opposition to Defendant's Partial Motion to Dismiss. Dkt. 24. On February 12, 2019, GKN filed its Reply in support of its Partial Motion to Dismiss. Dkt. 27.

28. The Parties filed a Joint 26(f) Report on March 22, 2019 proposing a bifurcated discovery plan, which the Court approved so long as the parties complied with specific deadline conditions.[4] Dkt. 29. Consistent with the Court's Order, the Parties exchanged initial disclosures, and Plaintiffs served Defendant with their first set of interrogatories and requests for production of documents. Defendant responded with their initial disclosures on May 11, 2019. On May 22, 2019, and in light of Defendant's decision to retain new lead defense counsel, Defendant requested an extension to respond to

---

[3] Randstad US, LLC supplies employees to Defendant GKN's facilities, and has an on-site office in Defendant GKN's Mebane, North Carolina, plant.

[4] The Court directed the Parties as follows: "[T]he parties shall complete Phase I pre-certification discovery by 07/23/2019; (2) the setting of deadlines for amendment of pleadings and addition of parties (as addressed in Paragraph 5.a.) is deferred; (3) consistent with Paragraph 5.g., the parties shall serve initial disclosures required by Federal Rule of Civil Procedure 26(a)(1)(A) by 04/24/2019; and (4) consistent with Paragraph 5.j., Plaintiff shall file any motion seeking conditional certification for a collective action and/or class certification by 07/23/2019."

12

discovery requests through June 17, 2019, which Plaintiffs did not oppose. On June 18, 2019, Defendant shared its first production of documents and responses to Plaintiffs' first set of interrogatories and also informed Plaintiffs additional responsive documents were still forthcoming.

ii.  _First Round of Settlement Negotiations Between the Parties_

29.     On July 9, 2019, the Parties jointly moved to, and were granted, a stay of litigation through October 4, 2019, pending class-wide mediation. Dkt. 33. Following a hearing with the Court on July 19, 2019, during which the Court allowed a stay in litigation and emphasized the importance of honoring the Parties' discovery plan (Dkt. 34),[5] on August 28, 2019, the Parties' mediation efforts were unsuccessful. Dkt. 36. In the meantime, an individual submitted a consent to join suit and participate as an Opt-In Plaintiff. Dkt. 35.

iii.  _The Parties' Phase I Discovery_

30.     Beginning August 29, 2019, discovery disputes between the Parties were initiated by Plaintiffs. Dkts. 37 – 40-5.

iv.  _Plaintiffs' Efforts to Amend Pleadings to Include Plaintiff Mebane's Individual Claims_

31.     On September 3, 2019, Plaintiffs filed an Unopposed Motion for Leave to File their Second Amended Complaint to bring additional claims. Dkt. 41. Plaintiffs then filed their Second Amended Complaint on September 4, 2019 (Dkt. 43) to modify the

---

[5] On August 9, 2019, Plaintiffs began filing consents to participate on behalf of others who wished to participate in this Action. Dkt. 35-1.

proposed class definitions to better reflect the factual basis for all viable legal claims, in accordance with the Parties' 26(f) Report (Dkt. 29 at 6). On September 20, 2019, Defendant filed a Partial Motion to Dismiss Plaintiffs' Second Amended Complaint, to exclusively address Plaintiffs' Count Two concerning the tobacco surcharge (NCWHA); Three (ADEA or Plaintiff Mebane's Age Discrimination Claims); Seven (IIED); Eight (NIED); and None (Wrongful Discharge Claims).[6] Dkt. 49. Plaintiffs also filed their Response in Opposition to Defendant's Partial Motion to Dismiss on October 11, 2019 (Dkt. 59), to which Defendant filed its Reply in support on October 23, 2019 (Dkt. 62).

32.    As the Parties resumed discovery, Plaintiffs took the Rule 30(b)(6) depositions of two corporate representatives for Defendant, as well as four other fact witnesses, which revealed additional and more specific factual bases for Plaintiffs' claims.

*v.    Plaintiffs' Efforts to Certify FLSA and NCWHA Claims – Recognizing the Viability of Such Claims to Proceed.*

33.    On October 2, 2019, Plaintiffs moved for Conditional Class Certification under Fed. R. Civ. P. 23 (Dkt. 55) and moved to amend the same on October 29, 2019 (Dkt. 64). Defendant responded by moving to strike Plaintiffs' Amended Motion on November 4, 2019 (Dkt. 68), which was denied on November 20, 2019 (Dkt. 72).

34.    As the pandemic took hold, litigation slowed somewhat in 2020. Though Plaintiffs diligently filed a Suggestion of Subsequently Decided Authority on February 13 (Dkt. 77) and March 11, 2020 (Dkt. 80), activity in the matter paused for several months.

---

[6] On March 11, 2020, Plaintiffs filed their Notice of EEOC's Right to Sue for Plaintiff Mebane's ADEA claim. Dkt. 79-1.

vi. *The Court's Rulings on Defendant's Motions to Dismiss Plaintiffs' NCWHA and Plaintiff Mebane's ADEA and North Carolina Common Law Claims*

35. On November 5, 2020, the Court granted Plaintiffs' motion to certify *both* the FLSA collective action and the Rule 23 class. Dkt. 82. The same day, the Court granted in part and denied in part Defendant's Partial Motion to Dismiss Plaintiffs' Second Amended Complaint. Dkt. 81. In so doing, the Court found that Plaintiffs' NCWHA unpaid wage claims were separate and distinct from their FLSA unpaid overtime claims, and therefore not exempted, allowing such claims to proceed. *Id*. at 12. The Court's Order also dismissed *without prejudice* Plaintiff Mebane's individual ADEA claims and Counts Four through Nine of Plaintiffs' Second Amended Complaint alleging torts under North Carolina common law. *Id*. at 17.

vii. *The Court's Ruling as to Plaintiffs' FLSA and NCWHA Claims and Whether to Proceed as a Certified Action*

36. As it relates to Plaintiffs' Motions for Conditional and Class Certification (Dkts. 64, 66), the Court granted certification for a "Rounding" policy that led to an organizational practice of underpaying its employees in violation of N.C. Gen. Stat. § 95-25.6 and the FLSA. On November 19, 2020, Defendant filed its Answer to Plaintiffs' Second Amended Complaint. Dkt. 83.

37. Soon after, on November 24, 2020, the Court granted Plaintiffs' Amended Proposed Notice and Claim Forms, to be sent to all members of the FLSA and Rule 23(b)(3) collective and class. Dkt. 85.

15

*viii.* *Plaintiffs' Efforts to Properly Plead Plaintiff Mebane's Individual ADEA and Common Law Claims and Defendant's Efforts to Dismiss the Same*

38.    On January 4, 2021, Plaintiffs filed an Unopposed Motion for Leave to file a Third Amended Complaint (Dkt. 86) to properly plead Plaintiff Mebane's individual ADEA and state common law claims, as well as remove allegations relating to the wage claim found to be preempted by ERISA in conformance with the Court's November 5, 2020 order (Dkt. 82).[7] Plaintiffs filed a Third Amended Complaint to on January 5, 2021 (Dkt. 87), to which Defendant prompted filed *another* Partial Motion to Dismiss (Dkt. 89), seeking dismissal of Plaintiff's ADEA and common law claims, asserting that Plaintiff Mebane failed to timely file a complaint under the ADEA, as he had failed to file a claim within 90 days of receiving the Notice of Right to Sue. Plaintiffs filed their Response in Opposition to Defendant's Partial Motion to Dismiss. Dkt. 93. On September 27, 2021, the Court denied Defendant's Partial Motion to Dismiss Plaintiff Mebane's ADEA and North Carolina common law claims. Dkt. 117.

39.    In the meantime, throughout 2021, Plaintiffs filed notice of more than 139 consents to join suit. Dkts. 95 *through* 100.

---

[7] Plaintiffs sought to amend their Complaint to properly plead violations including: (i) violation of the ADEA for age discrimination, hostile work environment, wrongful termination, and retaliation; and (ii) six claims pursuant to North Carolina common law: (1) Negligent Employment Supervision and Retention; (2) Assault; (3) Battery; (4) Intentional Infliction of Emotional Distress; (5) Negligent Infliction of Emotional Distress; and (6) Wrongful Discharge in violation of North Carolina public policy.

*ix.* *The Parties Submit their Proposed Bifurcated Phase II Discovery Plan to Address Plaintiff Mebane's ADEA and Common Law Claims in Addition to Merits Discovery Re FLSA and NCWHA Claims*

40.     On April 13, 2021, the Parties filed their Supplemental Joint 26(f) Report. Dkt. 102.

*x.* *Phase II Discovery Leads to Disputes Between Parties Regarding Plaintiffs' Claim for Working Meal Breaks and the Court's Ruling Re the Same*

41.     Extensive sparring over the proper interpretation of the Court's November 5, 2020, Order then ensued. On June 2, 2021, Defendant GKN moved for a Court Order that the Court's Order (Dkt. 82) did *not* include or recognize any claim for working meal periods (whether worked or unworked). *See* Dkt. 104. On June 23, 2021, Plaintiffs filed their Response in Opposition to Defendant's Motion to Enforce. Dkt. 106. Indeed, in connection with working lunch break claims, Plaintiffs filed a Motion for Leave to file a Fourth Amended Complaint. Dkt. 107. On July 14, 2021, Defendant filed its Response in Opposition to Plaintiffs' Motion for Leave to File Fourth Amended Complaint. Dkt. 110. On October 12, 2021, Defendant filed its Answer to Plaintiffs' Third Amended Complaint. Dkt. 118.

42.     Plaintiffs then moved for summary judgment on November 29, 2021, incorporating thirteen (13) depositions of Named, Rule 23, and Opt-In Plaintiffs, as well as extensive expert data. Dkt. 128. That same day, Defendants filed the same (Dkt. 130), as well as moved to decertify the class based on allegations of individualized issues and circumstances (Dkt. 133).

43.     Soon after, the Plaintiffs moved to strike portions of Defendant's

decertification motion (Dkt. 135) and were subsequently granted leave to file a Fourth Amended complaint to include newly discovered wage violation allegations (Dkt. 145), which was filed on March 15, 2022, inclusive of collective class action claims (Dkt. 146). Defendant filed its Answer to Plaintiffs' Motion for Leave to File Fourth Amended Complaint on March 29, 2022. Dkt. 147. Finally, Plaintiffs filed a Motion to Amend or in the Alternative Certify Plaintiffs' Meal Break Claims on March 31, 2022. Dkt. 148. On August 2, 2022, the Court granted Plaintiffs' motion. Dkt. 154. Further, on August 16, 2022, Defendant filed its Motion for Reconsideration regarding Plaintiffs' meal break claims and allowing such claims to move forward. Dkt. 156. Plaintiffs filed their Response in Opposition to Defendant's Motion for Reconsideration on September 6, 2022. Dkt. 164. On November 16, 2022, the Court granted in part and denied in part Defendant's Motion for Reconsideration. Dkt. 179.

44.     On April 21, 2022, Defendant filed its Response in Opposition to Plaintiffs' Motion to Amend Class Certification. Dkt. 151. On August 6, 2022, the Court granted Plaintiffs' Motion to Amend Certification. Dkt. 154.

  xi.   _Cross Motions for Summary Judgment as to Defendant's Liability in Connection with the FLSA and the NCWHA_

45.     On November 29, 2021, Plaintiffs filed their Motion for Summary Judgment to address Defendant's liability for _both_ FLSA and NCWHA Claims. Dkt. 128. On November 29, 2021, Defendant filed its Motion for Summary Judgment. Dkt. 130. On December 22, 2021, Plaintiffs filed their Response in Opposition to Defendant's Motion for Summary Judgment. Dkt. 137. On November 1, 2022, Defendant filed its Motion for

Partial Summary Judgment regarding Plaintiffs' FLSA and NCWHA claims. Dkt. 171. On November 1, 2021, Plaintiffs filed their Amended Motions for Summary Judgment. Dkt. 174.

46. On December 1, 2022, Defendant filed its Response in Opposition to Plaintiffs' Amended Motion for Partial Summary Judgment. Dkt. 184. That same day, Plaintiffs filed their Response to Defendant's Motion for Summary Judgment regarding Plaintiffs' FLSA and NCWHA claims. Dkt. 185. On May 12, 2023, the Court granted Defendant's Motion to Decertify and denied as moot the Parties' Motions for Summary Judgment. Dkt. 198.

xii. *The Parties' Reach Resolution on Plaintiff Mebane's ADEA and Common Law Claims*

47. On November 17, 2022, the Parties filed a Joint Notice to Advise the Court that An Agreement to Resolve Plaintiff Mebane's Individual Non-Wage Claims (Counts Three to Nine) had been reached. Dkt. 181. Such resolution included damages for back pay, five (5) years of front pay, interest, liquidated Chapter 1 D Punitive Damages (Total ADEA and common law claims), and Defendant was also made aware that such resolution of Plaintiff's *individual* claims did *not* include attorneys' fees and costs. Dkt. 177-2, at 8.

xiii. *Following the Court's Ruling on Defendant's Motion for Decertification, Plaintiffs Seek Petition for Appeal. The Fourth Circuit Denies the Same*

48. On May 26, 2023, Plaintiffs filed their Petition for Permission to Appeal. Dkt. 201. On June 28, 2023, the Fourth Circuit denied Plaintiffs' Petition for Permission to Appeal. Dkt. 205.

19

*xiv.*   *The Court's Notice of Jury Trial and Court-Hosted Settlement Conference*

49.   On October 11, 2024, the Court entered Notice of Trial Calendar for December 2, 2024. Dkt. 215.   As such, Plaintiffs' counsel began confirming availability for up to eight (8) witnesses for trial, working on direct and cross examination line of questioning, opening and closing statements, voir dire, and proposed jury instructions.  On October 16, 2024, the Court entered Notice Regarding Scheduling of Court Hosted Settlement Conference. Dkt. 217. On November 5, 2024, the Parties participated in a Court-Hosted Settlement Conference and resolution was reached in this matter *that* same day.  The terms of the settlement are contained within the Proposed Settlement Agreement and Proposed Consent Judgment. Dkt. 229-1.

### *Settlement Negotiations and Court-Hosted Settlement Conference*

50.   As stated, the Parties reached a resolution regarding Plaintiff Mebane's ADEA and common law claims, *see* Dkt. 177-2, at 8 (which broke down the nature of the claims resolved – but did *not* include resolution of Plaintiffs' attorney's fees and costs). Similarly, on November 5, 2024, Plaintiffs Mebane and Worsham resolved their unpaid *individual* wage claims pursuant to the FLSA and NCWHA, resulting in a 96.8% recovery which included actual and liquidated damages along with pre-judgment interest from the date their unpaid wages were originally due going back to either 2015 and 2017 (Mebane and Worsham's NCWHA claims respectively). However, the Parties agreed to litigate Plaintiffs' attorney's fees and costs.

### *Risk of Litigation*

50.   Plaintiffs believe the claims, allegations, and contentions asserted in the

20

Action have merit. However, Plaintiffs also recognize and acknowledge the risks inherent in any litigation, as well as the expense and delay of continued lengthy proceedings necessary to prosecute the Action against Defendant.

### *The Settlement*

51.  Plaintiffs' counsel believe the settlement represents a substantial recovery for Plaintiffs, particularly in light of the risks of litigation.

52.  Here, Defendant has agreed to settle this case for [AMOUNT REDACTED] which represents Plaintiffs Mebane and Worsham's damages along with Plaintiff Mebane's individual damages which Plaintiffs' counsel believes is substantial.[8]

53.  As of December 17, 2024, GAH has spent more than 3,360.40 hours litigating and settling this litigation, including time spent by attorneys, paralegals, and law clerks.

54.  Throughout this case, GAH made efforts to work efficiently and minimize costs. GAH has up to date detailed time records with redactions to protect attorney work product and attorney/client privilege, and they are available upon request for the Court's *in-camera* review.

55.  Plaintiffs' counsel believe these hours are reasonable for a case like this one, (particularly in light of the number of heavily contested issues and complex claims) and compiled such summary of hours from contemporaneous time records maintained by each timekeeper. For example, Plaintiffs' counsel used a small team of primarily three attorneys

---

[8] For Plaintiffs' Sealed Settlement Agreement, *see* Dkt. 231 and for Plaintiff Mebane's Sealed Individual Settlement Agreement, *see* Dkt. 235.

at one time, to minimize duplication of efforts and maximize billing judgment.

## *GAH's Rate*

56.     As a 27-year wage and hour practitioner and sixteen (16) years of individual and collective/class action litigation, my current rate is $750.00 per hour.  Notably, though, all wage and hour individual or class action lawsuits litigated by GAH are done so on a *pure* contingency fee basis, meaning GAH does not require clients to pay consultation fees, hourly fees or retainers, and if a matter does not result in money recovery, GAH recovers no attorneys' fees, and is not reimbursed for any out-of-pocket expenditures.  In other words, it becomes a complete loss to GAH.  Indeed, GAH may be the *only* employment law firm in North Carolina that charges no hourly, flat fee, or consultation fees whatsoever.

57.     Since January 2013, (when I started my practice), my rate has increased by only 26%, from $595 per hour to $750 per hour, which is a fair change proportionate to the risk associated with a pure contingency fee basis, the firm's substantial growth, high demand, and increased experience in wage and hour litigation.

58.     In other words, there are many firms with rates similar to and greater than GAH's rates, which are consistent with the usual and customary hourly rates for the type of work GAH performed, as established in collective/class action matters, nation and state-wide. *Reynolds v. Fid. Investments Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 92092, at *3 (M.D.N.C. Jan. 8, 2020) (approving hourly rates ranging from $275 to $820 for counsel and $190 to $290 for legal assistants, law clerks, and paralegals); *McCurley v. Flowers Foods, Inc.*, No. 5:16-CV-00194-JMC, 2018 WL 6650138, at *7 (D.S.C. Sept. 10, 2018) (approving hourly rates ranging from $300 to $850 for counsel and

$75 to $150 for legal assistants, law clerks, and paralegals); *Rehberg v. Flowers Banking Co. of Jamestown, LLC,* No. 3:12-cv-00596, Dkt. 250 (W.D.N.C. June 30, 2017) (approving hourly rates ranging from $375 per hour (associate) to $975 per hour (partner); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009) (approving as reasonable rates ranging from $440 to $775 for partners and $295 to $525 for associates); *Dooley v. Saxton*, No. 1:12-cv-01207-MC, ECF No. 187 (D. Or. Oct. 19, 2015) (approving as reasonable rates ranging from $375 to $790 per hour); *Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *19 (S.D. Tex. Jan. 23, 2015) (approving as reasonable "$240–$260 for paralegals, $415–$530 for associates, and $635–$775 for partners"); *Parker v. Dish Network, L.L.C.*, No. 4:11-cv-1457, ECF No. 63 (N.D. Cal. Feb. 13, 2012), granted, ECF No. 87 (Apr. 17, 2012) ($530 to $710 for partners and $350 for associates).

59.     GAH's hourly rate(s) have also been separately approved for payment by courts in other litigation. *See, e.g., Daniel v. Stericycle, Inc.,* No. 3:20-cv-00655-RJC-DCK (W.D.N.C. October 10, 2024) (finding plaintiff's counsel's request for attorneys' fees, which exceeded plaintiff's counsel's lodestar, to be reasonable); *Sanchez, et al v. Shirley T. Warner Trust, et al.,* 18CVS500069 (N.C. Super. Ct. 2020) (Wake County Superior Court awarded fees based on GAH's hourly rate of $650 per hour); *Pontones v. San Jose Restaurant Inc., et al.*, No. 5:18-cv-00219-D, Dkt. 231 (E.D.N.C. March 29, 2022) (granting preliminary approval of $1,500,000 collective/class action settlement and preliminarily approving GAH requested fees, using a lode-star cross-check based on counsel's current rates of $750 and $325); *Hollis et al. v. Valley Proteins, Inc.*, No.

23

321CV00112FDWDSC, 2022 WL 703606, at *1 (W.D.N.C. Mar. 8, 2022) (granting preliminary approval of $6,750,000 collective/class action settlement and preliminarily approving GAH requested fees, using a lode-star cross-check based on counsel's current rates of $750 and $325); *Mearidy v. nThrive Solutions, Inc.*, No. 1:20-cv-00387-LCB-LPA, Dkt. 45 (M.D.N.C. Nov. 30, 2021); (awarding plaintiffs' counsel's requested attorneys' fees, using a lode-star cross-check based on counsel's current rates of $750 and $325); *Myers v. Loomis Armored US, LLC*, No. 318CV00532FDWDSC, 2020 WL 1815902, at *6 (W.D.N.C. Apr. 9, 2020) (awarding class counsel's requested attorneys' fees, using a lode-star cross-check based on counsel's then rates of $650 and $275, including awarding GAH $488,050.02 in fees and $35,000 in costs); *Lewis v. Precision Concepts Group, LLC*, No. 1:18-cv-00064-LCB-JEP, Dkt. 93 (M.D.N.C. March 23, 2021) (approving plaintiffs' counsel's request for attorneys' fees based on counsel's rates of $650 per hour and $275 per hour); *Reynolds*, 2020 WL 92092, at *3 (this Court finding GAH's "hourly rates are reasonable for their experience"); *Lang v. Duplin County*, CA No. 7:18-cv-00077-BO, Dkt. 77 (E.D.N.C. Jan. 29, 2020) (finding GAH's fees reasonable in light of the work performed and results obtained); *Sanchez et al v. Butler et al*, 18 CVS 500069 (N.C. Super. Ct. 2020) (granting GAH the full amount of attorneys' fees and costs as calculated by GAH's hourly rates against defendants and defendants' counsel pursuant to Rule 11); *Guerrero et al v. Pro Klean, Inc.*, 09 CVS 29529 (NC Super. Ct. 2012); *Berber v. Hutchison Tree Serv.,* No. 5:15-CV-143-D, Dkt. 119 (E.D.N.C. Mar. 1, 2019) ("Plaintiff's counsel are awarded attorneys' fees in the amount equal to one-third of the Maximum Gross Settlement Amount (i.e., $1,000,000.00)."); *Kincaid v. Courier Express/Charlotte, Inc., et al*, 1:18-cv-707-AT,

Dkt. 87 (N.D. Ga Jan. 31, 2019) ("plaintiff's counsel are awarded attorneys' fees in the amount equal to one-third of the Maximum Gross Settlement Amount (i.e., $533,333.33)*; Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, 2016 WL 1703351 (E.D.N.C. Sept. 26, 2017) (approving GAH's former $595 rate and approving one-third of the settlement fund for class counsel's attorneys' fees); *In Re Gentiva Health Services Inc.*, No: 1:14CV01892-WBH, Dkt. 113 (June 22, 2017) (approving GAH's former $595 rate as the basis of a lodestar crosscheck for a common fund award that was approved by the court in nationwide action); *Tomkins v. Amedisys*, No. 3:12-cv-1082 (D. Conn. 2016) (approving GAH's $595 rate of three years ago as the basis of a lodestar crosscheck for a common fund award that was approved by the court in nationwide action); *McLaurin v. Prestage Foods*, 2012 U.S. Dist. LEXIS 13086 (E.D.N.C. Feb. 3, 2012) (same, at the then-charged lower rate of $385 per hour, while GAH was a firm associate, not owner, and before attaining an additional eleven years of collective/class action experience both locally and in nationwide actions, and stating, "[T]he court [allows] the motion for attorneys' fees and awards attorneys' fees . . . . [t]he court finds this amount to be reasonable in light of the complexity of the case, the history of the litigation, and the results obtained"); *Gobena v. CourierNet, Inc.*, AAA Case Number 01-72-0001-4134 (approving Plaintiffs' counsels attorneys' fees and costs, including GAH's rate of $750 in arbitration).

### *Plaintiffs' Counsels' Lodestar*

60.     As of December 17, 2024, GAH's lodestar is $1,345,368.00.  GAH's lodestar calculation is made based upon our current billing rates for each timekeeper, multiplied by

their recorded hours. However, Plaintiffs' counsel has stricken all duplicate time entries, any and all entries related to the decertification, summer associates, interns and staff members with low hours worked on this case, and additional entries that are no longer applicable. Therefore, GAH's reduced lodestar is **$995,937.00** (total hours were reduced from 3,360.40 to **2,089.90**).

| Timekeeper | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Gilda A. Hernandez | Lead Attorney | $595 | 37.4 | $22,253.00 |
| | | $650 | 198.1 | $128,765.00 |
| | | $750 | 706.3 | $529,725.00 |
| Charlotte Smith | Former Attorney | $275 | 170.1 | $46,777.50 |
| | | $325 | 354.8 | $115,310.00 |
| Matthew Wright | Former Attorney | $275 | 227.5 | $62,562.50 |
| Matthew Marlowe | Attorney | $275 | 104.4 | $28,710.00 |
| Briahna Koegel | Attorney | $275 | 50.6 | $13,915.00 |
| Hannah Simmons | Attorney | $225 | 42.1 | $9,472.50 |
| Brian Holste | Damages Analyst | $195 | 142.5 | $27,787.50 |
| Rachael Kreuz | Senior Paralegal | $190 | 56.1 | $10,659.00 |
| **Total** | | | **2,089.90** | **$995,937.00** |

61. In addition, work was done even after the settlement in principle was reached. Such time includes, but is not limited to, reviewing, and/or editing the draft of the settlement agreement numerous times, drafting the motion for final approval of settlement, proposed order, brief in support, fee petition, declaration, and more, and that time is included here.

62. The time worked on this case overall has been substantial. Indeed, GAH has absorbed a substantial loss given the amount of litigation *and* trial preparation but nevertheless have worked tirelessly on behalf of the client. In addition, work was done

even after the settlement was reached. Such time includes, but is not limited to, reviewing and reducing firm hours, eliminating duplicate expenses, drafting Plaintiffs' motion for attorneys' fees and costs, and drafting this declaration, etc., and that time is included here.

63.     During the six (6) years of litigation of this matter, Plaintiffs' counsel has had to reject or refer other potentially viable cases because of the time commitment preparing for not one, but *two* trials in this matter (last year and this year). Because of the small size of the firm, Plaintiffs' counsel was required to give up other potential opportunities to ensure that Plaintiffs' claims were properly prosecuted. Additionally, Plaintiffs' counsel undertook to prosecute this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of tremendous risk. Wage and hour cases of this type are, by their very nature, are complex, complicated, and time-consuming.[9] Lawyers undertaking representation of affected employees in wage and hour actions inevitably must be prepared to make tremendous investment of time. Counsel stood to gain nothing in the event the case was unsuccessful.

64.     Counsel's efforts to date have been without compensation, and their entitlement to  payment has been wholly contingent upon procuring an award for their client. Many firms will not take cases on pure contingency bases and advance the costs involved, particularly one with solely state law claims involving unpaid commissions.

---

[9] In fact, the Fourth Circuit, in *partially* reversing the lower court's decision in *Tom* (a case Plaintiff's counsel took on appeal in an unrelated matter), acknowledged the wages and hour complexities. *See Tom*, 980 F.3d at 1034 (delving into the "morass of FLSA statutory and regulatory provisions" and noting "[d]oing so makes us sympathize with both employers and employees who must try to understand them" and "it certainly amplifies the difficulties that district courts often face when resolving FLSA collective actions.").

27

### *Expenses Incurred in this Litigation*

65.     As of December 17, 2024, Plaintiffs' counsel have incurred a total of approximately $55,884.90 in litigation expenses to prosecute this litigation (i.e., postage, printing/copying, working meals, electronic research, mediation, discovery expenses, and filing fees, etc.). The expenses incurred have been reasonable and necessary under the circumstances of this litigation.  The expenses incurred in this action are reflected in the books and records of this firm.  These books and records are prepared from invoices, expense vouchers, and other source materials and are an accurate record of the expenses incurred.  The underlying invoices and receipts are available for inspection if the Court requests. The expenses incurred by GAH can be divided into the following categories:

| Category | Amount | Category | Amount |
|---|---|---|---|
| Office/Administrative Expenses (Printing/Copying, Mailing, Meals, Research, Reimbursements) | $3,787.70 | Discovery | $16,149.74 |
| Expert Services & Trial Consultant | $24,015.75 | Mediation | $11,500.00 |
| Filing Fees and Service of Summons | $431.70 | | |
| **Total** | | | **$55,884.90** |

66.     As such, Counsel requests an amount not to exceed **$1,051,821.90** in attorneys' fees and costs.

67.     In sum the costs requested are correct and have been necessarily incurred; the services for which fees have been charged were actually and necessarily performed.

I declare under penalty of perjury, under 28 U.S.C. § 1746, under the laws of North Carolina that the foregoing is true and correct to the best of my knowledge.

28

Executed this December 17, 2024.

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No: 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew S. Marlowe (NCSB No. 60035)
Briahna B. Koegel (NCSB No. 62491)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com
bkoegel@gildahernandezlaw.com
*Attorneys for Plaintiffs*

## CERTIFICATION OF SERVICE

I hereby certify that on December 17, 2024, I electronically filed the foregoing true and accurate copy of **DECLARATION OF GILDA ADRIANA HERNANDEZ IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** with the Court using the CM/ECF system, and have thereby electronically served the document to the following:

Paul DeCamp (Special Admission)
**EPSTEIN BECKER & GREEN, P.C.**
1227 25th St., N.W., Suite 700
Washington, D.C. 20037
Tel: (202) 861-1819
Fax: (202) 861-3571
PDeCamp@ebglaw.com

Adriana S. Kosovych (Special Admission)
Victoria Sloan Lin (Special Admission)
**EPSTEIN BECKER & GREEN, P.C.**
875 Third Avenue
New York, NY 10022
Tel: (212) 351-4500
Fax: (212) 878-8600
AKosovych@ebglaw.com

Kevin S. Joyner (NCSB No. 25605)
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
4208 Six Forks Road, Suite 1100
Raleigh, NC 27609
Tel: (919) 787-9700
Fax: (919) 783-9412
Kevin.joyner@ogletree.com
*Attorneys for Defendant*

/s/ *Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No: 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew S. Marlowe (NCSB No. 60035)
Briahna B. Koegel (NCSB No. 62491)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513

30

Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com
bkoegel@gildahernandezlaw.com
*Attorneys for Plaintiffs*