# EXHIBIT B
# PLAINTIFF MEBANE'S INDIVIDUAL SETTLEMENT AGREEMENT (SEALED)

## CONFIDENTIAL SETTLEMENT AGREEMENT
## AND RELEASE OF INDIVIDUAL CLAIMS

This Confidential Settlement Agreement and Release of Claims ("Agreement") is between James Mebane ("Plaintiff") and GKN Driveline North America, Inc. ("Defendant"), including its past, present, and future parent companies, affiliates, divisions, partners, affiliated organizations, subsidiaries and predecessors and successors in interest, and its and their respective past, present, and future officers, directors, shareholders, employees, agents, principals, heirs, assigns, representatives, accountants, auditors, consultants, attorneys, fiduciaries, both individual and in their official capacities, employee benefits plans, and insurers. This Agreement sets forth the terms and conditions of a settlement of the litigation relating to Plaintiff's individual non-wage claims. This Settlement Agreement will have no impact on Plaintiff Mebane's wage and hour and/or his FLSA/NCWHA collective/class claims currently pending in the U.S. District Court for the Middle District of North Carolina.

## BACKGROUND OF THE LAWSUIT

A. Currently pending before the U.S. District Court for the Middle District of North Carolina, in the civil action styled *James Mebane, et al. v. GKN Driveline North America, Inc.*, Ca. No. 1:18-CV-892-LCB-LPA (the "Lawsuit"). Therein, Plaintiff asserts claims, on a collective and classwide basis, against Defendant pursuant to the federal Fair Labor Standards Act ("FLSA") (Count I), 29 U.S.C. § 207, *et seq.*, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq.*, (Count II).[1] Plaintiff also asserts individual claims against Defendant under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, for age discrimination, hostile work environment, wrongful termination, and retaliation (Count III), individual claims for Negligent Employment, Supervision, and Retention (Count IV), Assault (Count V), Battery (Count VI), Intentional Infliction of Emotional Distress (Count VII), and Negligent Infliction of Emotional Distress (Count VIII) in violation North Carolina common law, and wrongful discharge claims in violation of North Carolina Public Policy (Count IX).[2]

B. Defendant expressly denies any and all charges of wrongdoing or liability alleged in the Lawsuit. Plaintiff and Defendant (collectively the "Parties") have entered into this Agreement solely to resolve disputed individual claims brought by Plaintiff, based on disputed facts and allegations and to avoid the costs and risks associated with briefing these claims at summary judgment and to further streamline trial by limiting the same to wage and hour collective/class action issues. The Agreement outlined herein is intended by the Parties to fully resolve Plaintiff's pending *Individual Non-Wage Claims*, including Counts Three through Nine in the Lawsuit. Plaintiff's Wage and/or Collective/Class Claims brought pursuant to the FLSA and NCWHA shall remain pending and unaffected by the instant Agreement.

C. Although neither Defendant nor Plaintiff abandon their position taken in the Lawsuit, the Parties believe that continued litigation of Plaintiff's Individual Non-Wage Claims would be protracted, expensive, uncertain, and contrary to their best interests. The Parties believe this

---

[1] Hereinafter, Counts One and Two shall be referred to as "Wage Claims."
[2] Hereinafter, Counts Three through Nine shall be referred to as "Individual Non-Wage Claims."

1

DocuSign Envelope ID: BACF8EB4-56C6-4234-9D44-CA18E6D255FA

settlement is in the best interests of all Parties, and the best way to resolve the disputes relating to Plaintiff's Individual Non-Wage Claims.

## **TERMS OF SETTLEMENT AND RELEASE**

### 1. **Settlement Payment:**

Without admitting liability of any kind, and in full and final settlement of the Individual Non-Wage Claims and damages alleged by Plaintiff (and his past, present, or future agents, heirs, assigns, representatives, and their respective successors and predecessors in interests), Defendant agrees to pay to Plaintiff the total gross sum of One Hundred Seventy-Five Thousand Dollars and Zero Cents ($175,000.00) ("Settlement Payment"). The Settlement Payment shall be paid as follows, within the time period set forth below:

Defendant shall issue a payment to "JAMES MEBANE" the total amount of One Hundred Seventy-Five Thousand Dollars and Zero Cents ($175,000.00), which shall be attributed to alleged emotional distress damages, in a check payable to "JAMES MEBANE," representing settlement of Plaintiff's Individual Non-Wage Claims in the Lawsuit. Defendant shall issue a Form 1099 to Plaintiff for this amount.

The payment provided above shall be governed by applicable federal, state, and local laws and regulations, including, but not limited to, all applicable tax laws, and Plaintiff shall be solely responsible for any liens, taxes, interest, and penalties that he might owe with respect to such payments, with the exception of, employer-side payroll taxes and withholdings. Plaintiff acknowledges that he has obtained no advice from Defendant or its attorneys and that neither Defendant nor its attorneys have made any representations regarding the tax or other financial consequences, if any, regarding the payments provided for above. Plaintiff agrees to indemnify and hold Defendant harmless to the full extent of any such liabilities, payments, or costs, including taxes, interest, and penalties (except such liabilities, payments, or costs relating to the putative employers' payroll tax contributions) which may be assessed against or incurred by Defendant in connection with any payment made to or on behalf of Plaintiff hereunder for which Plaintiff would otherwise be responsible. Plaintiff agrees that should any tax liability arise or accrue under local, state, or federal tax law as a result of any payments made pursuant to this Agreement, Plaintiff will pay any and all such obligations without seeking indemnity, reimbursement, contribution, or any additional payment from Defendant.

The aforementioned Settlement Payment will be delivered to Plaintiff's attorneys at the Law Offices Gilda A. Hernandez, PLLC at the following address: The Law Offices of Gilda A. Hernandez, PLLC, 1020 Southhill Dr., Suite 130, Cary, NC 27513, within twenty-one (21) calendar days after the latest of: (i) the date on which Plaintiff provides this Agreement executed by Plaintiff to Defendant's Counsel; (ii) the date on which Plaintiff provides the necessary executed IRS Forms from Plaintiff (i.e., IRS Forms W-9); and (iii) the expiration of the Revocation Period as set forth in Paragraph 9(b) (the "Effective Date"). In return for such payment and agreement by Defendant, Plaintiff releases, settles, and waives any and all Individual Non-Wage Claims brought in the Lawsuit in his individual capacity.

## 2. Release of Claims:

Plaintiff, as a free and voluntary act, agrees to accept the above payments and agreements by Defendant in full and complete waiver, release and satisfaction of his pending Individual Claims against Defendant. Effective as of the Effective Date, Plaintiff agrees to hereby and irrevocably forever completely settle, compromise, release, and discharge Defendant, including its past, present, and future parent companies, affiliates, divisions, partners, affiliated organizations, subsidiaries and predecessors and successors in interest, and its and their respective past, present, and future officers, directors, shareholders, employees, agents, principals, heirs, assigns, representatives, accountants, auditors, consultants, attorneys, fiduciaries, both individual and in their official capacities, employee benefits plans, and insurers ("Releasees"), from any and all past and present matters, disputes, claims, demands, rights, liabilities, damages, losses of any kind, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which Plaintiff has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are based upon, relate to, or arise out of or reasonably could have arisen out of the facts, acts, transactions, occurrences, events or omissions alleged in the Lawsuit relating to Plaintiff's Individual Non-Wage Claims exclusively, even if presently unknown and/or unasserted, that occurred at any time up to and including the Effective Date. The claims released by Plaintiff specifically include: (i) any and all Individual Non-Wage Claims asserted at any time in the Lawsuit; (ii) any and all claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; (iii) any and all claims for wrongful discharge in violation of public policy; and (iv) any and all claims arising under North Carolina state common law. Nothing in this Agreement shall release any claims or entitlement to damages or other awards under state workers' compensation laws, the federal Fair Labor Standards Act ("FLSA") (Count I), 29 U.S.C. § 207, *et seq.*, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq.*

Plaintiff agrees that he has had a full and fair opportunity to consult with counsel of his own choosing concerning this waiver and release, and that he agrees to this waiver and release knowingly and voluntarily, without any coercion from anyone.

## 3. Notice of Settlement:

Within three (3) business days of Plaintiff's Counsel receiving the Settlement Payment, Plaintiff authorizes his attorneys to file in the Lawsuit a Joint Notice of Settlement of Plaintiff Mebane's Individual Non-Wage Claims, attached hereto as Exhibit A. Plaintiff agrees he will not engage in further pursuit of the Individual Non-Wage Claims asserted in the Lawsuit.

## 4. Confidentiality:

The Parties agree to keep and maintain all information concerning settlement discussions, the settlement of Plaintiff's Individual Non-Wage Claims in the Lawsuit, the details and terms and conditions of this Agreement, payments made under this Agreement, and any of the events and negotiations surrounding the settlement in any way (collectively referred to "Settlement Information") strictly confidential. Plaintiff agrees that, except for disclosing the terms of the Agreement to immediate family, attorneys, tax counselors, or as required by law, Plaintiff will not disclose the terms of the Agreement, and if asked about the settlement or the Agreement, Plaintiff

will acknowledge only that: "My Individual Non-Wage Claims were resolved on a satisfactory basis" and/or that "Plaintiff and his counsel believe they have reached a fair and reasonable settlement of Plaintiff's Individual Non-Wage Claims." Notwithstanding the foregoing, nothing in this Section shall prohibit the parties from disclosing Settlement Information to the courts or prohibit Defendant from disclosing Settlement Information to the company's auditors, accountants, and disclosed in public filings as is necessary under law or in the ordinary course of the Company's business.

5. **Affirmations, Agreements, and Representations by Plaintiff**

(a) Plaintiff agrees that the settlement payment he is accepting by signing this Agreement has value to him; that he would not be entitled to this payment without successful resolution of his Individual Claims in the Lawsuit or by signing this Agreement; and that he will receive this payment in exchange for the benefit to Defendant from his signing this Agreement.

(b) As of the Effective Date, Plaintiff represents, covenants and warrants that he has not directly or indirectly assigned, transferred, or purportedly assigned or transferred to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged. Plaintiff agrees that this Agreement also binds all persons who might assert a legal right or claim on his behalf, such as his heirs, trustees, executors, successors, legal administrators, personal representatives and assigns, now and in the future.

(c) As of the Effective Date, Plaintiff agrees he will be bound by the terms and conditions of the Agreement, including the releases set forth in the Agreement.

(d) Plaintiff acknowledges and agrees that nothing in this Agreement prevents or limits Plaintiff from proceeding with the currently pending collective and class action aspect of the Lawsuit for his unpaid wages and those of opt-in Plaintiffs and Rule 23 class members brought pursuant to the FLSA and NCWHA, and moreover nothing in this Agreement prevents or limits Plaintiff from filing a charge or participating in an investigative proceeding of the Equal Employment Opportunity Commission or other governmental agency, provided, however, that Plaintiff will not be entitled to any benefit arising from any claim or proceeding involving any matter within the scope of any claim or charge that is filed or initiated by his or on your behalf by any such agency or other governmental entity.

(e) Plaintiff affirms that he has not filed any other charges, complaints, claims or actions against Defendant related to Plaintiff's Individual Claims, based on any event that took place prior to the date of him signing this Agreement. In the event there is outstanding any such charge, complaint, claim or action, Plaintiff agrees to execute such papers or documents as may be necessary to have such charge, complaint, claim or action withdrawn and dismissed with prejudice. Plaintiff further agrees that this Agreement resolves all Individual Claims asserted by him in the Lawsuit through the Effective Date of this Agreement, with the understanding that Defendant agrees that by entering into this settlement, Plaintiff in no way waives or releases any claims currently brought or that could have been brought pursuant to the FLSA and/or NCWHA.

DocuSign Envelope ID: BACF8EB4-56C6-4234-9D44-CA18E6D255FA

6. **Integration Clause, Modification, Severability, and Construction and Interpretation:**

(a) This Agreement constitutes the entire agreement between Plaintiff and Defendant and fully supersedes any and all prior agreements or understandings, written or oral, between Plaintiff and Defendant pertaining to the subject of this Agreement and/or Lawsuit, including, but not limited to, any and all written and oral agreements reached between the Parties during the negotiations that resulted in this Agreement. Plaintiff acknowledges that he has not relied on any representations, promises, or agreements of any kind made to him in connection with his decision to execute this Agreement, except for those set forth in this Agreement. This Agreement may be executed electronically and in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement;

(b) The Agreement may not be altered, amended, waived, changed or modified except by an express written instrument signed by an authorized representative of Defendant and an authorized representative of Plaintiff or his successor-in-interest;

(c) If, at any time after the date of execution of this Agreement, any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, void, or unenforceable, such provision shall be of no force and effect. However, the illegality or unenforceability of such provision shall have no effect upon, and shall not impair the enforceability of, any other provision of this Agreement; provided, however, that if Paragraph 2 is held to be illegal, void, or unenforceable, Plaintiff agrees to promptly execute a valid release and waiver in favor of the Releasees without additional consideration;

(d) The Parties agree that the terms and conditions of the Agreement are the result of lengthy, intensive negotiations among the Parties, through counsel, and the Agreement shall not be interpreted or construed in favor of or against any party by reason of the extent to which any party or his or its counsel participated in the drafting of the Agreement. Paragraph and section titles are inserted as a matter of convenience for reference, and in no way define, limit, extend, or describe the scope of this Agreement; and

(e) This Agreement shall be governed by federal law and by the internal laws of the State of North Carolina, irrespective of the choice of law rules of any jurisdiction.

7. **No Admission of Wrongdoing:**

Plaintiff agrees that this Agreement does not constitute an admission of liability or wrongdoing by Defendant; that it does not constitute any factual or legal precedent or finding whatsoever; and that it may not be used as evidence in the Lawsuit, the civil action styled *James Mebane, et al. v. GKN Driveline North America, Inc.,* Case No. 1:18-CV-892-LCB-LPA, or any other proceeding of any kind for any purpose whatsoever, except in an action alleging breach of this Agreement or to enforce the provisions of this Agreement. Defendant in no way admits any violation of law or

DocuSign Envelope ID: BACF8EB4-56C6-4234-9D44-CA18E6D255FA

any liability whatsoever to Plaintiff, and all such liability is expressly denied, including under the claims asserted in the Lawsuit.

**8.     Duty to Defend:**

Plaintiff, Plaintiff's counsel, Defendant, and Defendant's counsel agree to abide by all of the terms of this Agreement in good faith, to fully support the Agreement and to defend the Agreement from any legal challenge, whether by appeal or collateral attack.

**9.     ADEA Waiver:**

(a)     Without detracting in any respect from any other provision of this Agreement:

   i.     In consideration of the Settlement Payment provided to Plaintiff as described in Paragraph 1 of this Agreement, Plaintiff agrees and acknowledges that this Agreement constitutes a knowing and voluntary waiver of all rights or claims Plaintiff has or may have against Defendant as set forth herein, including, but not limited to, all rights or claims arising under the ADEA, that Plaintiff has no physical or mental impairment of any kind that has interfered with his ability to read and understand the meaning of this Agreement or its terms, and that he is not acting under the influence of any medication or mind-altering chemical of any type in entering into this Agreement.

   ii.    Plaintiff understands that, by entering into this Agreement, he does not waive rights or claims that may arise after the date of your execution of this Agreement, including without limitation any rights or claims that he may have to secure enforcement of the terms and conditions of this Agreement.

   iii.   Plaintiff agrees and acknowledges that the consideration provided to him under this Agreement is in addition to anything of value to which he is already entitled.

   iv.    Defendant has advised Plaintiff to consult with an attorney prior to executing this Agreement and he has done so.

   v.     Plaintiff acknowledges that he was informed that he had at least twenty-one (21) days in which to review and consider this Agreement and to consult with an attorney regarding the terms and effect of this Agreement.

   vi.    Nothing in this Agreement shall prevent Plaintiff (or his attorneys) from (i) commencing an action or proceeding to enforce this Agreement or (ii) exercising his right under the Older Workers Benefit Protection Act of 1990, 29 U.S.C. § 626(f), to challenge the validity of his waiver of ADEA claims set forth in this paragraph of this Agreement.

   vii.   Plaintiff and Defendant agree that any changes to this Agreement, material or otherwise, do not re-start the running of the original 21-day period.

(b)     Revocation. Plaintiff acknowledges that he may revoke this Agreement within seven (7) days from the date Plaintiff signs this Agreement (referred to herein as the "Revocation Period") and that this Agreement shall not become enforceable until the day after the seven-day

DocuSign Envelope ID: BACF8EB4-56C6-4234-9D44-CA18E6D255FA

Revocation Period has expired, provided he has the Settlement Agreement and has not exercised the right to revoke. In the even that Plaintiff chooses to revoke this Settlement Agreement within the Revocation Period, the Agreement shall be null and void and of no force or effect on any party. In the event that Plaintiff chooses to exercise the option to revoke this Settlement Agreement, he shall notify Defendant, in writing, addressed to counsel for Defendant, Kevin S. Joyner, Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Paul DeCamp, Epstein Becker & Green, P.C., no later than 5:00 p.m. of the last day of the Revocation Period. If the last day of the Revocation Period is a Saturday, Sunday or legal holiday, then the Revocation Period shall not expire until the next following day which is not a Saturday, Sunday or such legal holiday. Plaintiff expressly understands and agrees that if he does not sign this Settlement Agreement, or if he revokes the Agreement within the Revocation Period, the Settlement Agreement will not be effective or enforceable, and Plaintiff will not be entitled to any of the benefits or consideration provided for in this Settlement Agreement.

### Agreed and Acknowledged

Plaintiff's signature below acknowledges that he has read this document fully, that he understands and agrees to its contents, that he understands that it is a legally binding document, and that he has been advised to consult a lawyer of his choosing before signing this Agreement and has had the opportunity to do so. By signing below, Plaintiff further acknowledges his waiver of all rights limited to his individual non-wage claims to the extent that any or all of the legal theories or assumptions used for settlement purposes are for any reason inaccurate or inappropriate, or that his consent to this Agreement was the result of a unilateral mistake in law or fact.

Signed: _____
James Mebane

Date: 11/17/2022

Defendant acknowledges that Defendant has read this Confidential Settlement and Release, fully understands it, and is voluntarily entering into it:

_____                                    December 09, 2022
NAME: William E. Rice                                      _____
TITLE: Human Resources Director, Americas                  Date
For GKN Driveline North America, Inc.

AS TO FORM:

| | |
|---|---|
| THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC<br>By: */s/ Gilda A. Hernandez/*<br>Gilda A. Hernandez, Esq.<br>Charlotte C. Smith, Esq.<br>1020 Southhill Dr. Ste. 130<br>Cary, NC 27513<br>Tel: (919) 741-8693<br>Fax: (919) 869-1853<br>ghernandez@gildahernandezlaw.com<br>csmith@gildahernandezlaw.com<br>*Attorneys for Plaintiff* | EPSTEIN BECKER & GREEN, P.C.<br>By: *Paul DeCamp*<br>Paul DeCamp<br>1227 25th St., N.W., Suite 700<br>Washington, D.C. 20037<br>Tel: (202) 861-1819<br>Fax: (202) 296-2882<br>PDeCamp@ebglaw.com<br><br>Kevin S. Joyner (NC Bar No. 25604)<br>Regina W. Calabro (NC Bar No. 20889)<br>OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.<br>4208 Six Forks Road, Suite 1100<br>Raleigh, North Carolina 27609<br>Phone: 919-787-9700<br>Facsimile: 919-783-9412<br>Kevin.joyner@ogletree.com<br>*Attorneys for Defendant* |